**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DALLEN and PEGGY WENDT, husband and wife,<br><br>                        Plaintiffs,<br><br>v.<br><br>HANDLER, THAYER & DUGGAN, LLC, an Illinois limited liability company; JAMES M. DUGGAN, an individual; THOMAS J. HANDLER, an individual; STEVEN J. THAYER, an individual; GREGORY BERTSCH, an individual; OFFSHORE TRUST SERVICE, INC., a Florida corporation; JOSHUA J. CRITHFIELD, an individual; DUANE J. CRITHFIELD, an individual; FOSTER & DUNHILL CONSULTING, INC., a Florida corporation; FOSTER & DUNHILL PLANNING SERVICES, LLC, a Florida limited liability company; STEPHEN P. DONALDSON, an individual; SUNDERLAGE RESOURCE GROUP, INC., an Illinois corporation; and TRACY J. SUNDERLAGE, an individual,<br><br>                        Defendants. | Case No. :<br><br>Jury Trial Demanded<br><br>```<br>FILED: JUNE 24, 2008        LI<br>08CV3612<br>JUDGE    CASTILLO<br>MAGISTRATE   JUDGE COLE<br>``` |

## <u>COMPLAINT</u>

Plaintiffs Dallen and Peggy Wendt ("Wendts" or "Plaintiffs"), by and through their undersigned attorneys, for their Complaint against Defendants, Handler, Thayer & Duggan, LLC; James M. Duggan; Thomas J. Handler; Steven J. Thayer; Gregory Bertsch; Offshore Trust Service, Inc.; Joshua J. Crithfield; Duane J. Crithfield; Foster & Dunhill Consulting, Inc.; Foster & Dunhill Planning Services, LLC; Stephen P. Donaldson; Sunderlage Resource Group, Inc.; and Tracy J. Sunderlage, allege as follows:

<u>**PARTIES**</u>

1.     <u>**Plaintiff Wendts.**</u>  At all times material hereto, the Wendts are husband and wife and citizens of the State of Kentucky, residing in Nicholasville, Kentucky.

2.     <u>**Defendant Handler, Thayer & Duggan, LLC.**</u>  Defendant Handler, Thayer & Duggan, LLC ("HTD"), is an Illinois limited liability company and law firm, which has its principal place of business in Chicago, Illinois.

3.     <u>**Defendant James M. Duggan.**</u>  Defendant James M. Duggan ("Duggan") is a citizen of Chicago, Illinois, an attorney licensed to practice in Illinois, and a partner of HTD.

4.     <u>**Defendant Thomas J. Handler.**</u>  Defendant Thomas J. Handler ("Handler") is a citizen of Winnetka, Illinois, an attorney licensed to practice in Illinois, and a partner of HTD.

5.     <u>**Defendant Steven J. Thayer.**</u>  Defendant Steven J. Thayer ("Thayer") is a citizen of Hinsdale, Illinois, an attorney licensed to practice in Illinois, and a partner of HTD.

6.     <u>**Defendant Gregory Bertsch.**</u>  Defendant Gregory Bertsch ("Bertsch") is a citizen of Chicago, Illinois, is not licensed to practice law in Illinois, and is a partner of HTD. Bertsch is also a Certified Public Accountant and a member of the Illinois Certified Public Accountants Society.

7.     <u>**Defendant Offshore Trust Service, Inc.**</u>  Defendant Offshore Trust Service, Inc., a/k/a Offshore Trust Services ("OTS"), is a Florida corporation, which has its principal place of business in Tampa, Florida.

8.     <u>**Defendant Joshua J. Crithfield**</u>.  Defendant Joshua J. Crithfield is a citizen of the State of Florida, residing in Tampa, Florida, and is one of the founders and an officer and director of OTS.

9.      **Defendant Duane J. Crithfield.**  Defendant Duane J. Crithfield is a citizen of the State of Florida, residing in Tampa, Florida, and is one of the founders and an officer and director of OTS.

10.     **Defendant Foster & Dunhill Consulting, Inc.**  Defendant Foster & Dunhill Consulting, Inc., is a Florida corporation, which has its primary place of business in Dade City, Florida.

11.     **Defendant Foster & Dunhill Planning Services LLC.**  Defendant Foster & Dunhill Planning Services LLC is a Florida limited liability company, which has its principal place of business in Dade City, Florida.

12.     **Defendant Stephen P. Donaldson.**  Defendant Stephen P. Donaldson is a citizen of the State of Florida, residing in Dade City, Florida, and is a founder, officer and director of Foster & Dunhill Consulting, Inc.

13.     **Defendant Sunderlage Resource Group, Inc.**  Defendant Sunderlage Resource Group, Inc., is an Illinois corporation, which has its principal place of business in Huntley, Illinois.

14.     **Defendant Tracy L. Sunderlage.**  Defendant Tracy L. Sunderlage is a citizen of the State of Illinois, residing in Huntley, Illinois, and is a founder, officer and director of Sunderlage.

### JURISDICTION AND VENUE

15.     **Jurisdiction.**  This Court has jurisdiction pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the Wendts and all the Defendants, and the amount in controversy exceeds $75,000 exclusive of interests and costs.  This Court also has jurisdiction over federal law claims under 28 U.S.C. §1331, and 15 U.S.C. §78aa, and

jurisdiction over other claims under the principles of supplemental jurisdiction codified in 28 U.S.C. §1367.

16.    **Venue.**  Venue is proper in this district pursuant to 28 U.S.C. §1391 and 15 U.S.C. §77v because Defendants reside in, are found in, have an agent in, and/or transact their affairs in this district, where a substantial part of the events and omissions giving rise to the Wendts' claims occurred.

## STATEMENT OF FACTS

**The Internet Planning Conference**

17.    In 2002, the Wendts began looking into various asset protection and investment options to provide financial security for themselves and their children.

18.    The Wendts were referred to Handler, Thayer, and Duggan of HTD, and also to Tracy Sunderlage of Sunderlage Resource Group, Inc., (collectively, "Sunderlage") for legal, investment, estate planning, and tax advice.

19.    In May 2002, at HTD, Duggan, and Handler's suggestion, Dallen Wendt attended a multi-day "Advanced International Planning Conference" in Freeport, Bahamas.

20.    The Conference was presented by HTD, BPS, Foster & Dunhill, and attended by representatives of OTS.

21.    Faculty at the Conference included Duane and Josh Crithfield of OTS and Fidelity Insurance Company Ltd., Steve Donaldson of Foster & Dunhill, Sunderlage, and Handler and Duggan of HTD (the "Conference Presenters").

22.    The content and purpose of the Conference was to promote the Conference Presenters' investment services and products.

23.    The Conference Presenters and their materials promoted an investment strategy and structure wherein: (a) funds were put in an offshore trust managed by First Fidelity Trust, a

Nevis, West Indies trustee, (b) the trustee would in turn purchase life insurance policies and/or annuities through Fidelity Insurance Company in Anguilla, British West Indies, and (c) Fidelity Insurance Company would in turn invest the policy proceeds in certain investment accounts with Westminster Hope & Turnberry, an investment account administrator in the Bahamas.

24.     Wendt told the Conference Presenters he was only interested in a safe, low-risk investment strategy to insure financial stability for the benefit of his children.

25.     The Conference Presenters advised Wendt that their recommended investment structure would be his best option, because Westminster Hope & Turnberry offered "no-risk," fixed income accounts, including five-year fixed income account paying a fixed return of 8% per annum, compounded annually (the "Fixed 8 Account"), with provisions to withdraw the money at any time with pre-determined and stated early withdrawal penalties.  At a later date, a similar 10-year fixed income account paying a fixed return of 8.5% per annum, compounded annually (the "Fixed 8.5 Account"), was offered to the Wendts.

26.     The Conference Presenters represented that the Fixed 8 Account was not subject to any investment risk or market fluctuations, as both principal and interest were "guaranteed" by financially secure companies, including Alliance Holding Company.  Later, similar representations were made regarding the Fixed 8.5 Account.  (Hereafter the Fixed 8 Account and the Fixed 8.5 Account may be referred to as the "Fixed Accounts.")

27.     The Conference Presenters also represented that the performance results of the Fixed Accounts were net of all management fees and would be invested in stocks, bonds, and money market instruments.

28.     The Conference Presenters told Wendt that Westminster Hope & Turnberry's Fixed Accounts were not available to the general public; they were only available to purchasers of Fidelity Insurance Company's insurance products.

**Engagement of HTD**

29.     Wendt, after returning from the Conference, decided to engage HTD as his estate and tax planning legal counsel and advisors.

30.     HTD is a Chicago law firm that practices in the areas of taxation, business law, and estate planning.

31.     Handler, Thayer, Duggan, and Bertsch are partners and/or principals of HTD.

32.     Handler, Thayer, Duggan, and Bertsch personally and knowingly participated and directed all acts of HTD alleged herein.

33.     On July 17, 2002, the Wendts received a letter from Duggan on the letterhead of Business Planning Services, LLC ("BPS"), an Illinois limited liability company that was voluntarily dissolved on December 10, 2004, requesting a $10,000.00 "planning fee" for tax and estate planning services.

34.     The address for BPS was identified as 333 West Wacker Drive, Suite 680, Chicago, Illinois, 60606-1225.  This is the same address as HTD's offices at the time.

35.     Unbeknownst to the Wendts, the managers of BPS were, *inter alia*, Sunderlage, Handler, Thayer and Duggan.

36.     On December 31, 2002, Wendt paid $10,000 to HTD to retain their services, in response to the July 17, 2002, letter from Duggan.

**The Trust Advisors**

37.     HTD, BPS, Handler, Thayer, Duggan, and Bertsch (collectively, the "Trust Advisors") acted as the Wendts' attorneys and financial advisors at all relevant times.

38.     The Trust Advisors provided financial and estate planning services to their clients, the Wendts.

39.     The Trust Advisors recommended that the Wendts establish trusts in Nevis to purchase policies with Fidelity Insurance Company, and represented that the policy proceeds would be invested in the Fixed Accounts.

40.     Mr. Wendt reviewed the financial and estate planning recommendations over a two day period at HTD's offices, with presentations about the recommendations by Duggan, Handler, and Bertsch.

41.     The Wendts expressed concern about Fidelity Insurance Company's financial stability, but the Trust Advisors assured them that the proposed strategy had no risk and a guaranteed return.

42.     Defendants told the Wendts, among other things, that the Trust's investments would involve no market risk, and that the return of principal plus an 8% or 8.5% fixed return would be 100% percent guaranteed.

**<u>Establishment of Trusts</u>**

43.     Based on these and other representations, and on the advice of the Trust Advisors, the Wendts established two trusts to invest in the Fixed Accounts: (1) the Smiling Frog Irrevocable Insurance Trust dated December 23, 2002 (the "Smiling Frog Trust"), and (2) a Custodial Trust Agreement for the Black Ink Trust, executed December 27, 2002 (the "Black Ink Trust").

44.     The Smiling Frog Trust, drafted by the Trust Advisors, named Keithley F.T. Lake as Trustee.

45.     The Black Ink Trust named Keithley F.T. Lake's company, First Fidelity Trust Limited, as the Trustee, and named BPS as the Protector.

46.     The Trustees are residents of Nevis, West Indies.

47.     The Trust Advisors advised Wendt that the Trustees were offshore entities that were competent and experienced, and assured the Wendts that the Trustees, through Fidelity Insurance Company's life insurance policies and annuities, would invest the Wendts' funds in the Fixed Accounts, which were guaranteed by Alliance Holding Company, of Nevis, West Indies, and based on pre-determined asset classes with no risk to principal or interest.

48.     Though never disclosed, the Wendts later learned that Alliance Holding Company is the parent company of First Fidelity Trust Ltd., Fidelity Insurance Company, and Westminster Hope & Turnberry.

49.     The Trust Advisors advised the Wendts to establish the Black Ink Trust, as well as the Smiling Frog Trust.

50.     The Wendts were assured that although the Trustees, the Protector, and investments were offshore, the Wendts could effectively control and monitor the Trusts' investments through United States affiliates, including OTS and Foster & Dunhill in Florida.

51.     The Trusts were set up to be controlled by OTS, Foster & Dunhill, Sunderlage, Stephen P. Donaldson, Duane J. Crithfield and Joshua J. Crithfield (the "Trust Managers").

52.     Having the Trust Managers as local contacts was meant to give the Wendts' comfort in being able to obtain accounting information and control over the Trust's investments and activities.

53.     Unbeknownst to the Wendts, the Trust Managers, the Trust Advisors, the Trustees, Fidelity Insurance Company, Westminster Hope & Turnberry and Sunderlage were all engaged in a common enterprise to earn undisclosed fees and commissions from the Trusts the Wendts' were advised to establish.

54.    The Trust Managers were also clients of the Trust Advisors.

55.    The Trustees, Fidelity Insurance Company, and/or Westminster, Hope & Turnberry were also clients of the Trust Advisors.

56.    The Trust Advisors did not disclose to the Wendts their relationship with the Trust Managers or other parties to the investment scheme.

**Wendts' Trust Investments**

57.    The Defendants' representations were material to the Wendts decision to form and fund the Trusts.

58.    Defendants knew that the Wendts had a conservative investment policy, and that that their primary objective was the preservation of capital for the benefit of their children through safe investments.

59.    Defendants assured the Wendts that their investment recommendations relating to the Trusts would be safe and profitable.

60.    Defendants, acting as the Wendts' investment advisers, induced the Wendts to establish the Trusts through material misrepresentations about the safety, character and profitability of speculative investments.

61.    In fact, Defendants knew, should have known or recklessly disregarded the fact that the investments were highly speculative and were in precarious financial circumstances.

62.    Relying on Defendant's representations and advice, the Wendts wire transferred $500,000.00 to the Smiling Frog Trust, and $1,000,000.00 to the Black Ink Trust.

63.    The Smiling Frog Trust purchased a Fidelity Insurance Company life insurance policy (policy no. 220000234) insuring the life of Wendt.

64.     The Black Ink Trust purchased a Fidelity Insurance Company life insurance policy (policy no. 22000196) insuring the life of Wendt, and a Fidelity Insurance Company Annuity (policy no. 16000023), for an additional investment of $400,000.00.

65.     Defendants assured the Wendts that the majority of the Trust funds were invested in Fixed Accounts in January 2003, and that the Fixed 8 Accounts would mature in January 2008 and the Fixed 8.5 Accounts would mature in January 2013.

66.     Defendants advised that other investments included "Alliance Royalties" which provide investment returns from oil and gas leases.

67.     For years, up until October 2007, Defendants reassured the Wendts that  their investments continued to be safe and profitable.

68.     The Wendts were provided by OTS with periodic accounting statements showing that their investments were making the guaranteed returns on investment.

**Efforts to Liquidate Trust Investments**

69.     In November 2007, the Wendts asked the Trust Advisors to have the Trustees liquidate all of the accounts, including the Fixed 8 Accounts, which were set to mature in January 2008.

70.     In January 2008, the Wendts made continued requests to the Trust Advisors to have the Trustees liquidate the Fixed 8 Accounts, which had matured.

71.     The Wendts were then advised that Fidelity Insurance Company claimed the investment had been depleted, and despite the fact that the 8% return had been "guaranteed," they could only pay 40 cents on the dollar for the monies invested if the Fixed 8 Accounts were liquidated.

72.     As the Wendts' attorneys, the Trust Advisors recommended that the Wendts accept the proposed settlement with Fidelity Insurance Company.

73.    The accounting records provided up through December 31, 2007, were false.

74.    The Wendts have asked for an accounting of the Trusts' investments and assets, but no accounting values have been provided beyond December 31, 2007.

75.    On information and belief, the Fidelity Insurance Company was at all times also a client of HTD.

76.    The Trust Advisors did not disclose the fact that they represented Fidelity Insurance Company and the Trust Managers while they represented the Wendts in negotiations adverse to those parties.

77.    For months, the Wendts requests to liquidate the accounts, and for information and an accounting, have been ignored by the Defendants, the Trustees, and the Protector.

78.    On information and belief, and contrary to the Defendants representations, the Trust's funds were invested in Collateralized Debt Obligations ("CDOs") which at times earned as much as 15% on the investment, and the Defendants retained all excess returns over the returns guaranteed in the Fixed Accounts as management fees or commissions, all of which were not disclosed to the Wendts and which Defendants continue to collect.

79.    By the time the Fixed 8 Accounts matured, the market conditions were such that the "guaranteed" return could not be paid.

80.    In addition, the Wendts have paid Defendants substantial legal, accounting, advisory, and management fees.

81.    The Wendts' moneys and investments are in imminent danger of being wasted, embezzled, transferred, depleted or lost.

## COUNT I
## FRAUDULENT MISREPRESENTATION

82.    The Wendts reallege and adopt paragraphs 1-81 as paragraph 82 of Count I.

83.     Defendants made the following false statements of material facts to the Wendts:

(a)     that the Wendts' investments were in fixed accounts with a guaranteed return of investment of 8% and 8.5% free from market fluctuations;

(b)     that the Wendts' investments would be safe, profitable and not speculative;

(c)     that the Wendts could liquidate their investments anytime; and

(d)     that the Trustee was instructed to liquidate the Fixed 8 Accounts.

84.     Defendants omitted to state the following material facts to the Wendts:

(a)     Defendants would earn management fees and commissions on the Wendts; investment;

(b)     the Trust Advisors' relationship with the Trust Managers;

(c)     Fidelity Insurance Company were clients of HTD; and

(d)     Fidelity Insurance Company and the Trust Managers were clients of the Trust Advisors.

85.     Defendants induced the Wendts to establish and fund the Trusts based on their misrepresentations and omissions.

86.     Defendants knew, should have known or recklessly disregarded the fact that the misrepresentations were false.

87.     Defendants intended that the misrepresentations and omissions would induce the Wendts to establish and fund the Trusts.

88.     The Wendts were ignorant of the falsity, and reasonably relied on the truth of the statements.

89.     The Wendts acted on the misrepresentations, and as a result were damaged in an amount in excess of $1,500,000.

## COUNT II
## UNJUST ENRICHMENT

90.     The Wendts reallege and adopt paragraphs 1-81 as paragraph 90 of Count II.

91.     The Wendts have made payments to the Defendants, and Defendants have taken undisclosed fees and commissions from the Trusts' assets, based on Defendants' false and misleading acts and omissions.

92.     The Defendants have taken fees in addition to those stated from money managers.

93.     The Defendants provided false and misleading information in order to obtain the Wendts' money.

94.     On information and belief, all Defendants used a portion of Plaintiffs' funds in furtherance of their fraudulent schemes in soliciting more investors for the same or similar investment vehicles.

95.     The Defendants were not entitled to these funds, which were obtained from the Wendts through fraud and improper means.

96.     The Wendts would not have created or funded the Trusts had the true nature of the transaction been known.

97.     The Defendants were unjustly enriched by obtaining proceeds from the Wendts by fraud and in exchange for guaranteed returns on the various investment vehicles that were never received.

98.     Defendants failed to provide the disinterested, professional investment advisory services to which the Wendts were entitled.  Instead, Defendants caused the Wendts to invest substantial sums in the Trusts, which have placed the funds in speculative investments and accounts that were at odds with the Wendts' conservative investment objectives, but which generated high commissions and fees for Defendants.

99.     As a result of the Defendants' unjust receipt of these sums, the Wendts have been unjustly deprived of their property and sustained damages, including the amount of their transfers to the Trusts.

100.    The Wendts are entitled to restitution in an amount in excess of $1,500,000.

## COUNT III
## BREACH OF FIDUCIARY DUTY

101.    The Wendts reallege and adopt paragraphs 1-81 as paragraph 101 of Count III.

102.    As the Wendts legal advisers and counsel, HTD and its attorneys owed fiduciary duties to the Wendts.

103.    As the Wendts financial advisers, and as trust protector BPS and its employees owed fiduciary duties to the Wendts.

104.    As the Wendts financial advisers and money managers, the Trust Managers owed fiduciary duties to the Wendts.

105.    As the Wendts' investment advisors, Defendants had a duty to make investment recommendations that were suitable for the Wendts, in light of their financial circumstances and conservative investment objectives.  Defendants violated that duty by recommending that the Wendts settle the Trusts to make investments in speculative businesses and accounts.

106.    The Defendants have breached their fiduciary duties to the Wendts, including the duty of loyalty.

107.    As a direct and proximate result of the Defendants breaches of their fiduciary duties, the Wendts have been damaged in an amount in excess of $1,500,000.

## COUNT IV
## UNFAIR AND DECEPTIVE TRADE PRACTICES

108.    The Wendts reallege and adopt paragraphs 1-81 as paragraph 108 of Count IV.

109.    The offering of investments through the Trusts in Fixed 8 Accounts and Fixed 8.5 Accounts was a "trade" or "commerce" as defined by the Illinois Consumer Fraud Act, 815 ILCS 505/(1)(f).

110.    Defendants misrepresented that the Wendts' investments were in fixed accounts with a guaranteed return of investment of 8% and 8.5% free from market fluctuations, that the investment was safe and profitable, and that the Trusts had been instructed to liquidate the Fixed 8 Accounts.

111.    Defendants' representations were false in that the Wendts' investments were in speculative investments and had been depleted by undisclosed management fees and commissions.

112.    At all relevant times, there has been in effect the Illinois Consumer Fraud Act at 815 ILCS 505/2, which provides, in pertinent part, as follows:

> Unfair methods of competition in unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or concealment, suppression or omission of material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact . . . and the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been mislead, deceived or damaged thereby . . .

113.    Defendants violated the Illinois Consumer Fraud Act through false, unfair, fraudulent and deceptive practices by misrepresenting the investment was safe and secure and had a guaranteed return of 8% and 8.5%.

114.    The Wendts relied upon the representations of Defendants to establish the Trusts and invest in Fixed 8 Accounts and Fixed 8.5 Accounts.

115.    At all relevant times, it was reasonably foreseeable that potential investors, including the Wendts, would rely on the representations concerning a guaranteed minimum return.

116.    The Wendts, and other investors, relied on representations concerning guaranteed return and were induced to invest funds through Trusts.

117.    As a direct and proximate result of the representations of Defendants, the Wendts lost the investment through the Trusts in an amount in excess of $1,500,000.

**COUNT V**
**SECURITIES VIOLATIONS**
**(Section 10(b) of the Exchange Act and Rule 10b-5)**

118.    The Wendts reallege and adopt paragraphs 1-81 as paragraph 118 of Count V.

119.    The monies the Wendts transferred to the Trusts for investment were paid in connection with the purchase and sale of securities.

120.    In connection with the offer and sale of securities, the Defendants directly or indirectly employed a device, scheme or artifice to defraud the Wendts.

121.    In connection with the offer and sale of securities, the Defendants made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

122.    The Defendants engaged in acts, practices, or course of business which operated as a fraud or deceit upon the Wendts.

123.    Defendants' material acts, misstatements, and omissions were made with scienter by use of the means or instruments of interstate commerce, or of the mails.

124.    The Wendts relied on Defendants' acts, misrepresentations and omissions.

125.    As a direct and proximate cause of the Defendants' securities laws violations, the Wendts have been damaged in an amount in excess of $1,500,000, together with interest and attorney fees.

126.    Defendants violated and, unless restrained and enjoined, will continue to violate Section 10(b) of the Exchange Act (15 U.S.C. §78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5).

## COUNT VI
## LEGAL MALPRACTICE

127.    The Wendts reallege and adopt paragraphs 1-81 as paragraph 127 of Count VI.

128.    The Trust Advisors owed the Wendts fiduciary obligations and a duty of due care arising from an attorney-client relationship.

129.    The Trust Advisors breached their duties to the Wendts in a number of ways, including:

(a)    The Trust Advisors represented the Wendts in matters directly adverse to their other clients, without disclosing the conflict or obtaining the Wendts' consent to the dual representation;

(b)    The Trust Advisors representation of the Wendts was materially limited by responsibilities to their other clients, third persons, and the lawyers' own interests;

(c)    The Trust Advisors failed to disclose to the Wendts that they stood to benefit from commissions and fees for recommending the structure of the Trusts and for ongoing trust fees thereafter;

(d)    The Trust Advisors failed to disclose that they owned BPS;

(e)    The Trust Advisors failed to disclose their relationship with, interest in, and agreements with the Trust Managers and other entities involved in the Trusts;

(f)    The Trust Advisors failed to exercise their independent professional judgment and to render candid advice to the Wendts relating to the Trusts;

(g)    The Trust Advisors shared fees with non-lawyers;

(h)    The Trust Advisors formed a partnership with non-lawyers for activities consisting of the practice of law;

(i)    The Trust Advisors received and/or shared undisclosed commissions and fees for recommending the trusts to the Wendts with non-lawyers and lawyers;

(j)    Non-lawyers including BPS and the Trust Managers directed or controlled the professional judgment of the Trust Advisors to the detriment of the Wendts, and compromised the Trust Advisors' legal representation of the Wendts;

(k)    The Trust Advisors made false or misleading communications about themselves and their services, containing material misrepresentations of fact or law, and omitted to disclose facts necessary to make the statement considered as a whole not materially misleading.

(l)    The Trust Advisors misrepresentations created unjustified expectations about the results the Trust Advisors could achieve.

(m)    The Trust Advisors engaged in misconduct involving dishonesty, fraud, deceit or misrepresentation.

130.    The Wendts would not have created or funded the Trusts but for the Trust Advisors legal advice, representations, and recommendations.

131.    The Trust Advisors acts and omissions violated the Illinois Rules of Professional Conduct, including but not limited to RPC 1.7, 1.8, 2.1, 5.4, 7.1 and 8.4.

132.    The Wendts suffered injury in the form of actual damages in excess of $1,500,000. The actual damages resulted as a proximate cause of the Trust Advisors' breaches of their duties.

## COUNT VII
## ACCOUNTING MALPRACTICE

133.    The Wendts reallege and adopt paragraphs 1-81 as paragraph 133 of Count VII.

134.    Bertsch was hired to provide tax planning and tax advisory services to the Wendts.

135.    Bertsch represented to the Wendts he was a licensed certified public accountant, qualified to provide tax advisory services and render tax opinions.

136.    Bertsch is a certified public accountant in the State of Illinois, Certificate Number 61509.

137.    Bertsch owed the Wendts fiduciary obligations and a duty of due care arising from an accountant-client relationship.

138.    Bertsch breached his obligations and duties while serving as the Wendts' tax advisor and providing tax opinion letters by having a had a direct or material indirect financial interest in the investment vehicles that he promoted, evaluated, and provided tax opinion letters on for the Wendts, which compromised Bertsch's duty to provide independent tax advice to Plaintiffs.

139.    Bertsch breached his obligations and duties by having a direct financial interest in the investment vehicles he was evaluating for the Wendts because he received commissions from such investment vehicles; therefore Bertsch had a clear conflict of interest that he did not disclose to Plaintiffs.

140.    Bertsch breached his obligations and duties by knowingly misrepresenting to the Wendts the advisability of investing in such investment vehicles because he knew or should have known such investment vehicles were not financially sound.

141.    Bertsch breached his obligations and duties by having knowledge that the investment vehicles were part of a fraudulent scheme and failed to exercise reasonable professional care and competence is rendering tax opinion letters and other tax planning advice to the Wendts.

142.    Bertsch's fraudulent, misleading, and/or incompetent services to the Wendts as their trusted tax advisor not only fell below the acceptable standard of care for a reasonable tax professional, but further constitutes conduct discreditable to the tax profession.

143.    The Wendts would not have entered into the investment vehicles without the promotion and approval by Bertsch that such investment vehicles were sound financial investments with favorable tax benefits to Plaintiffs.

144.    Had Bertsch provided competent tax services free from conflicts of interest, the Wendts would not have entered into the Trusts arrangements.

145.    The Wendts have been damaged in excess of $1,500,000 as a proximate result of Bertsch's failure to provide the Wendts with independent, sound, tax planning services, free of conflicts of interest and in violation of the numerous AICPA Code violations.

## COUNT VIII
## CIVIL CONSPIRACY

146.    The Wendts reallege and adopt paragraphs 1-81 as paragraph 146 of Count VIII.

147.    The Defendants each agreed to and acted in concert with each other in carrying out the fraudulent schemes described above.

148.    Defendants conspired to defraud the Wendts, and the Trust Funds were invested in ways other than as represented.

149.    The Defendants each received improper, undisclosed, and unauthorized fees or commissions as a result of the scheme.

150.    Each of the Defendants performed acts in furtherance of the common fraudulent scheme.

151.    The Defendants are jointly and severally liable for the Wendts' damages in excess of $1,500,000.

## RELIEF REQUESTED

The Wendts pray for the following relief:

A.     A money judgment against the Defendants in an amount in excess of $1,500,000,

together with all accrued interest and attorney's fees;

B.     An order of disgorgement and restitution in an amount to be determined at trial;

C.     An award of punitive damages;

D.     An award of attorneys' fees and costs as permitted by law; and

E.     Such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable.

DALLEN AND PEGGY WENDT

Dated:  June 24, 2008                    By: _____/s/  Eric S. Rein_____
                                              One of their attorneys

Eric S. Rein (ARDC # 6181305)
Schwartz Cooper Chartered
180 North LaSalle Street, Suite 2700
Chicago, IL  60601
(312) 346-1300
Facsimile:  (312) 782-8416
rrein@schwartzcooper.com

Paul Richard Brown (WSBA No. 19357)
Chris C. Cramer (WSBA No. 32496)
Beresford Booth PLLC
145 Third Ave. S, Suite 200
Edmonds, WA  98020
(425) 776-4100
Facsimile: (425) 776-1700
paulb@beresfordlaw.com
chrisc@beresfordlaw.com
Pro hac vice application pending

Attorneys for Plaintiffs
Dallen and Peggy Wendt