IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DALLEN and PEGGY WENDT, | ) |
| Plaintiffs | ) ) ) |
| v. | ) Case No.: 08cv3612 |
| | ) Judge Castillo |
| HANDLER, THAYER & DUGGAN, LLC, et al., | ) |
| | ) Magistrate Judge Cole |
| Defendants | ) ) |

## DEFENDANT STEPHEN P. DONALDSON'S MOTION TO DISMISS

Defendant Stephen P. Donaldson ("Donaldson"), pursuant to Fed.R.Civ.P. 9(b) and 12(b) and pursuant to the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. sec 78u, et al., hereby moves that Plaintiffs' Complaint be dismissed[1].  As reasons for this Motion, Donaldson states[2]:

1. The general and conclusory allegations made against Donaldson do not comply with the requirements of Fed.R.Civ.P. 9(b) or Section 4(b) of the PSLRA and therefore must be disregarded.  If only well-pleaded facts in the Complaint are considered, they fall well short of stating a claim under Rule 10b-5 when tested against the standards of Fed.R.Civ.P. 12(b)(6).

2. Plaintiffs failed to bring their securities fraud claim within the requisite statute of limitations period.

3. Plaintiffs fail to allege any facts giving rise to fraudulent misrepresentation.

4. Plaintiffs fail to allege any facts giving rise to unjust enrichment.

---

[1] Under the applicable conflict of law analysis, the law of the jurisdiction with the most significant relationship to the events out of which the cause of action arose governs.  Carris v. Marriott Intern, Inc., 466 F.3d 558 (7th Cir. 2006).  Movant has not yet made a determination on this issue, but such determination is irrelevant to the present motion.

[2] On August 28, 2008, Movant served Plaintiffs' counsel with a letter setting out his arguments in this Motion.

5.  Plaintiffs fail to allege any facts giving rise to breach of fiduciary duty.

6.  Plaintiffs fail to allege any facts giving rise to unfair and deceptive trade practices under the Illinois Consumer Fraud Act.

7.  Plaintiffs fail to allege any facts giving rise to civil conspiracy.

8.  In addition, the Complaint should be dismissed for reasons set forth in the accompanying Memorandum in Support of Defendant Donaldson's Motion to Dismiss.

WHEREFORE, for the reasons set forth above and in the accompanying Memorandum in Support of Defendant Donaldson's Motion to Dismiss, Donaldson prays that Plaintiffs' Complaint be dismissed with prejudice, with costs in favor of Donaldson, and that the Court grant any other relief it deems just.

Respectfully submitted,

By: /s/ Peter M. King
One of the attorneys for Defendants

Peter M. King
William H. Jones
Kasey M. Folk
Dorothy Moran
**CANEL, DAVIS & KING**
10 S. LaSalle Street, Suite 3400
Chicago, Illinois 60603
(312) 372-4142
Atty No. 01836

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DALLEN and PEGGY WENDT, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Case No.: 08cv3612 |
| | ) | |
| | ) | Judge Castillo |
| HANDLER, | ) | |
| THAYER & DUGGAN, LLC, et al., | ) | |
| | ) | Magistrate Judge Cole |
| Defendants | ) | |
| | ) | |

**DEFENDANT DONALDSON'S MEMORANDUM
IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant Stephen P. Donaldson ("Donaldson"), in support of his Motion to Dismiss Plaintiffs' Complaint, states as follows:[1]

**Allegations of the Complaint**

Plaintiffs filed an eight count Complaint against several defendants. Plaintiffs allege the following: In 2002, plaintiff Dallen Wendt travelled to the Bahamas to attend a multi-day "Advanced International Planning Conference" (¶19). Plaintiffs allege that at this conference in the Bahamas, the "Conference Presenters" promoted an investment strategy and structure wherein: (a) funds were put in an offshore trust managed by First Fidelity Trust, a Nevis, West Indies trustee, (b) the trustee would in turn purchase life insurance policies and/or annuities through Fidelity Insurance Company in Anguilla, British West Indies, and (c) Fidelity Insurance Company would in turn invest the policy proceeds in certain investment accounts with

---

[1] On August 28, 2008, Movant served Plaintiffs' counsel with a letter setting out his arguments in this Motion.

Westminster Hope & Turnberry, an investment account administrator in the Bahamas (¶23). Plaintiffs also allege that the Conference Presenters' represented that the investment structure offered "no-risk" fixed income accounts, including an account paying a fixed return of 8% per annum (¶25). The Conference Presenters also allegedly represented that the fixed account was "guaranteed" by financially secure companies, including Alliance Holding Company (¶26).

Plaintiff Dallen Wendt alleges he returned from the conference and retained defendant attorneys (¶29). Plaintiffs allege that defendant attorneys, their law firm, Business Planning Services, LLC (BPS), and Bertsch were the "Trust Advisors" who acted as the Wendts' attorneys and financial advisors at all relevant times (¶37). Plaintiffs allege that, at the recommendation of these defendants and other representations, they established two trusts to invest in the Fixed Accounts: the "Smiling Frog Trust" dated December 23, 2002, and the "Black Ink Trust" executed December 27, 2002 (¶43). Each trust allegedly had its own trustee, and the Protector of the Black Ink Trust is alleged to be BPS (¶¶44-45). The trustees are allegedly residents of Nevis, West Indies (¶46).

Plaintiffs allege that they were assured that although the Trustees, the Protector, and investments were offshore, the Wendts could effectively control and monitor the Trusts' investments through United States affiliates. The trusts allegedly were set up to be controlled by certain defendants to this action ("Trust Managers"). The alleged purpose of having the Trust Managers as local contacts was meant to give the Wendts the ability to obtain accounting information and control over the Trust's investments and activities (¶¶50-52).

Plaintiffs allege that the Trust Managers, the Trust Advisors, the Trustees, Fidelity Insurance Company, Westminster Hope & Turnberry and Sunderlage were all engaged in a

"common enterprise" to earn undisclosed fees and commissions from the Trusts plaintiffs were advised to establish (¶53).

Plaintiffs allege the defendants' representations were material to the Wendts' decision to form and fund the trusts, and through their material misrepresentations about the safety, character and profitability of speculative investments, induced the Wendts to establish the trusts. Plaintiffs allege that defendants knew or should have known that the investments were highly speculative and were in precarious financial circumstances (¶¶57-61).

Plaintiffs claim that in November 2007, the plaintiffs asked the Trust Advisors to have the trustees liquidate all of the accounts which were set to mature in January 2008. Plaintiffs allege that they were advised that Fidelity Insurance Company claimed the investment had been depleted and they could only pay 40 cents on the dollar if the accounts were liquidated (¶ 69).

Plaintiffs claim that for months their requests to liquidate the accounts and for information and an accounting have been ignored by the defendants, the trustees, and the trust protector. Plaintiffs claim the trust funds were invested in collateralized Debt Obligations ("CDOs") and that defendants retained all excess returns over the returns guaranteed in the Fixed Accounts as management fees or commissions, all of which were not disclosed to the Wendts and which defendants continue to collect (¶¶77-78).

The gist of plaintiffs' Complaint against Donaldson is that he was one of many Conference Presenters and was one of many Trust Managers. Plaintiffs do not allege that Donaldson was a trustee. Plaintiffs do not allege any facts supporting the existence of any entity or group recognized by law or in practice to be "Trust Managers." Nor have plaintiffs alleged

the existence of any documents signed by any party setting forth the existence of any so-called "Trust Managers," let alone what their obligations were to be.

Plaintiffs make no further allegations against Donaldson specifically. Plaintiffs' legal theories as to against Donaldson are as follows: Securities Violations (Count V); violations of the Illinois Consumer Fraud Act (Count IV); Fraudulent Misrepresentation (Count I); Unjust Enrichment (Count II); Breach of Fiduciary Duty (Count III); and Civil Conspiracy (Count VIII). Counts VI (legal malpractice) and VII (accounting malpractice) are not directed against Donaldson.

## ARGUMENT

1. **Alleged Securities Violations (Count V)**

    a. **Plaintiffs failed to file their claim within the Statute of Limitations.**

Plaintiffs allege Defendants violated Section 10(b) of the Exchange Act (15 U.S.C. sec. 78j(b)) and Rule 10b-5 (17 C.F.R. sec. 240.10b-5).

"[F]ederal and not state law supplies the statute of limitations in suits under sec 10(b) and Rule 10b-5." Short v. Belleville Shoe Manufacturing Company, et al., 908 F.2d 1385, 1389 (7th Cir. 1990). The statute of limitations applicable to 10(b) and 10b-5 actions is found in section 13 of the Securities Act of 1933: "one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence…In no event shall any such action be brought more than three years after the security was bona fide offered to the public, or…more than three years after the sale." Id. at 1390-91.

Plaintiffs allege that they established both trusts at issue in December 2002 (¶43). Assuming that these transactions were encompassed by 10(b) and 10b-5, plaintiffs had until December 2005 to file their action against Donaldson. Plaintiffs failed to do so. Instead, they filed their Complaint on June 24, 2008, two and one-half years after the expiration of the statute of limitations. Their federal securities claim is time-barred.

### b. **Plaintiffs fail to state a claim upon which relief can be granted.**

Even if the plaintiffs had filed their securities claim within the statutory period, their claim still should be dismissed for their failure to plead the elements and facts required.

To state a claim pursuant to Rule 10b-5, plaintiffs must allege that Donaldson (1) made a false statement or omission; (2) of a material fact; (3) with scienter; (4) in connection with the purchase or sale of securities; (5) upon which the plaintiffs relied; and (6) that proximately caused plaintiffs' injuries. In re Healthcare Compare Corp. Sec. Litig., 75 F.3d 276, 280 (7th Cir. 1996). Because the 10b-5 claim is a fraud claim, the Complaint must further plead "the circumstances constituting fraud…with particularity." Fed. R. Civ. R. 9(b). "In the Seventh Circuit, this rule has been interpreted as requiring the complaint alleging fraud to state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" Fishman v. Meinen, 2003 WL 44223 at *5 (N.D. Ill. 2003) quoting, in part, UniQuality, Inc. v. Infotronx, Inc., 974 F.2d 918 (7th Cir. 1992). "These mandates require the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." DH2, Inc. v. Athanassiades, 359 F.Supp.2d 708,716 (N.D. Ill. 2005).

The Private Securities Litigation Reform Act (the "Reform Act"), 15 U.S.C. sec. 78u-4(b), supplements Fed. R. Civ. P. 9(b) by requiring that securities fraud plaintiffs "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind….It further requires a plaintiff to specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading….If these requirements are not met, the Court shall dismiss the complaint." Fishman, *supra,* at *5. 15 U.S.C. sec. 78u-4(b)(3).

Plaintiffs cannot group defendants together in making their allegations. "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to "defendants." Mills v. Polar Molecular Corp., 12 F.3d 1170 (2d Cir. 1993). "Further, as a general rule, a complaint that 'lumps all the defendants together and does not specify who was involved in what activity' is generally insufficient to satisfy Rule 9(b)." Fishman, *supra* at *6, quoting Sears v. Likens, 912 F.2d 889 (7th Cir. 1990).

Plaintiffs in this case have failed to plead any of the elements of their securities claim as required.

### i.  **Plaintiffs fail to allege with particularity any fraudulent statement or omission by Donaldson.**

Plaintiffs fail to allege any particular statement or omission of a material fact made by Donaldson. Because plaintiffs have failed to properly plead the first two elements of securities fraud, their claim should be dismissed.

### ii.  **Plaintiffs fail to allege any scienter on the part of Donaldson.**

The Reform Act requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," *Id.* sec. 78u-4(b)(2). "Group

6

pleading allegations are insufficient under the PSLRA to establish scienter on the part of each individual Defendant." DH2, Inc. v. Anthanassiades, 359 F.Supp.2d 708 (N.D. Ill. 2005).

Plaintiffs fail to make any pleading concerning scienter on the part of Donaldson. Because plaintiffs failed to properly plead the third element of securities fraud, their claim should be dismissed.

### iii.    Plaintiffs lack standing to bring a claim under 10(b) and 10b-5.

Plaintiffs were not purchasers or sellers of securities and therefore lack standing to bring a claim under 10(b) and 10b-5. According to the Complaint, plaintiffs established two trusts, plaintiffs funded the trusts, the trusts' funds were then used to obtain life insurance policies from Fidelity Life Ins. Co, and the insurance company then forwarded those proceeds to Westminster, and Westminster purchased stocks, bonds, and money market instruments (¶¶23, 25, 27).

In Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975), the Supreme Court adopted the Birnbaum rule: "[T]he plaintiff class for purposes of a private damage action under sec. 10(b) and Rule 10b-5 [is] limited to actual purchasers and sellers of securities." *Id. at 731*.

The Wendts were not purchasers or sellers of securities. They established trusts. The entity engaged in the purchase and sale of securities allegedly was Westminster. Because plaintiffs did not engage in the purchase or sale of securities, they do not have standing to bring a claim under section 10(b) and Rule 10b-5 and their claim should be dismissed.

### iv.    Plaintiffs fail to allege any reliance, causation, or injury connected to any particular statements or omissions of Donaldson.

Because plaintiffs fail to allege with particularity any statements or omissions made by Donaldson, they necessarily have not adequately pled reliance on such statements, causation, or

7

injury. Therefore, plaintiffs have failed to allege the remaining elements required by 10(b) and 10b-5, and their claim should be dismissed.

Additionally, Donaldson is so remote from the alleged securities purchases by Westminster, that, as a matter of law, nothing he said or failed to say could have induced reliance on the part of the plaintiffs or causation of any injury they had. Recently, in <u>Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.</u>, 128 S.Ct. 761 (2008), the United States Supreme Court held that defendants in collusion with a company that misstated its income were too remote from the purchaser of that company's securities to be held liable under 10(b) or 10b-5.

In <u>Stoneridge</u>, plaintiffs were investors who alleged losses after purchasing common stock of Charter Communications. Plaintiffs alleged that respondents sold to Charter the digital cable converter boxes that Charter furnished to its customers. Charter and respondents entered into an arrangement whereby Charter would overpay respondents $20 for each box it purchased, with the understanding that respondents would return the overpayment by purchasing advertising from Charter. The respondents drafted documents to make it appear the transactions were unrelated and conducted in the ordinary course of business. Charter then recorded the advertising purchases as revenue and capitalized its purchases of the boxes. Such recordation enabled Charter to fool its auditor into approving a more favorable financial statement than if there had been no false accounting. Arthur Anderson prepared Charter's financial statement which showed the inflated revenue. The financial statement was filed with the SEC and reported to the public. Plaintiffs alleged reliance on the financial statement and violations by the respondents of 10(b) of the Securities and Exchange Act.

In considering the viability of the 10(b) and 10b-5 claims, the Court stated that the deceptive act alleged must be "in connection with the purchase or sale of any security." *Id.* at 770. The Court connected the analysis of purchase or sale to the 10(b) requirement of reliance on the misrepresentation. The Court concluded that the respondent companies' "deceptive acts …[were] too remote to satisfy the requirement of reliance. *Id.* at 770. The Court added, "nothing the respondents [companies] did made it necessary or inevitable for defendant to record the deceptive transactions as it did." *Id.* at 770.

Finally, the Court noted that plaintiff was attempting to apply 10(b) beyond the securities markets. The Court noted that the securities markets concern the realm of financing business, while purchase and supply contracts concern the realm of ordinary business operations. Ordinary business operations are governed by state law, for the most part. The Court cautioned that extending 10b actions as argued by the plaintiff would carry a risk, "that the federal power would be used to invite litigation beyond the immediate sphere of securities litigation and in areas already governed by functioning and effective state law guarantees. Our precedents counsel against this extension." *Id*. at 771.

As set forth in plaintiffs' Complaint, Donaldson was remote from the alleged securities transactions in the instant case. He has no liability under a 10(b) or 10b-5 action, and this claim against him should be dismissed.

  v.  **<u>Mrs. Wendt fails to allege any basis for a claim.</u>**

There is no allegation that Mrs. Wendt attended the conference in the Bahamas, or otherwise received any particular fraudulent statement or omission by Donaldson on which she

9

relied such that she has standing to bring a claim under 10(b) and 10b-5. Her claim therefore should be dismissed.

2. **Alleged violations of the Illinois Consumer Fraud Act (Count IV).**

   a. **Plaintiffs lack standing.**

"The Illinois Consumer Fraud Act (ICFA) applies only to fraudulent transactions which take place primarily and substantially in Illinois." Barbara's Sales, Inc v. Intel Corp., 227 Ill.2d 45, 60 (2007). Plaintiffs fail to allege any transaction which took place between themselves and Donaldson in Illinois. This claim against Donaldson should be dismissed.

   b. **Plaintiffs fail to properly plead the claim.**

To prove a private cause of action under the Illinois Consumer Fraud Act (ICFA), a plaintiff must establish the following: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception. Avery v. State Farm Mutual Automobile Insurance Co., 216 Ill.2d 100, 180 (2005). Under federal Rule 9(b), the plaintiffs must plead their fraud claims with particularity. Lantz v. American Honda Motor Company, Inc., (N.D. Ill. 2007), 2007 WL 1424614.

Just as plaintiffs failed to plead either the elements or the particularity required to properly set forth a 10(b) and 10b-5 claim, plaintiffs have failed to plead either the elements of a claim under the ICFA or the requisite particularity as against Donaldson. Plaintiffs' claim therefore should be dismissed.

3. **Remaining Counts**

The remaining counts against Donaldson (Fraudulent Misrepresentation, Unjust Enrichment, Breach of Fiduciary Duty, and Civil Conspiracy) should also be dismissed pursuant to Fed.R.Civ.P. 9(b). Rule 9(b) provides, "in alleging fraud…, a party must state with particularity the circumstances constituting fraud…" This rule serves three main purposes: "(1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party." Vicom, Inc. v. Harbridge Merchant Services, Inc., 20 F.3d 771, 777 (7th Cir. 1994). "[T]he rule requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id.* at 777 (citations omitted). Rule 9(b), "requires a plaintiff to plead the who, what, when, where, and how…" DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990).

Rule 9(b) applies to "averments of fraud." Borsellino v. Goldman Sachs Group, Inc., 477 F.3d 502, 507 (7th Cir. 2007). "Whether the rule applies will depend on the plaintiffs' factual allegations." *Id.* at 507. "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.* at 507.

Each of plaintiffs' common law counts "sounds in fraud" and should be dismissed.

a. **Fraudulent Misrepresentation**

A cause of action based on fraudulent misrepresentation which fails to comply with Rule 9(b) should be dismissed. *See* Amzak Corp. v. Reliant Energy, Inc., 2004 WL 1882482 (N.D. Ill. 2004).

Plaintiffs' Count I is labeled "Fraudulent Misrepresentation." Every sentence of this Count contains words sounding in fraud: "false statements," "omitted...material facts,"

"misrepresentations and omissions," etc. (¶¶82-89). Yet none of these allegations state anything in particular as to Donaldson. Because plaintiffs' fraudulent misrepresentation count fails to satisfy the Rule 9 (b) pleading requirements of particularity as to Donaldson, this count should be dismissed.

    b. **<u>Unjust Enrichment</u>**

"To the extent [plaintiff's] unjust enrichment claims rely on theories of fraud, its averments of fraud must comply with Rule 9(b)." <u>Zurich Capital Markets Inc. v. Coglianese</u>, 2005 WL 1950653 (N.D. Ill. 2005).

Plaintiffs' unjust enrichment count (Count II) relies on theories of fraud. Plaintiffs' allegations in this count include: "Defendants have taken undisclosed fees and commissions from the Trusts' assets, <u>based on Defendants' false and misleading acts and omissions</u>." (¶91); "Defendants were not entitled to these funds, which were <u>obtained from the Wendts through fraud</u> and improper means." (¶95); and "Defendants were unjustly enriched <u>by obtaining proceeds from the Wendts by fraud</u>…" (¶97) (emphasis added). Because plaintiffs' unjust enrichment claim relies on theories of fraud, and because plaintiffs fail to satisfy the Rule 9(b) particularity pleading requirements as to Donaldson, this count of plaintiffs' complaint must be dismissed.

    c. **<u>Breach of Fiduciary Duty</u>**

Breach of fiduciary duty claims premised on defendant's fraudulent conduct are subject to Rule 9(b)'s heightened pleading standards. <u>Robison v. Caster</u>, 356 F.2d 924, 925 (7th Cir. 1966). *See also* <u>Henneberry v. Sumitomo Corp. of America</u>, 415 F.Supp.2d 423 (S.D.N.Y. 2006), "[T]he heightened pleading standard is applicable to breach of fiduciary claims only when the breach is premised on a defendant's fraudulent conduct, such as an attempt to induce action or

inaction on the part of the investors by means of falsehoods or material omissions." *at* 464 (citations omitted).

In count III, plaintiffs restate their allegations of fraud and state that, "Defendants violated their duty by recommending that the Wendts settle the Trusts to make investments in speculative businesses and accounts." That alleged recommendation is the very same statement alleged throughout plaintiffs' complaint to be fraudulent. Because plaintiff's breach of fiduciary duty claim is based on alleged fraud, and because plaintiffs fail to plead any particular facts against Donaldson, plaintiffs claim should be dismissed pursuant to Rule 9(b).

### d. Civil Conspiracy

Where the plaintiffs' civil conspiracy claim is premised on a course of fraudulent conduct, yet fails to state with particularity the circumstances constituting the conspiracy between the defendants, the claim should be dismissed. Borsellino v. Goldman Sachs Group, Inc., 477 F.3d 502, 507, 509 (7th Cr. 2007).

Plaintiffs' civil conspiracy allegations are premised on fraud: "Defendants each agreed to and acted in concert with each other in carrying out the fraudulent schemes described above," (¶147); "Defendants conspired to defraud the Wendts," (¶148); and "Defendants performed acts in furtherance of the common fraudulent scheme." (¶150). Because plaintiffs' civil conspiracy claim is based on alleged fraud, and because plaintiffs have failed to comply with Rule 9(b)'s particularity pleading requirements as against Donaldson, plaintiffs' claim should be dismissed.

### Conclusion

For these reasons, Movant respectfully requests this Court to dismiss Stephen P. Donaldson this case pursuant to Fed. R. Civ. P. 9(b) and 12(b) and to grant any other relief this

Court deems just.

          By: /s/ Peter M. King_____
One of the Attorneys for Foster & Dunhill Consulting, Inc. and Foster & Dunhill Planning Services, LLC

Peter M. King
William H. Jones
Canel, Davis & King
10 S. LaSalle Street
Suite 3400
Chicago, IL 60603
Phone: 312-372-4142
Fax: 312-372-6737
e-mail: pking@daviskinglaw.com
       wjones@daviskinglaw.com