**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| DALLEN AND PEGGY WENDT,<br>Plaintiffs,<br><br>v.<br><br>HANDLER, THAYER & DUGGAN, LLC,<br>ET AL.<br>Defendants. | Case No. 1:08-CV-03612<br><br>Judge Castillo<br><br>Magistrate Judge Cole |

**<u>DEFENDANTS' MOTION TO DISMISS</u>**

Defendants, Handler, Thayer & Duggan, LLC, James M. Duggan, Thomas J. Handler, Steven J. Thayer and Gregory Bertsch (collectively "HTD"), by counsel, respectfully move this Court to dismiss the claims asserted in Plaintiffs' Complaint in their entirety.  A memorandum in support of this motion is tendered herewith.

As grounds for this motion, HTD states as follows:

1.      The allegations in Plaintiffs' Complaint do not satisfy the pleading requirements of Fed. R. Civ. P. 8(a)(2) and *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) and should be dismissed.

2.      The allegations in Plaintiffs' Complaint do not satisfy the pleading requirements of Fed. R. Civ. P. 9(b) and should be dismissed.

3.      The allegations in Plaintiffs' Complaint do not satisfy the pleading requirements of the Private Securities Litigation Reform Act and should be dismissed.  *See* 15 U.S.C. § 78u-4(b)(1), (2).

4.    The claims set forth in Plaintiffs' Complaint are barred by applicable statutes of repose and limitations and should be dismissed.  *See* 735 ILCS 5/13-205; 815 ILCS 505/10a(e); 28 U.S.C.A. § 1658(b); and 735 ILCS 5/13-214.3.

5.    Plaintiffs' breach of fiduciary duty claim is duplicative of their claim for legal malpractice and should be dismissed.

6.    Plaintiffs' Complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

7.    The undersigned counsel hereby certifies that she complied with the Court's Case Management Procedure on Motion Practice by sending a concise letter summarizing the legal and factual grounds for this motion, with references to supporting authorities, to the nonmoving party and making a sincere effort to resolve issues relating to this motion prior to filing same.

WHEREFORE, Defendants, Handler, Thayer & Duggan, LLC, James M. Duggan, Thomas J. Handler, Steven J. Thayer and Gregory Bertsch, respectfully request that this Court dismiss the claims in Plaintiffs' Complaint with prejudice.

**DATED:** September 2, 2008

Respectfully submitted,

HANDLER, THAYER & DUGGAN, LLC, JAMES M. DUGGAN, THOMAS J. HANDLER, STEVEN J. THAYER AND GREGORY BERTSCH

By: _____/s/Barbara B. Edelman___
             One of Their Attorneys

Barbara B. Edelman
Gwen R. Pinson
Christopher M. Parenti (# 6256494)
Dinsmore & Shohl LLP
250 West Main Street, Suite 1400
Lexington, KY  40507
Telephone: (859) 425-1000

Facsimile:  (859) 425-1099
Edelman@dinslaw.com
Gwen.Pinson@dinslaw.com
Cparenti@dinslaw.com

Attorneys for Defendants, Handler, Thayer &
Duggan, LLC, James M. Duggan, Thomas J.
Handler, Steven J. Thayer and Gregory Bertsch

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2008, I electronically filed the foregoing Defendants'

Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which sent e-mail

notification of that filing to the following:

Eric S. Rein
Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
(312) 876-1700
erein@dykema.com

Paul Richard Brown
Chris C. Cramer
Beresford Booth PLLC
145 Third Avenue, Suite 200
Edmonds, WA 98020
(425) 776-4100
paulb@beresfordlaw.com
chrisc@beresfordlaw.com

*Attorneys for Plaintiffs, Dallen and Peggy Wendt*

Peter M. King
William H. Jones
Kasey M. Folk
Canel, Davis & King
10 South LaSalle Street
Suite 3400
Chicago, Il 60603
(312)372-4142
pking@daviskinglaw.com
wjones@daviskinglaw.com
kfolk@daviskinglaw.com

*Attorneys for Defendants, Foster & Dunhill Planning Services, LLC
and Stephen P. Donaldson*

Elaine S. Vorberg
Law Offices of Elaine S. Vorberg
1821 Walden Office Square
#400
Schaumburg, IL 60173
(847)397-9793
elaine@vorberglaw.com

*Attorney for Defendants, Sunderlage Resource Group, Inc. and*
*Tracy J. Sunderlage*

John P. Buckley
Dean J. Polales
Seth Alexander Horvath
Ungaretti & Harris LLP
3500 Three First National Plaza
Chicago, IL 60602
(312) 977-4400
jpbuckley@uhlaw.com
djpolales@uhlaw.com
sahorvath@uhlaw.com

*Attorney for Defendants, Offshore Trust Service, Inc., Joshua J. Crithfield*
*and Duane J. Crithfield*

        /s/Barbara B. Edelman

94524_2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| DALLEN AND PEGGY WENDT, | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:08-CV-03612 |
| v. | ) | |
| | ) | Judge Castillo |
| HANDLER, THAYER & DUGGAN, LLC, | ) | |
| ET AL. | ) | Magistrate Judge Cole |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN
<u>SUPPORT OF MOTION TO DISMISS</u>**

Defendants, Handler, Thayer & Duggan, LLC, James M. Duggan, Thomas J. Handler, Steven J. Thayer and Gregory Bertsch (collectively "HTD"), by counsel, respectfully tender the following Memorandum in Support of their Motion to Dismiss the claims asserted against them in Plaintiffs' Complaint in their entirety.

## <u>INTRODUCTION</u>

This is not a case in which unsophisticated investors were swindled out of their life savings. Rather, this case involves a multi-millionaire couple who sought out different groups of professionals to assist them with offshore investments in which they could protect their assets from creditors and receive favorable tax treatment. In fact, Plaintiff, Dallen Wendt, proved to be very knowledgeable and extremely meticulous with regard to his investment portfolio. He sent dozens of emails to his many advisors wherein he inquired about each and every aspect of the accounts and instruments in which he had directed his trusts to invest. Despite all Dallen Wendt's research and study into the nature of his investments, an unforeseeable market crash has jeopardized the returns he had hoped to receive.

Were it not for the devastating collapse of the subprime mortgage market, Plaintiffs would never have brought this case. It was that collapse, however, not some fraudulent scheme in which HTD allegedly engaged, that has caused certain of the instruments in the Plaintiffs' trusts to become illiquidable. Just like the sophisticated investors who lost money when the dot.com bubble burst in 2002, Dallen Wendt is now crying fraud and looking for someone to make him whole. Like the market analysts against whom so many claims were brought and then dismissed, HTD did not cause the subprime mortgage collapse, nor should it be held accountable for the resulting losses suffered by the Plaintiffs' trusts. *See, e.g., In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 362 (S.D.N.Y. 2003) (explaining that "[t]he cited alleged omissions of conflicts of interest . . . are not the 'legal cause' of the plaintiff's losses. There was no causal connection between the burst of the bubble and the alleged omissions; it was the burst which caused the market drop and the resultant losses a considerable time thereafter when plaintiffs decided it was time to sell.").

## **BACKGROUND**

In 2002, Plaintiffs, Dallen and Peggy Wendt (the "Wendts"), began looking into various asset protection and investment options, including offshore trusts. [*See* Complaint at ¶¶ 17 and 23.] At a conference in May of 2002, Dallen Wendt met representatives of HTD, Foster & Dunhill Consulting, Inc., Offshore Trust Service, Inc. and Fidelity Insurance Company Ltd. ("Fidelity") and attended presentations relating to certain offshore trust investment structures. [*See id.* at ¶¶ 19-23.] Over six months later, after investigating numerous trust investment strategies, the Wendts[1] hired HTD[2] to provide international tax planning legal services and then subsequently to draft the documents to set up one of their trusts. While HTD prepared the documents relating to the Smiling Frog Trust, HTD

---

[1]    While Plaintiffs will be referred to collectively throughout this memorandum as "the Wendts", it should be noted that HTD dealt almost exclusively with Dallen Wendt.

[2]    Though the Complaint attempts to obfuscate the facts relating to the retention of HTD by referring to the July 2002 letter BPS sent to Dallen Wendt, it clearly states that the Wendts retained HTD, not BPS. [*See* Complaint at ¶¶ 33 and 36.]

did not prepare the documents used to establish the Wendts' other trust, the Black Ink Trust. [*See id.* at ¶¶ 36, 44 and 45.]

Sometime between December 2002, when the trusts were set up, and January 2003, the Wendts deposited funds in both trusts. [*See id.* at ¶ 43.] In January 2003 the trustees of the Wendts' trusts purchased certain Fidelity life insurance policies, which in turn invested the policy proceeds in certain accounts, known as the Fixed 8 and the Fixed 8.5 Accounts[3], that were administered by an offshore entity known as Westminster Hope & Turnberry.[4] [*See id.* at ¶¶ 23 and 65.] Funds in these accounts were invested in Collateralized Debt Obligations, commonly known as CDOs. [*See id.* at ¶ 78.] Though the Complaint alleges that the trust funds were depleted as a result of management fees and commissions earned by the defendants, the Court certainly can take judicial notice of the recent collapse of the subprime mortgage market that virtually eliminated the secondary market for CDOs. *See* Fed. R. Evid. 201(b); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 357 n. 13 (S.D.N.Y. 2003). It was this collapse, and not the actions of the defendants herein, that caused the decline in value of the Wendts' trusts. *See In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 273 F. Supp. 2d at 362 (noting that "defendant does not become an insurer against an intervening cause unrelated to the acquisition, e.g., a precipitous price decline caused by a market crash.").

Even if the Wendts could establish a causal link between the unforeseen market collapse and the actions of HTD, the insufficiency of the allegations in the Complaint warrant dismissal of their claims pursuant to Fed. R. Civ. P. ("FRCP") 12(b)(6).

---

[3]    Upon information and belief, the trustee of the Black Ink Trust invested in the accounts that matured in January of 2008 and are currently in default while the trustee of the Smiling Frog Trust invested in the accounts that do not mature until 2013. [*See id.* at ¶ 65.]

[4]    Ironically, to date, the Wendts have failed to bring suit against Fidelity or Westminster Hope & Turnberry, even though these entities are the ones whose agreements with the Wendts' trusts are in default.

## ARGUMENT

The standard of review in deciding a motion to dismiss a complaint pursuant to FRCP 12(b)(6) requires that the Court view all of the complaint's allegations in the light most favorable to the plaintiff.  Importantly, though, the Court need not accept the legal conclusions asserted in the complaint.  *See, e.g., Davis v. Frapolly*, 747 F. Supp. 451, 452 (N.D. Ill. 1989).  In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the United States Supreme Court clarified the pleading standards a plaintiff must meet to avoid dismissal under FRCP 12(b)(6): "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 1964-65.  The Court went on to explain, "Rule 8(a)(2) still requires a 'showing' rather than a blanket assertion, of entitlement to relief."  *Id.* at 1965 n.3; *see also Limestone Development Corp. v. Village of Lemont*, 520 F.3d 797, 802-03 (7th Cir. 2008) (noting that *Twombly* "teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case.").

Here the allegations in Wendts' Complaint do not satisfy the *Twombly* standard.  The Wendts filed suit over five years after the trusts at issue were created.  The allegations in the Complaint fail to demonstrate why certain claims should not be dismissed because they have been brought outside applicable limitations periods.  Moreover, the allegations relating to common law and statutory fraud fail the particularity requirement of FRCP 9(b) and should be dismissed.  Finally, the Wendts' breach of fiduciary duty claim against HTD should be dismissed as it is duplicative of their claim for legal malpractice.  Since the Wendts' Complaint fails to state a claim upon which relief could be granted, all of the claims asserted against HTD therein should be dismissed.

**A.     The Statute Of Repose Bars The Wendts' Claim For Securities Violations.**

Count V of the Wendts' Complaint, which alleges claims for securities violations, is barred by the five-year statute of repose governing Rule 10b-5 claims.  28 U.S.C.A. § 1658(b)(2).  As explained by a prior decision from this District, "[t]he 'violation' for the purposes of the Rule 10b-5 statute of repose occurs when the defendant makes a misrepresentation in connection with the sale or purchase of securities; the sale itself need not have occurred to start the running of the repose period."  *Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, 192 F. Supp. 2d 852, 864 (N.D. Ill. 2002).  Though the Complaint is devoid of any specific allegations as to what misrepresentations were made when by which defendants, the decision in *Wafra Leasing Corp.* clearly establishes that the statute of repose began to run in January 2003 when the trust funds were invested in what the Complaint defines as the "Fixed Accounts", if not before.[5]  [*See* Complaint at ¶ 65.]  Since the Complaint in this matter was filed over five years and five months after the purchase of the securities at issue, the five-year statute of repose bars any claims the Wendts may have had arising under the Securities Exchange Act, and such claims should be dismissed.[6]

**B.     Claims Not Adequately Pleaded Pursuant to *Twombly*, the FRCP And Other Applicable Authorities Should Be Dismissed.**

As previously discussed, *Twombly* recognizes that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions."  127 S. Ct. at 1964-65.  Moreover, the Private Securities Litigation Reform Act and FRCP 9(b) dictate that securities

---

[5]     Notably, this Court has previously held that the continuing violation doctrine, through which otherwise time-barred acts can be linked to conduct falling within the limitations period, does not apply in federal securities fraud actions.  *Levine v. Bally Total Fitness Holding Corp.*, 2006 U.S. Dist. LEXIS 95006, at *29-30 (N.D. Ill. Sept. 29, 2006) (attached hereto as Exhibit A).

[6]     Moreover, because the Wendts' trusts, not the Wendts themselves, purchased the investments at issue, they have no standing to bring these claims under Section 10(b) and Rule 10(b)(5).  *See, e.g., Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731 (1975); *see also O'Brien v. Continental Illinois Nat'l Bank & Trust Co.*, 593 F.2d 54, 63 (7th Cir. 1979) (holding that plaintiff could not maintain securities fraud claim against trustee where trust, not plaintiff, had purchased securities at issue and plaintiff was simply trust beneficiary).

and fraud claims be stated with specificity and particularity. When these pleading standards are applied to the various causes of action set forth in the Wendts' Complaint, the allegations therein wholly fail to satisfy these requirements.

Throughout the Complaint, the firm, Handler, Thayer & Duggan, LLC, and its individual members are continually referred to collectively along with the other named defendants in this matter as "Defendants." Moreover, it is impossible to distinguish the allegations against the individual HTD defendants from those asserted against their firm and an entity that no longer exists - BPS - an entity which the Wendts never retained to provide services to them. Finally, there is also no way to differentiate the various allegations against each of the individual HTD defendants - all of whom had differing levels of involvement in their firm's representation of the Wendts.[7] The manner in which the Complaint sets forth allegations against HTD collectively under the categories of "Conference Presenters", "Trust Advisors" and "Defendants" fails to satisfy the pleading requirements applicable to many of the claims asserted therein. [*See, e.g.*, Complaint at ¶¶ 21, 37 and 42.] Thus, the claims discussed below should be dismissed.

1.    **The Wendts' securities claim fails to satisfy the pleading requirements of the Private Securities Litigation Reform Act.**

Under the Private Securities Litigation Reform Act ("PSLRA"), a plaintiff must (1) "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed" and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the

---

[7]    For example, while James Duggan and Thomas Handler are identified as "Conference Presenters", there are no specific allegations in the Complaint with regard to Steven Thayer's interactions with the Wendts beyond general, conclusory statements that he, along with the others, acted as the Wendts' attorney and financial advisor. [*See* Complaint at ¶ 37.]

required state of mind." 15 U.S.C. § 78u-4(b)(1), (2). "[T]he PSLRA essentially returns the class of cases it covers to a very specific version of fact pleading--one that exceeds even the particularity requirement of Federal Rule of Civil Procedure 9(b)." *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 594 (7th Cir. 2006), *vacated on other grounds*, 127 S. Ct. 2499 (2007). As under Rule 9(b), "[i]t is not sufficient for a complaint to refer to all the defendants under the general term 'Defendants' or refer to a defendant in an 'and/or' manner. . . . The complaint must be specific for *each* defendant." *Brinker Capital Holdings v. Imagex Servs.*, 178 F.R.D. 380, 384 (N.D.N.Y. 1998). Here, not only is the Wendts' Complaint devoid of any specific allegations as to what misleading statements were made when by which defendants, but the Complaint's continual references to all defendants under that general term or to various groups of defendants under other collective terms, such as "Conference Presenters" or "Trust Advisors", clearly fails the PLSRA's requirement that a complaint be specific as to *each* defendant. Accordingly, the claims set forth in Count V of the Wendts' Complaint should be dismissed.

## 2. The Wendts' common law and statutory fraud claims fail to satisfy FRCP 9(b) should be dismissed.

A plaintiff seeking to recover for fraud under Illinois law must allege and prove: (1) a false statement of material fact; (2) knowledge or belief of the falsity by the party making the false statement; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from the reliance. *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 174 (Ill. 1992). "Predictions about the future are opinions and not actionable under a theory of fraud." *Lidecker v. Kendall College*, 194 Ill. App. 3d 309, 316, 550 N.E.2d 1121, 1125 (Ill. App. Ct. 1 Dist. 1990); *Murphy v. Walters*, 87 Ill. App. 3d 415, 422-23, 410 N.E.2d 107, 113 (Ill. App. Ct. 2 Dist. 1980) (financial projections are not actionable); *Niemoth v. Kohls*, 171 Ill. App. 3d 54, 68-69, 524 N.E.2d 1085, 1094 (Ill. App. Ct. 1

Dist. 1988) (same). A plaintiff alleging fraud must demonstrate reasonable reliance. *See Kennedy v. Venrock Assocs.*, 348 F.3d 584, 592 (7th Cir. 2003) ("There is no actionable fraud without reasonable reliance, and reliance cannot be reasonable when it presupposes a failure to read clear language."). In fact, Illinois has held that the "bespeaks caution" doctrine, pursuant to which investors cannot reasonably rely on an offeror's optimistic statements about an investment when the offering documents contain cautionary language about the risks involved in the investment, is applicable in common law fraud cases and can be raised on a motion to dismiss. *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 20, 653 N.E.2d 968, 974-75 (Ill. App. Ct. 2 Dist. 1995).

Each of the aforementioned elements of a plaintiff's fraud claim must be alleged with sufficient particularity pursuant to FRCP 9(b). The Seventh Circuit explained "[t]his means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). "[I]n a case involving multiple defendants, . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 778 (7th Cir. 1994); *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); *Balabanos v. North Am. Inv. Group, Ltd.*, 708 F. Supp. 1488, 1493 (N.D. Ill. 1988) (stating that in cases involving multiple defendants "the complaint should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant"). "A complaint that attributes misrepresentations to all defendants, 'lumped' together for pleading purposes, generally is insufficient." *Design Time, Inc. v. Synthetic Diamond Technology, Inc.*, 674 F. Supp. 1564, 1569 (N.D. Ill. 1987).

In addition, the Seventh Circuit has held that a complaint alleging a claim under the Illinois Consumer Fraud Act "must be pled with the same specificity as that required under common law

fraud." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883-84 (7th Cir. 2005) (citation omitted) (affirming summary judgment entered in favor of the defendants). Specifically, a complaint must state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Gallagher Corp. v. Massachusetts Mut. Life Ins. Co.*, 940 F. Supp. 176, 180 (N.D. Ill. 1996) (citations omitted). The Illinois Supreme Court has held that failure to include specific allegations regarding "the deceptive manner of defendant's acts or practices . . . requires the dismissal of the complaint." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 419, 775 N.E.2d 951, 961 (Ill. 2002) (citation omitted).

As previously discussed, the Complaint constantly "lumps together" the HTD defendants with the other named defendants in this matter, as well as with one another and BPS, making it impossible to differentiate which allegations are being levied against which defendant. Since all of the individual HTD defendants had differing levels of involvement in their firm's representation of the Wendts, the Complaint fails to put them on notice as to whose conduct forms the basis of the Wendts' fraudulent misrepresentation claims. As such, the common law and statutory fraud claims asserted in Counts I and IV of the Complaint should be dismissed since they fail to allege fraud with sufficient particularity to survive scrutiny under FRCP 9(b).

### 3. The insufficiency of the Wendts' fraud allegations requires dismissal of their unjust enrichment claim as well.

Unjust enrichment is a basis of recovery, not a separate cause of action. In *Alliance Acceptance Co. v. Yale Ins. Agency, Inc.*, 271 Ill. App. 3d 483, 492, 648 N.E.2d 971, 977 (Ill. App. Ct. 1 Dist. 1995), an Illinois appellate court explained the concept of "unjust enrichment" as follows:

> To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. . . . The term 'unjust enrichment' is not

> descriptive of conduct that, standing alone, will justify an action for recovery. Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct.

*Id.* (citations and internal quotation marks omitted). Because unjust enrichment must be based upon another cause of action, such as fraud, "unjust enrichment cannot form the basis for liability" where the underlying fraud claim is deficient. *Mulligan v. QVC, Inc.*, 321 Ill. Dec. 257, 267, 888 N.E.2d 1190, 1200 (Ill. App. Ct. 1 Dist. 2008). Since the underlying fraud claim asserted herein is deficient as noted in the preceding section, the Wendt's claim for unjust enrichment should be dismissed as well.

In addition, because "[r]ecovery under a theory of unjust enrichment is based on a contract implied in law", the doctrine has no application where the relationship of the parties is governed by a contract. *Wheeler-Dealer, Ltd. v. Christ*, 379 Ill. App. 3d 864, 872, 885 N.E.2d 350, 357 (Ill. App. Ct. 1 Dist. 2008) (citation omitted). Where the terms of a contract, such as an engagement letter, govern the relationship between the parties, there can be no claim for unjust enrichment. *See, e.g., Center for Athletic Medicine, Ltd. v. Independent Medical Billers of Illinois, Inc.*, 321 Ill. Dec. 485, 494, 889 N.E.2d 750, 759 (Ill. App. Ct. 1 Dist. 2008) (holding that plaintiff could not sue in equity for unjust enrichment where the parties had entered into a contract, even though the contract was void as a matter of law). Though the Complaint points to the proposed engagement letter from BPS instead of the engagement letters that governed the attorney-client relationship between HTD and the Wendts, it clearly alleges that the relationship between the parties was governed by an express contract. [*See* Complaint at ¶ 36.] As a result, there can be no recovery under the theory of unjust enrichment, and the claims in Count II of the Complaint should be dismissed.

### 4. The Wendts' allegations of legal malpractice fail to satisfy the pleadings requirements set forth in *Twombly*.

To prevail in an action for legal malpractice, a plaintiff must prove the following elements: (1) the existence of an attorney-client relationship that establishes a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause establishing that but for the attorney's negligence, the plaintiff would have prevailed in the underlying action; and (4) damages. *First Nat'l Bank v. Lowrey*, 375 Ill. App. 3d 181, 196, 872 N.E.2d 447, 464 (Ill. App. Ct. 1 Dist. 2007). As previously discussed, the collective nature in which the allegations in the Complaint are styled not only make it impossible to distinguish the allegations against the individual HTD defendants from those asserted against their firm and/or the other named defendants, but there is also no way to differentiate the various allegations against each of the individual HTD defendants themselves - all of whom had differing levels of involvement in their firm's representation of the Wendts. Because the foregoing elements are not pleaded with the specificity required by *Twombly* and its progeny, the claims in Count VI of the Complaint should be dismissed.

### 5. The Wendts' bare allegations of the existence of a conspiracy cannot survive a motion to dismiss.

"Civil conspiracy is defined as 'a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means.'" *Duncan v. Peterson*, 359 Ill. App. 3d 1034, 1050, 835 N.E.2d 411, 425 (Ill. App. Ct. 2 Dist. 2005) (citing *McClure v. Owens Corning Fiberglas Corporation*, 188 Ill. 2d 102, 133, 720 N.E.2d 242 (Ill. 1999)). The gist of a civil conspiracy claim is not the agreement itself, but the tortious acts performed in furtherance of the agreement. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 63, 645 N.E.2d 888, 894 (Ill. 1994). The mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss. *Buckner v. Atlantic Plant Maintenance*, 182 Ill. 2d 12, 23-24, 694 N.E.2d 565, 571 (Ill. 1998). Further, the bare allegation of the existence

of a conspiracy does not constitute an actionable wrong upon which liability for damages may be found. *Hume & Liechty Veterinary Assocs. v. Hodes*, 259 Ill. App. 3d 367, 369, 632 N.E.2d 46, 48 (Ill. App. Ct. 1 Dist. 1994). Because the Complaint contains no factual allegations demonstrating that HTD conspired with anyone, the Wendts' conspiracy allegations set forth in Count VIII of the Complaint do not satisfy the pleading requirements of *Twombly* or the Illinois cases cited above and should be dismissed.

### C.    Because The Wendts' Breach Of Fiduciary Duty Claim Is Duplicative Of Their Claim For Legal Malpractice, It Should Be Dismissed.

Illinois law clearly holds that "[w]hen a breach of fiduciary duty claim is based on the same operative facts as a legal malpractice claim, and results in the same injury, the later claim should be dismissed as duplicative." *Fabricare Equip. Credit Corp. v. Bell*, 328 Ill. App. 3d 784, 791, 767 N.E.2d 470, 476 (Ill. App. Ct. 1 Dist. 2002); *see also Brush v. Gilsdorf*, 335 Ill. App. 3d 356, 360, 783 N.E.2d 77, 80 (Ill. App. Ct. 3 Dist. 2002) ("[I]n effect any alleged malpractice by an attorney also evidences a simultaneous breach of trust; however, that does not mean every cause of action for professional negligence also sets forth a separate and independent cause of action for breach of fiduciary duty.") (citing *Calhoun v. Rane*, 234 Ill. App. 3d 90, 95, 599 N.E.2d 1318, 1321 (Ill. App. Ct. 1 Dist. 1992)); *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 351, 736 N.E.2d 145, 155 (Ill. App. Ct. 1 Dist. 2000) ("Generally, a claim against an attorney for breach of fiduciary duty falls under the rubric of professional malpractice."). Thus, the breach of fiduciary duty claims in Count III of the Complaint should be dismissed since they are duplicative of the Wendts' claims for legal malpractice.[8]

---

[8]    Obviously, this ground for dismissal is pleaded in the alternative with respect to the request to dismiss the Wendts' legal malpractice claims pursuant to *Twombly*.

**D.    The Wendts' Complaint Fails To Plead That The Claims Asserted Therein Were Filed Prior To The Expiration Of The Applicable Limitations Periods.**

Applicable statutes of limitations bar the claims set forth in the Wendts' Complaint. 735 ILCS 5/13-205 establishes a five-year statute of limitations for "actions on unwritten contracts, expressed or implied, . . . or to recover damages for an injury done to property, real or personal, . . . and all civil actions not otherwise provided for."  Thus, the Wendts' claims for fraudulent misrepresentation, unjust enrichment, breach of fiduciary duty, accounting malpractice and civil conspiracy must have been brought within five years, or they are barred by the statute.  As for the Wendts' remaining claims, a three-year statute of limitations governs the securities fraud claims and the claims for violation of the Illinois Consumer Fraud Act, pursuant to 28 U.S.C.A. § 1658(b) and 815 ILCS 505/10a(e) respectively, while a two-year statute of limitations applies to the Wendts' claims for legal malpractice under 735 ILCS 5/13-214.3.  The investments at the heart of this dispute occurred in January 2003 when the Wendts' trust funds were invested in what the Complaint defines as the "Fixed Accounts."  [*See* Complaint at ¶ 65.]  Since this was over five years and five months prior to the date when this suit was filed, the Wendts filed beyond the expiration of all applicable limitations periods.  *See Indemnified Capital Investments, SA. v. R.J. O'Brien & Associates, Inc.*, 12 F.3d 1406, 1411-13 (7th Cir. 1993) (holding that claims under the ICFA are barred by the SOL where trading in the account at issue ceased more than three years prior to the filing of the complaint).

HTD anticipates that the Wendts will seek to rely upon application of the "discovery rule" in order to avoid application of the relevant statutes of limitations.  Under Illinois law, "[t]he plaintiff has the burden of pleading and proving the date of discovery when seeking to come within the 'discovery rule' exception to the statute of limitations."  *Society of Mount Carmel v. Fox*, 90 Ill. App. 3d 537, 539, 413 N.E.2d 480, 482 (Ill. App. Ct. 2 Dist. 1980) (citations omitted); *see also Waterford*

*Condominium Ass'n v. Dunbar Corp.*, 104 Ill. App. 3d 371, 376, 432 N.E.2d 1009, 1013 (Ill. App. Ct. 1 Dist. 1982) (affirming dismissal where claim not brought within applicable limitations period, noting that "it is incumbent upon a plaintiff seeking to take advantage of the discovery rule to plead in the complaint that the fraud remained undiscovered") (citations omitted).  The Complaint fails to allege when the Wendts discovered the alleged conflicts which form the basis of all of their claims.  As such, the discovery rule does not apply as a matter of law, and the Wendts' claims should be dismissed.  *Id.* (holding that discovery rule was not applicable as a matter of law where plaintiffs failed to plead that fraud remained undiscovered).[9]

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants, Handler, Thayer & Duggan, LLC, James M. Duggan, Thomas J. Handler, Steven J. Thayer and Gregory Bertsch, respectfully request that all claims asserted against them in the Wendts' Complaint be dismissed.

---

[9]    In addition, once a party knows or should know of her injury, "the party is under an obligation to inquire further to determine whether an actionable wrong was committed." *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 86, 651 N.E.2d 1132, 1139 (Ill. 1995).  Since the Wendts admit in the Complaint that they met representatives of all the entity defendants (HTD, Foster & Dunhill and Offshore Trust Service, Inc.) and of Fidelity Insurance Company Ltd. at a conference in May 2002, (*see* Complaint at ¶ 21), the Wendts should have been on notice of an affiliation between these entities at that point.  Either they waived any conflicts resulting from any alleged affiliation, or they failed their duty of inquiry under the discovery rule, rendering it inapplicable.

**DATED:** September 2, 2008                    Respectfully submitted,

                                               /s/Barbara B. Edelman
                                               Barbara B. Edelman
                                               Gwen R. Pinson
                                               Christopher M. Parenti (ARDC # 6256494)
                                               Dinsmore & Shohl LLP
                                               250 West Main Street, Suite 1400
                                               Lexington, KY  40507
                                               Telephone: (859) 425-1000
                                               Facsimile:  (859) 425-1099
                                               Edelman@dinslaw.com
                                               Gwen.Pinson@dinslaw.com
                                               Cparenti@dinslaw.com

                                               Attorneys for Defendants, Handler, Thayer &
                                               Duggan, LLC, James M. Duggan, Thomas J.
                                               Handler, Steven J. Thayer and Gregory Bertsch

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 2, 2008, I electronically filed the foregoing Defendants'

Memorandum In Support Of Motion To Dismiss with the Clerk of the Court using the CM/ECF

system, which sent e-mail notification of that filing to the following:

Eric S. Rein
Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
(312) 876-1700
erein@dykema.com

Paul Richard Brown
Chris C. Cramer
Beresford Booth PLLC
145 Third Avenue, Suite 200
Edmonds, WA 98020
(425) 776-4100
paulb@beresfordlaw.com
chrisc@beresfordlaw.com

*Attorneys for Plaintiffs, Dallen and Peggy Wendt*

Peter M. King
William H. Jones
Kasey M. Folk
Canel, Davis & King
10 South LaSalle Street
Suite 3400
Chicago, Il 60603
(312)372-4142
pking@daviskinglaw.com
wjones@daviskinglaw.com
kfolk@daviskinglaw.com

*Attorneys for Defendants, Foster & Dunhill Planning Services, LLC*
*and Stephen P. Donaldson*

Elaine S. Vorberg
Law Offices of Elaine S. Vorberg
1821 Walden Office Square
#400
Schaumburg, IL 60173
(847)397-9793
elaine@vorberglaw.com

*Attorney for Defendants, Sunderlage Resource Group, Inc. and*
*Tracy J. Sunderlage*

John P. Buckley
Dean J. Polales
Seth Alexander Horvath
Ungaretti & Harris LLP
3500 Three First National Plaza
Chicago, IL 60602
(312) 977-4400
jpbuckley@uhlaw.com
djpolales@uhlaw.com
sahorvath@uhlaw.com

*Attorney for Defendants, Offshore Trust Service, Inc., Joshua J. Crithfield*
*and Duane J. Crithfield*


_____/s/Barbara B. Edelman_____

LexisNexis® *Total Research System*

Switch Client ┊ Preferences ┊ Sign Out ┊ ? Help

Search ⎸ Research Tasks ⎸ Get a Document ⎸ *Shepard's*® ⎸ Alerts ⎸ Total Litigator ⎸ Transactional Advisor ⎸ Cour

Service: **Get by LEXSEE®**
Citation: **2006 U.S. Dist. LEXIS 95006**

*2006 U.S. Dist. LEXIS 95006, \**

DOUGLAS LEVINE, Plaintiff, v. BALLY TOTAL FITNESS HOLDING CORPORATION, PAUL A. TOBACK, JOHN W. DWYER, LEE S. HILLMAN, and ERNST & YOUNG, LLP, Defendants.

No. 06 C 1437

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2006 U.S. Dist. LEXIS 95006

September 29, 2006, Decided

**PRIOR HISTORY:** In re Bally Total Fitness Sec. Litig., 2006 U.S. Dist. LEXIS 93986 (N.D. Ill., July 12, 2006)

**COUNSEL:** [\*1]  For Douglas Levine, Plaintiff: Christopher B Sanchez ▾, Cafferty Faucher LLP, Chicago, IL; Deborah R. Gross ▾, Law Offices of Bernard M. Gross, P.C., Philadelphia, PA; Marvin Alan Miller ▾✅, Miller Law LLC, Chicago, IL; Robert P. Frutkin, Law Offices of Bernard M. Gross, Philadelphia, PA.

For Bally Total Fitness Holding Corporation, Paul A Toback, Defendants: Janet Malloy Link ▾, Michael James Faris ▾, Robert Walter Tarun ▾, LEAD ATTORNEYS, Latham & Watkins LLP (IL), Chicago, IL; Laurie B Smilan ▾, Latham & Watkins LLP, Reston, VA.

For John W. Dwyer, Defendant: Howard Steven Suskin ▾✅, LEAD ATTORNEY, Shyni R Varghese ▾, William Denby Heinz ▾✅, Jenner & Block LLP, Chicago, IL.

For Lee S. Hillman, Defendant: Dawn Marie Canty ▾, Heather J Kuhn O'Toole ▾, Mary Ellen Hennessy ▾, Steven L. Bashwiner ▾✅, Katten Muchin Rosenman LLP, Chicago, IL.

For Ernst & Young, LLP, Defendant: Bradley Joseph Andreozzi ▾, Brian J. Massengill ▾, Dana S Douglas ▾, David William Fuller ▾, Jeffrey Alan Berger ▾, Stanley J. Parzen ▾✅, Mayer, Brown, Rowe & Maw LLP, Chicago, IL.

**JUDGES:** John F. Grady, United States District Judge.

**OPINION BY:** John F. Grady

**OPINION**

**MEMORANDUM OPINION**

Before the court are defendants' motions to dismiss the complaint. **[\*2]** For reasons of judicial economy, at this juncture, the court is addressing only defendants' arguments that

plaintiff's claims are time-barred. For the following reasons, the motions of Lee S. Hillman, John W. Dwyer, and Bally Total Fitness Holding Corporation and Paul A. Toback are granted in part and denied in part, and the motion of Ernst & Young, LLP is granted.

## BACKGROUND

This case is part of a group of consolidated cases referred to as *In re Bally Total Fitness Securities Litigation.* [1] Plaintiffs have filed several related securities fraud putative class actions against Bally Total Fitness Holding Corporation ("Bally"); three of its former officers and directors, Lee S. Hillman, John W. Dwyer, and Paul A. Toback; and Bally's former auditor, Ernst & Young, LLP. It is alleged that defendants violated federal securities laws by publicly disseminating false and misleading corporate reports, financial statements, and press releases.

### FOOTNOTES

[1] The lead case is *Petkun v. Bally,* 04 C 3530, which was filed on May 20, 2004. We previously granted the parties' motions for consolidation of the cases for all purposes and directed that the consolidated cases be referred to as "In re Bally [Total] Fitness Securities Litigation." (Minute Order of Sept. 8, 2004.) We also appointed Cosmos Investment Company, LLC ("Cosmos") as lead plaintiff (Memorandum Opinion of March 15, 2005), and appointed lead and local counsel (Minute Order of May 23, 2005). On January 3, 2006, Cosmos filed a consolidated class action complaint on behalf of a class consisting of those who purchased or acquired Bally securities during the period of August 3, 1999 through and including April 28, 2004.

The complaint in the instant case was filed on March 15, 2006; the case was initially assigned to Judge Der-Yeghiayan. It was reassigned to us and consolidated with the others on April 18, 2006.

[*3]  The complaint alleges the following facts, which are taken as true for purposes of the instant motions.

Defendant Bally is a corporation that operates many fitness centers throughout North America. Bally's securities are publicly traded on the New York Stock Exchange. Plaintiff Douglas Levine acquired 2.6 million shares of Bally common stock in connection with Bally's acquisition of Crunch Fitness International, Inc. ("Crunch") pursuant to an October 31, 2001 Agreement and Plan of Merger (the "Crunch Acquisition Agreement"). Plaintiff was a stockholder of Crunch at the time of the acquisition. He alleges that the shares of Bally stock sold to him in connection with the acquisition were valued at an artificially inflated price due to defendants' wrongful conduct.

Prior to and at the time of the acquisition, defendant Dwyer was Bally's Chief Financial Officer and Executive Vice President; defendant Toback was Bally's Chief Operating Officer; and defendant Hillman was Chief Executive Officer ("CEO"), President, and Chairman of Bally's Board of Directors (the "Board"). Hillman retired in December 2002. Dwyer resigned from his positions on April 28, 2004. Toback subsequently became President [*4] and CEO. (In August 2006, Toback resigned from his positions.) We will refer to Hillman, Dwyer, and Toback collectively, where appropriate, as the "Individual Defendants," and to Bally and the Individual Defendants, where appropriate, as the "Bally Defendants." The accounting firm Ernst & Young, LLP ("E & Y") served as Bally's outside auditor prior to and at the time of the acquisition and thereafter, until it resigned the engagement on March 31, 2004.

The thrust of the complaint is that prior to the Crunch acquisition, defendants caused Bally to

issue numerous press releases and to file reports and statements with the Securities and Exchange Commission (the "SEC") that touted the company's financial performance, when in truth Bally was prematurely recognizing revenue and thus materially inflating its reported revenues and income, in violation of Generally Accepted Accounting Principles (GAAP) and Bally's own revenue-recognition policy.

From early 2000 through late 2001, Bally issued press releases and filed 8-K, 10-K and 10-Q forms with the SEC stating its financial results for various time periods. Some of the SEC filings contained certifications by the Individual Defendants pursuant **[*5]** to the Sarbanes-Oxley Act of 2002. In the Sarbanes-Oxley certifications, the Individual Defendants attested that they had reviewed the contents of the particular report to confirm that it did not contain any untrue statement of material fact or omit a material fact necessary to make the statements not misleading.

Plaintiff alleges that Bally's financial statements were materially false and misleading because, contrary to defendants' representations, they had not been prepared in conformity with Generally Accepted Accounting Principles (GAAP). Bally is alleged to have violated GAAP in accounting for the following: membership revenue; membership acquisition expenses; recoveries of unpaid dues; acquired payment obligations; prepaid personal training services; multiple-element arrangements; self-insurance liabilities and insurance expense; costs incurred to develop internal-use computer software; escheatment obligations; advertising expense; maintenance expense; start-up ("presale") costs; inventory; accruals; foreign exchange gains and losses; leases; sales of future receivables; the valuation of goodwill and separately identifiable intangible assets apart from goodwill; the amortization **[*6]** of goodwill; and fixed asset impairment. (Complaint PP 74-110, 113-121.)

Plaintiff also alleges that E & Y, in its capacity as Bally's outside auditor during most of the relevant time period, played a role in the fraud. E & Y issued unqualified audit opinions on Bally's financial statements for the years 1999-2001. (Only the statements for the years 1999 and 2000, however, were issued before plaintiff acquired his Bally stock.) Plaintiff maintains that E & Y diverged from Generally Accepted Auditing Standards (GAAS) when auditing Bally in that it either identified and ignored flagrant multiple violations of GAAP or recklessly failed to identify these violations.

The complaint alleges that "defendants' fraudulent misrepresentations beg[a]n to unravel" on March 11, 2004, when Bally issued a press release indicating that it was changing its accounting practices and that the change would result in non-cash charges of $ 675 million. (Complaint PP 50-51.) On March 30, 2004 and April 2, 2004, Bally filed its 2003 annual report with the SEC on Forms 10-K and 10-K/A, stating that its previous accounting methodology had resulted in errors in calculating deferred revenue related to prepaid **[*7]** dues and that it was restating several prior periods. Plaintiff alleges that the March 11 press release and the March 30 and April 2 filings were materially false and misleading "in that they covered up the true accounting manipulations" that occurred. (*Id.* P 55.)

It is further alleged that "[t]he truth concerning [Bally's] accounting improprieties was not known to the market and Plaintiff until April 28, 2004." (*Id.* P 56.) On that day, Bally issued a press release announcing that its CFO, Dwyer, had resigned "pursuant to the terms of a separation agreement" and that "[s]eparately, the Company announced" that the SEC had commenced an investigation connected to Bally's recent restatement regarding the timing of recognition of prepaid dues. (*Id.* P 56 (quoting from press release).) Plaintiff asserts that in response to this announcement, the price of Bally common stock fell from $ 5.40 per share on April 28 to $ 4.50 per share on April 29, a 16.6% drop. In the period of ninety trading days following the disclosure, the stock reached a mean trading price of $ 4.56 per share.

On November 15, 2004, Bally announced that its Audit Committee had concluded, based on its internal **[*8]** investigation, that Bally's financial statements for the years 2000 through

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 95006

Case 1:08-cv-03612    Document 45-3    Filed 09/02/2008    Page 4 of 12    Page 4 of 12

2003 and for the first quarter of 2004 could no longer be relied upon and should be restated. Bally also announced that it would be unable to issue any financial statements for the remainder of 2004 or for 2005 until it had completed the restatements, which were expected to be issued in July 2005 (but were not actually issued until November 2005).

On February 8, 2005, Bally announced the Audit Committee's findings that multiple accounting errors had occurred. Bally also announced that it was suspending the severance pay of Hillman and Dwyer (the former CEO and CFO, respectively), who, in the Audit Committee's view, were responsible "for multiple accounting errors and creating a culture within the accounting and finance groups that encouraged aggressive accounting." (*Id.* P 60.) Bally also stated that it had identified deficiencies in its internal controls over financial reporting. On February 16, 2005, Bally announced that it had received a request for information from the United States Attorney for the District of Columbia in connection with a criminal investigation.

On November 30, 2005, Bally filed **[*9]** a restatement that comprehensively restated its financial results for 2000, 2001, 2002, and 2003, and first reported results for 2004 and the first three quarters of 2005 (the "Restatement"). ² The adjustments in the Restatement resulted in a $ 96.4 million increase in previously-reported net loss for the year 2002 and a $ 540 million decrease in net loss for the year 2003. The decrease in 2003 reported net loss includes the reversal of the cumulative effect of the change in accounting previously reported in 2003 of $ 583 million. Bally also increased the January 1, 2002 opening accumulated stockholders' deficit by $ 1.7 billion to recognize the effects of corrections in financial statements prior to 2002.

**FOOTNOTES**

2 In connection with the review and restatement, Bally retained KPMG as auditor.

Plaintiff filed this action on March 15, 2006. The complaint contains five counts. In Count I, plaintiff alleges that all defendants violated § 10(b) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78j **[*10]** (b), and Rule 10b-5, 17 C.F.R. 240.10b-5. Count II is a "control person" claim in which plaintiff alleges that the Individual Defendants violated § 20 (a) of the Act, 15 U.S.C. § 78t(a). In Count III, plaintiff alleges that the Bally Defendants violated § 18 of the Act, 15 U.S.C. § 78r. Counts IV and V are for, respectively, common-law fraud and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, and are asserted against all defendants. Plaintiff seeks compensatory damages, punitive damages on the common-law fraud claim, attorney's fees, costs, and expenses.

Four separate motions to dismiss the complaint have been filed by (1) Bally and Toback; (2) Hillman; (3) Dwyer; and (4) E & Y. Those motions are now fully briefed.

Defendants contend that plaintiff's claims are time-barred. Defendants also argue that plaintiff's claims fail for the same reasons set forth in defendants' motions to dismiss the consolidated class action complaint. We granted those motions for failure to adequately allege scienter. After we issued our memorandum opinion dismissing the consolidated class action complaint, plaintiff moved to amend **[*11]** his complaint to supplement his scienter allegations. At a hearing on plaintiff's motion to amend, we determined that an amendment could potentially cure the scienter problem, but would not cure any limitations problems. Accordingly, we instructed the parties to brief only the arguments that plaintiff's claims are time-barred, and indicated that were we to hold that any of the federal claims are not time-barred, we would vacate our earlier order denying plaintiff leave to amend his complaint.

We will first address the motions of the Bally Defendants and then address the motion of E &

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 95006                     Page 5 of 12

Case 1:08-cv-03612     Document 45-3     Filed 09/02/2008     Page 5 of 12

Y.

## DISCUSSION

### A. The Motions of the Bally Defendants

The Bally Defendants contend that (1) plaintiff's § 10(b) and § 20(a) claims in Counts I and II are barred by the applicable statute of limitations; (2) plaintiff's § 18 claim is barred by the applicable statute of limitations; and (3) all of plaintiff's claims are barred by the limitations provision contained in the Crunch Acquisition Agreement.

### 1. Section 10(b) and 20(a) Claims

Section 10(b) of the Securities Exchange Act makes it unlawful for a person "[t]o use or employ, in connection with the purchase **[*12]** or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). Among those rules is Rule 10b-5, which "prohibits the making of any untrue statement of material fact or the omission of a material fact that would render statements made misleading in connection with the purchase or sale of any security." In re HealthCare Compare Corp. Sec. Litig., 75 F.3d 276, 280 (7th Cir. 1996). Section 20(a) of the Act, the "control person" provision, "creates vicarious liability for a person who actually or potentially controlled the primary violator's acts." Foss v. Bear, Stearns & Co., 394 F.3d 540, 543 (7th Cir. 2005).

Under the Sarbanes-Oxley Act, plaintiffs must bring § 10(b) and 20(a) claims--"private right [s] of action that involve[] a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws"--by no later than "the earlier of 2 years after the discovery of the facts constituting the violation or 5 years after such violation." 28 U.S.C. § 1658 **[*13]** (b). "Discovery" of the facts occurs when a potential plaintiff has inquiry notice or actual notice of a violation. See Tregenza v. Great Am. Communications Co., 12 F.3d 717 (7th Cir. 1993). Inquiry notice is "the term used for knowledge of facts that would lead a reasonable person to begin investigating the possibility that his legal rights had been infringed." LaSalle v. Medco Research, Inc., 54 F.3d 443, 446 (7th Cir. 1995). This "reasonable person" is viewed as an investor of ordinary intelligence. See Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P., 435 F.3d 396, 400 (3d Cir. 2006); In re Enterprise Mortgage Acceptance Co., LLC, Sec. Litig., 391 F.3d 401, 411 (2d Cir. 2004).

"The statute of limitations is an affirmative defense, and a plaintiff is not required to negate an affirmative defense in his complaint. Of course if he pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court." Tregenza, 12 F.3d at 718 (citation omitted). Defendants argue that plaintiff has pleaded facts in his complaint that show that his **[*14]** §§ 10(b) and 20(a) claims are time-barred--in particular, that Bally issued a press release on March 11, 2004 stating in part:

> Importantly, effective with the 2003 period, the Company has elected to change from its prior method of estimation based deferral accounting to a preferable, modified cash basis of accounting for its membership revenues. Under the modified cash basis of accounting, revenue is recognized upon the later of when collected or earned and costs associated with the sale of memberships are no longer deferred but are recognized when incurred. This change, which is an extension of the guidance in EITF00-21 Revenue Arrangements with Multiple Deliverables pertaining to revenues from products and services embedded in membership contracts, is fully supported by the Company's independent auditors. The Company's independent auditors will be providing the Company with a preferability letter supporting the changes. In related actions, the Company also

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 95006    Page 6 of 12

Case 1:08-cv-03612    Document 45-3    Filed 09/02/2008    Page 6 of 12

reduced the balance sheet carrying value of its deferred tax assets and corrected an error in the recognition of prepaid dues. The accounting change and these actions resulted in total non-cash charges of $ 675 million.  **[*15]**

. . .

The accounting change and these actions results in total non-cash charges of $ 675 million consisting of:

. . .

$ 43 million as of December 31, 2002 resulting from the correction of an error related to the prior calculation of prepaid dues. This change is reflected as a restatement of prior periods and represents less than 2% of the reported revenues during each annual restatement period.

(Complaint PP 51-52.) In defendants' view, this allegation demonstrates that plaintiff had knowledge of facts that would lead a reasonable person to begin investigating the possibility that his legal rights had been infringed, and because plaintiff filed suit later than March 11, 2006 (two years after he had inquiry notice), his claims are time-barred.

We disagree. The question of whether plaintiff had sufficient facts to place him on inquiry notice of a securities fraud claim or claims is a fact question normally inappropriate for resolution on a motion to dismiss. _Kauthar SDN BHD v. Sternberg,_ 149 F.3d 659, 669 (7th Cir. 1998). The exception to this rule is where the facts pled in the complaint indicate without a doubt that plaintiff's suit is time-barred,  **[*16]**  see _id._ at 670, but this is not such a case. For inquiry notice to arise, "more than 'merely suspicious circumstances' must exist; instead, the plaintiff must learn of a circumstance that places him 'in possession of, or with ready access to, the essential facts that he needs in order to be able to sue.'" _Id._ (quoting _Fujisawa Pharm. Co. v. Kapoor,_ 115 F.3d 1332, 1337 (7th Cir. 1997)). "The facts constituting such notice must be sufficiently probative of fraud--sufficiently advanced beyond the stage of a mere suspicion, sufficiently confirmed or substantiated--not only to incite the victim to investigate but also to enable him to tie up any loose ends and complete the investigation in time to file a timely suit." _Fujisawa,_ 115 F.3d at 1335.

We cannot say that the March 11 press release constituted even the "suspicious circumstances" element of inquiry notice that would trigger a duty to investigate. Defendants have not cited one case in which a single restatement of results was sufficient to provide inquiry notice. Rather, the cases cited by defendants involved more extensive warning signs--for example, widespread media coverage **[*17]**  of accounting problems coupled with a sharp drop in price. Plaintiff has pled facts concerning a single press release by Bally itself that only obliquely informed the public of an accounting error and related charge. These allegations do not establish as a matter of law that plaintiff was on inquiry notice of his claims on March 11, 2004. Accordingly, the Bally Defendants' motions to dismiss will be denied as to Counts I and II. [3]

### FOOTNOTES

[3] Because of this ruling, we need not address plaintiff's argument that the doctrine of tolling applies to these claims (the argument would be rejected in any event for the reasons stated _infra_).

### 2. _Section 18 Claim_

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 95006    Page 7 of 12

Case 1:08-cv-03612    Document 45-3    Filed 09/02/2008    Page 7 of 12

Section 18 of the Securities Exchange Act creates a private right of action for damages resulting from the purchase or sale of a security in reliance upon a false or misleading statement in a report or document required to be filed under the Act. *See* 15 U.S.C. § 78r(a). In Count III of the complaint, plaintiff alleges that he relied **[*18]** on misstatements that the Bally Defendants made in Bally's Form 10-K disclosures for fiscal years 1999, 2000, and 2001. (Complaint P 159.)

The first question is which statute of limitations applies to this claim. Section 18 itself states: "No action shall be maintained to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued." 15 U.S.C. § 78r(c). Plaintiff contends, though, that the Sarbanes-Oxley Act increased the time periods to two years and five years, respectively. (As noted *supra,* under the Sarbanes-Oxley Act, plaintiffs must bring "private right[s] of action that involve[] a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws" by no later than "the earlier of 2 years after the discovery of the facts constituting the violation or 5 years after such violation." 28 U.S.C. § 1658(b).

The authorities are divided. *Compare, e.g., In re Hollinger Int'l, Inc. Sec. Litig.,* No. 04 C 834, 2006 U.S. Dist. LEXIS 47173, 2006 WL 1806382, **[*19]** at *15 (N.D. Ill. June 28, 2006)* (Coar, J.) (rejecting the argument that Sarbanes-Oxley extends the limitations period for § 18 treatments) with *Shriners Hosps. for Children v. Qwest Communs. Int'l, Inc.,* No. 04-CV-0781-REB-CBS, 2005 U.S. Dist. LEXIS 40044, 2005 WL 2350569, at *3 (D. Colo. Sept. 23, 2005)* (determining that § 18 claims fall within the parameters of Sarbanes-Oxley). We find instructive one of the cases cited by defendants in support of their argument, *In re Alstom SA Securities Litigation,* 406 F. Supp. 2d 402, 419-21 (S.D.N.Y. 2005). In its thoughtful discussion, the court in *Alstom* concluded that Sarbanes-Oxley does not apply to § 18 claims for two reasons: (1) § 18 does not require proof of fraudulent intent; and (2) nothing in the statutory framework or legislative history of Sarbanes-Oxley shows a clear intent to revise the express limitations period set forth in § 18 itself. 406 F. Supp. 2d at 420. We adopt the analysis of *Alstom* and hold that the Sarbanes-Oxley Act did not extend the one-year/three-year periods set forth in 15 U.S.C. § 78r(c).

The second question is whether plaintiff has pled himself **[*20]** out of court by alleging facts showing that he did not file this action "within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued." 15 U.S.C. § 78r(c). As with the §§ 10(b) and 20(a) claims, defendants assert that plaintiff had inquiry notice of his § 18 claim on March 11, 2005 and that because he did not file this action until March 15, 2006, he is barred by the one-year statute of limitations. We reject this argument for the same reasons we rejected it with respect to the §§ 10(b) and 20(a) claims. Defendants fare better with the three-year limitations period. [4] Plaintiff's cause of action under § 18 accrues at the time of the stock purchase. *See Jacobson v. Peat, Marwick, Mitchell & Co.,* 445 F. Supp. 518, 527 (S.D.N.Y. 1977). The stock purchase occurred on October 31, 2001, so the three-year limitations period expired on October 31, 2004. Because plaintiff did not file this action until March 15, 2006, the statute of limitations bars his § 18 claim.

**FOOTNOTES**

[4] Defendants refer to this as a three-year "statute of repose," but it is a statute of limitations because it relates to the accrual of plaintiff's cause of action, *see* our discussion *infra* regarding the difference between a statute of limitations and a statute of repose.

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 95006

Case 1:08-cv-03612   Document 45-3   Filed 09/02/2008   Page 8 of 12

Page 8 of 12

**[\*21]** Plaintiff maintains that the filing of the class action complaint in the lead case in May 2004 tolled the running of the statute under the class action tolling doctrine announced in _American Pipe & Construction Co. v. Utah,_ 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974). The _American Pipe_ tolling doctrine "works to suspend the limitations clock for putative class members upon the filing of a class action complaint, preserving for each that portion of the limitations period that remained at the time the class action was filed. After a statute has been tolled, the limitations clock then resumes ticking again only after the court makes a class certification decision and the class member 'opts out' of the class." _In re Brand Name Prescription Drugs Antitrust Litig.,_ No. 94 C 897, 1998 U.S. Dist. LEXIS 12534, 1998 WL 474146, at \*7 (N.D. Ill. Aug. 6, 1998) (Kocoras, J.).

Plaintiffs who commence their own individual actions prior to a class certification determination in the putative class action, however, cannot benefit from the tolling doctrine. _See, e.g.,_ 1998 U.S. Dist. LEXIS 12534, [WL] at \*8 (refusing to apply the doctrine where plaintiffs "made a conscious decision early on to pursue their claims on an entirely separate, though **[\*22]** essentially parallel, track from that of the Class case. These Plaintiffs filed their own lawsuits and disavowed class status. . . . [I]t would be inequitable to now allow the Individual Plaintiffs to reap the benefits of a doctrine which is designed for a group--the Class and its putative members--which they have disavowed being a part of from the beginning. In fact, class action tolling has been denied in such situations where a plaintiff 'wants his cake and to eat it, too.'"); _Calvello v. Elec. Data Sys.,_ No. 00CV800, 2004 U.S. Dist. LEXIS 8744, 2004 WL 941809, at \*4 (W.D.N.Y. Apr. 15, 2004) (collecting cases). Here, plaintiff has chosen to pursue separate litigation prior to a determination on class certification; therefore, the _American Pipe_ tolling rule is not available to him. [5] We are not persuaded by plaintiff's unsupported argument that we should apply the tolling doctrine because no motion for class certification has yet been filed in the class action.

**FOOTNOTES**

[5] Our conclusion that plaintiff cannot rely on the tolling doctrine applies equally to the claims against E & Y.

**[\*23]** Plaintiff's § 18 claim in Count III of the complaint will be dismissed with prejudice as barred by the statute of limitations.

### 3. _The Crunch Acquisition Agreement_

Defendants contend that all of plaintiff's claims must be dismissed because they are barred by the terms of the Crunch Acquisition Agreement pursuant to which plaintiff acquired his Bally stock. The portions of the Agreement on which defendants rely are as follows:

ARTICLE IX

_INDEMNIFICATION_

. . .

9.03 _Survival._ All representations and warranties contained in or made pursuant to this Agreement, and the rights of the parties to seek indemnification with respect thereto, shall survive the Closing Date until the date on which the final audit opinion covering Bally's consolidated financial statements for the fiscal year ending December 31, 2002 is released and delivered to Bally, but in no event later than March 31, 2003.

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 95006    Page 9 of 12

Case 1:08-cv-03612    Document 45-3    Filed 09/02/2008    Page 9 of 12

. . .

ARTICLE XII

*MISCELLANEOUS*

. . .

12.06 *Entire Agreement.* This Agreement (together with the certificates, agreements, schedules, instruments and other documents referred to herein and the Confidentiality Agreement) constitutes the entire agreement **[*24]** between the parties with respect to the subject matter hereof and thereof and supersedes all prior agreements, both written and oral, with respect to such subject matter.

(Crunch Acquisition Agreement, Ex. 2 to Decl. of Michael J. Faris in Support of Mot. to Dismiss of Bally and Toback, at 60-62, 71.)

In defendants' view, § 9.03 sets forth a three-year "contractual limitations period" for any claims for breach of representations and warranties contained in the Agreement, which expired before plaintiff filed suit. We reject this argument. For one thing, plaintiff is not suing for breach of the Agreement. He is suing for securities fraud as well as common-law and statutory fraud. In any event, it is clear from the context of § 9.03 and its inclusion in the article concerning indemnification that it refers to a period during which claims for indemnification must be asserted, but not other types of claims. Plaintiff does not seek indemnification; thus, § 9.03 is inapplicable.

Section § 12.06, an integration clause, is also irrelevant to plaintiff's claims. The provision does not address prior representations at all; it simply states that the Agreement is no more than what **[*25]** it says and that there are no prior *agreements* between the parties. Plaintiff does not seek to recover on any prior agreement. The integration clause does not bar plaintiff's claims.

**B. *The Motion of E & Y***

E & Y contends that plaintiff's § 10(b) claim (the only federal claim brought against E & Y) as well as plaintiff's state-law claims are barred by the applicable statutes of repose.

**1. *Section 10(b) Claim***

As stated *supra,* plaintiffs must bring § 10(b) claims by no later than "the earlier of 2 years after the discovery of the facts constituting the violation or 5 years after such violation." 28 U.S.C. § 1658(b). E & Y argues that the five-year statute of repose bars plaintiff's claim because its 1999 and 2000 audit opinions had both been issued by February 13, 2001, and plaintiff did not file suit until after the statute of repose expired on February 13, 2006. [6] Plaintiff responds that he did not receive the February 2001 audit opinion until it was included in the documents reviewed by him in connection with his entering into the Crunch Acquisition Agreement in October 2001. In plaintiff's view, the statute of repose begins **[*26]** to run from the stock purchase, not from the issuance of the last audit opinion.

**FOOTNOTES**

[6] Although plaintiff alleges that the 2001 audit opinion also contained misrepresentations, that opinion was not issued until February 2002--after plaintiff had already acquired Bally stock. Plaintiff does not contend in his response brief that the 2001 audit opinion should be considered in the statute of repose analysis.

The crucial issue is how to interpret the term "violation" as it is used in the Sarbanes-Oxley statute of repose. Section 10(b) makes it unlawful to "use or employ" misrepresentations "in connection with the purchase or sale of any security." For purposes of triggering the statute of repose, does the "violation" occur when the alleged misrepresentation is made, or when the stock purchase occurs? The weight of authority in this district is that it occurs when the alleged misrepresentation is made. *See Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.,* No. 02 C 5893, 2006 U.S. Dist. LEXIS 15517, WL 560589, at *2 (N. **[*27]** D. Ill. Feb. 28, 2006)* (Guzman, J.); *Waldock v. M.J. Select Global, Ltd.,* No. 03 C 5293, 2004 U.S. Dist. LEXIS 23844, 2004 WL 2278549, at *4 (N.D. Ill. Oct. 7, 2004)* (St. Eve, J.); ***Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.,* 192 F. Supp. 2d 852, 864 (N.D. Ill. 2002)** (Bucklo, J.) (citing two previous decisions).

This interpretation makes sense in light of the distinction between a statute of limitations and a statute of repose. Statutes of repose are measured from the time a defendant took a particular action, not from the accrual of a claim based on that action. *See Beard v. J.I. Case Co., 823 F.2d 1095, 1097 n.1 (7th Cir. 1987).* "A statute of repose . . . limits the time within which an action may be brought and is not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered. Unlike an ordinary statute of limitations which begins running upon accrual of the claim, the period contained in a statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted." 54 C.J.S. Limitations of Actions § 5 (2005). Our colleague Judge **[*28]** Bucklo explained in *Wafra* how these principles apply to the concept of a § 10(b) "violation":

> [I]t appears that a "violation" under Rule 10b-5 is distinct from the concept of a "cause of action" under that rule. A defendant who makes a knowingly false representation with the purpose of inducing a sale of securities violates Rule 10b-5 even if no purchaser is taken in by the lies and no purchase has actually occurred. That the cause of action has not accrued at that point is beside the point, because the defendant has committed a fraudulent act. This distinction is particularly clear where, as here, the defendant accused of misrepresentation is not the seller; the last act committed by [the accountant] with regard to the fraudulent audit was its alleged misrepresentations.

**192 F. Supp. 2d at 864** (citation omitted). We follow the reasoning of Judge Bucklo in **Wafra** and the weight of authority in this district and hold that the "violation" triggering the statute of repose for a § 10(b) claim is the defendant's act of publishing the allegedly false statements in the audit opinions and not the plaintiff's purchase of securities.

Plaintiff asserts **[*29]** that we should apply the "continuing violation doctrine," which the Seventh Circuit has recognized in civil rights, employment discrimination, and copyright actions. In general terms, the doctrine allows certain of these types of claims to be premised on otherwise time-barred acts that can be linked to conduct falling within the limitations period; the rationale is that such claims are based on a continuing wrong constituting a pattern or practice and not on discrete acts. *See generally Lucas v. Chicago Transit Auth., 367 F.3d 714, 724 (7th Cir. 2004).* The Seventh Circuit has never extended the doctrine to securities fraud actions, nor, as far as we can tell, have any other higher courts. Plaintiff urges us to follow a single decision from this district, *SEC v. Ogle,* No. 99 C 609, 2000 U.S. Dist. LEXIS 239, 2000 WL 45260, at *4-5 (N.D. Ill. Jan. 11, 2000), in which the court applied the continuing violation doctrine to extend the five-year statute of limitations on the SEC's claim for civil penalties arising from the defendants' alleged market manipulation. *Ogle* is inapposite because it dealt with a statute of limitations, not a statute of repose. Even if *Ogle* had dealt **[*30]** with a statute of repose, however, we would decline to follow it because the

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 95006    Page 11 of 12

Case 1:08-cv-03612    Document 45-3    Filed 09/02/2008    Page 11 of 12

continuing violation doctrine has no applicability where the complained-of conduct consists of discrete acts. *See* *AMTRAK v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). Plaintiff alleges that E & Y made misrepresentations in audit reports, which are separately identifiable discrete acts. There is no basis for applying the continuing violation doctrine.

Because the § 10(b) statute of repose was triggered by the issuance of E & Y's audit opinion on February 13, 2001 (the last alleged misrepresentation by E & Y that plaintiff could have relied upon in purchasing Bally stock), and plaintiff filed suit more than five years after that date, his claim against E & Y is barred. Count I will be dismissed with prejudice as against E & Y.

**2. *State-Law Claims***

We have disposed of the only federal claim against E & Y. Ordinarily, we should relinquish jurisdiction of pendent state-law claims when the federal claims are dismissed before trial, but there are some cases in which we should exercise supplemental jurisdiction in the interest of judicial economy to decide the state-law **[*31]** claims on the merits. *See* *Rothman v. Emory Univ.*, 123 F.3d 446, 454 (7th Cir. 1997). This is one of those cases. E & Y argues that the claims are barred by the Illinois Public Accounting Act, 735 ILCS 5/13-214.2, which contains a five-year statute of repose for "[a]ctions based upon tort, contract or otherwise against any person, partnership or corporation registered pursuant to the Illinois Public Accounting Act." The trigger for the statute of repose is the "act or omission alleged in such action to have been the cause of injury to the person bringing such action against a public accountant." 735 ILCS 5/13-214.2(b). The Illinois Accounting Act has been interpreted broadly to apply not just to common-law tort claims, but also to statutory claims such as those brought pursuant to the Illinois Consumer Fraud Act. *See* *Terrell v. Childers*, 920 F. Supp. 854, 862 (N.D. Ill. 1996).

E & Y was and is registered under the Illinois Accounting Act. [7] The repose period--five years--is identical to that of a § 10(b) claim. Our analysis is the same for the state-law claims as it was for the § 10(b) claim. Plaintiff filed suit more than five years after E & **[*32]** Y published the alleged misrepresentations (the "act or omission alleged . . . to have been the cause of injury," 735 ILCS 5/13-214.2(b)). Accordingly, plaintiff's state-law fraud claims in Counts IV and V of the complaint will be dismissed as barred by the statute of repose.

**FOOTNOTES**

[7] In resolving a motion to dismiss, we are entitled to take judicial notice of such matters in the public record without converting the motion into a motion for summary judgment. *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000).

**CONCLUSION**

The pending motions to dismiss the complaint have been narrowed to defendants' arguments that plaintiff's claims are time-barred. The following motions are granted in part and denied in part: (1) the motion of Lee S. Hillman; (2) the motion of John W. Dwyer; and (3) the motion of Bally Total Fitness Holding Corporation and Paul A. Toback. The motions are denied as to Counts I, II, IV, and V of the complaint, but granted as to Count III of the complaint. Count III (which **[*33]** is asserted against the Bally Defendants only) is dismissed with prejudice.

The motion of Ernst & Young, LLP is granted, and Counts I, IV, and V are dismissed with prejudice as against Ernst & Young, LLP. This disposition terminates the case as to Ernst &

Young.

Our minute order of July 19, 2006 is vacated to the extent that we denied plaintiff's motion to amend the complaint. Plaintiff's motion to amend the complaint to supplement his scienter allegations is granted, and plaintiff may file an amended complaint by October 27, 2006.

DATE: September 29, 2006

John F. Grady, United States District Judge


Service: **Get by LEXSEE®**
Citation: **2006 U.S. Dist. LEXIS 95006**
View: Full
Date/Time: Tuesday, September 2, 2008 - 3:10 PM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.


Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Switch Client | Preferences | Sign Out | Help

 LexisNexis®    About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.