# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DALLEN WENDT and PEGGY WENDT, ) | |
| ) | |
| Plaintiffs, ) | No. 08 C 3612 |
| ) | |
| v. ) | Judge Ruben Castillo |
| ) | |
| HANDLER, THAYER & DUGGAN, LLC, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Dallen Wendt ("Mr. Wendt") and Peggy Wendt ("Mrs. Wendt") (collectively "Plaintiffs") bring this action against Handler, Thayer & Duggan, LLC ("HT&D"), Thomas J. Handler ("Handler"), Steven J. Thayer ("Thayer"), James M. Duggan ("Duggan") and Gregory Bertsch ("Bertsch") (collectively "HT&D Defendants"), Offshore Trust Service, Inc. ("OTS"), Joshua J. Crithfield and Duane J. Crithfield (collectively "OTS Defendants"), Foster & Dunhill Consulting, Inc. ("F&D Consulting") and Foster & Dunhill Planning Services, LLC ("F&D Planning") (collectively "F&D"), and Stephen P. Donaldson ("Donaldson") (collectively "Defendants") alleging violations of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) (the "Exchange Act"), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Rule 10b-5") (collectively "10-b"), along with various state law violations. (R. 1, Compl.) Currently before the Court are four motions to dismiss filed by HT&D Defendants (R. 45), OTS Defendants (R. 49), F&D (R. 42), and Donaldson (R. 43), and a motion to exclude filed by HT&D Defendants (R. 61). For the reasons stated below, the motions to dismiss are granted in part and denied in part, and the motion to exclude is granted.

## RELEVANT FACTS

In 2002, Plaintiffs began looking into various asset protection and investment options. (R. 1, Compl. ¶ 17.) In May 2002, Mr. Wendt attended a conference in the Bahamas on investment services and products. (*Id.* ¶¶ 19, 22.) Presenters at the conference included Donaldson, Handler, Duggan, Duane and Joshua Crithfield, and Sunderlage Resource Group ("Sunderlage") (collectively the "Conference Presenters"). (*Id.* ¶ 21.) The Conference Presenters promoted an offshore trust investment option with First Fidelity Trust ("FFT"), as trustee, purchasing life insurance policies from Fidelity Insurance Company ("FIC), and investing the policy proceeds with account administrator Westminster Hope & Turnberry ("WH&T"). (*Id.* ¶ 23.) Plaintiffs allege that they were told that FIC would invest in "no-risk," fixed income accounts that were not available to the general public with a guaranteed return of 8% and 8.5% per annum (the "Fixed Accounts"). (*Id.* ¶¶ 25, 26, 28.)

After the conference, Plaintiffs hired law the firm HT&D[1] as tax and estate planning counsel. (*Id.* ¶¶ 29, 36, 37.) Plaintiffs allege that HT&D Defendants recommended that they establish a trust with FFT so that the proceeds could be invested in the Fixed Accounts. Plaintiffs allege that although they expressed concerns about the financial security of FIC, HT&D Defendants assured them that "the Trust's investment would involve no market risk, and that the return of the principal plus an 8% or 8.5% fixed return would be 100% guaranteed." (*Id.* ¶¶ 41-42.)

In December 2002, Plaintiffs agreed to establish two trusts, the Smiling Frog Trust and

---

[1] Handler, Thayer, Duggan, and Bertsch are partners and/or principals of HT&D. (*Id.* ¶ 31.)

2

the Black Ink Trust (collectively the "Trusts"), with FFT as the Trustee. (*Id.* ¶¶ 43-45.) Plaintiffs transferred $500,000 to the Smiling Frog Trust, and $1,000,000 to the Black Ink Trust. (*Id.* ¶ 62.) Plaintiffs allege that they were assured that although the trustee and investments were located offshore, they could effectively monitor and control the Trusts in the United States through OTS and its directors Duane and Joshua Crithfield, F&D and its director Donaldson, and Sunderlage (collectively the "Trusts Managers"). (*Id.* ¶¶ 7-12, 46-47, 50-51.)

In January 2003, the Trusts purchased insurance policies, and invested funds in Fixed Accounts set to mature in January 2008 and January 2013. (*Id.* ¶¶ 63-65.) Plaintiffs allege that they were assured that their investments were "safe and profitable," and that they received periodic accounting statements from OTS showing that the investments were making the guaranteed returns. (*Id.* ¶¶ 67, 68.) In November 2007, Plaintiffs asked HT&D to liquidate their accounts, including the Fixed Accounts which were set to mature. (*Id.* ¶ 69.) Plaintiffs allege that for months their request was ignored, and then in January 2008, they were told that FIC "claimed the investment had been depleted, and despite the fact that the 8% return had been 'guaranteed,' they could only pay 40 cents on the dollar for the monies invested if the [Fixed Accounts] were liquidated." (*Id.* ¶ 71.) HT&D Defendants recommended that Plaintiffs accept FIC's proposed settlement. (*Id.* ¶ 72.)

Plaintiffs allege that the accounting records provided up through December 31, 2007, were false. (*Id.* ¶ 73.) They believe the Trusts were invested in collateralized debt obligations, which earned as much as a 15% return, and that "Defendants retained all excess returns over the returns guaranteed in the Fixed Accounts as management fees or commissions." (*Id.* ¶ 78.) Plaintiffs allege that HT&D Defendants, the Trust Managers, FFT, FIC and WH&T "were all

3

engaged in a common enterprise to earn undisclosed fees and commissions from the Trusts [Plaintiffs] were advised to establish." (*Id.* ¶ 53.) Plaintiffs further allege that the Trust Managers, FFT, FIC and/or WH&T were also clients of HT&D and despite the fact that HT&D represented Plaintiffs in negotiations adverse to these parties interests, their relationships as clients were never disclosed. (*Id.* ¶¶ 54-56, 76.)

## PROCEDURAL HISTORY

On June 24, 2008, Plaintiffs filed their complaint in this Court. (R. 1, Compl.) The complaint contains eight counts, including securities violations under Rule 10-b (Count V). (*Id.*) In addition, the complaint alleges a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA") (Count IV), as well as state law claims for fraudulent misrepresentation (Count I), unjust enrichment (Count II), breach of fiduciary duty (Count III), legal malpractice (Count VI), accounting malpractice (Count VII) and civil conspiracy (Count VIII). (*Id.*) On August 29, 2008, Plaintiffs voluntarily dismissed their claims against Sunderlage and its director Tracy L. Sunderlage. (R. 37, Notice of Dismissal; R. 47, 9/5/2008 Min. Entry.)

On September 2, 2008, F&D (R. 42), Donaldson (R. 43), and HT&D Defendants (R. 45) filed motions to dismiss based on lack of subject matter and personal jurisdiction, improper venue and failure to state a claim. On September 15, 2008, OTS Defendants also moved to dismiss. (R. 49.) Plaintiffs responded in opposition of all Defendants' motions to dismiss (R. 54, Pls.' Resp.), filing declarations from Mr. Wendt (R. 55), Tracy Sunderlage (R. 56), and Krista Ward (R. 57) (collectively the "Declarations"). On October 15, 2008, HT&D Defendants moved to exclude the Declarations for the purposes of its 12(b)(6) motion to dismiss. (R. 61, HT&D's Mot. to Exclude.)

4

## LEGAL STANDARDS

Rule 12(b)(2) provides for dismissal where the Court lacks personal jurisdiction over a party. Fed. R. Civ. P. 12(b)(2). Although a plaintiff need not anticipate a personal jurisdiction challenge in its complaint, once the defendant moves to dismiss the complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When the Court rules on a personal jurisdiction issue based on the submission of written materials, the plaintiff must demonstrate a *prima facie* case of jurisdiction. *Id.* In determining whether a *prima facie* case has been established, the Court can consider materials such as affidavits, and "the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.*

Rule 12(b)(3) provides that a party may move to dismiss based on improper venue. Fed. R. Civ. P. 12(b)(3). Plaintiff has the burden of establishing that venue is proper. *Hanyuan Dong v. Garcia*, 553 F. Supp. 2d 962, 964 (N.D. Ill. 2008). In ruling on a motion to dismiss for improper venue, the Court follows the same standard as for a Rule 12(b)(2) dismissal. The Court may examine facts outside the complaint, takes all the allegations in the complaint as true, and draws all reasonable inferences in favor of plaintiff. *Id.*

Rule 12(b)(6) provides for dismissal where a party has failed to state a claim. Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the Court assumes all well-pleaded allegations in the complaint to be true and draws all inferences in the light most favorable to the plaintiff. *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). To survive a motion to dismiss,

the complaint must overcome "two clear, easy hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests;" and (2) "its allegations must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the 'speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (emphasis in original).

Plaintiffs claims that are "premised upon a course of fraudulent conduct," are subject to the heightened pleading standard of Rule 9(b). *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Rule 9(b) requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The circumstances of fraud or mistake include the "identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir. 2008); *see also Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (describing Rule 9(b) particularity as the "who, what, where, when and how" of the alleged fraud). In a case involving multiple defendants, the complaint should inform each defendant of the nature of their alleged participation in the fraud. *Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 778 (7th Cir. 1994); *Shair v. Qatar Islamic Bank*, No. 08 C 1060, 2009 U.S. Dist. LEXIS 20572, at *3 (N.D. Ill. Mar. 16, 2009).

## ANALYSIS

### A. Subject Matter Jurisdiction

The first issue the Court must address is whether Plaintiffs have standing to bring Count V, the federal securities claim. In *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975),

the Supreme Court held that to bring a securities violation under 10-b, a plaintiff must be an actual purchaser or seller of securities. *Id.* at 731. Donaldson, HT&D Defendants and OTS Defendants claim that Plaintiffs lack standing to assert a securities fraud claim because they "were not purchasers or sellers of securities," and therefore, the federal securities claim should be dismissed. (R. 43, Donaldson's Mem at 7; R. 50, OTS Defs.' Mem. at 9-10; R. 45, HT&D Defs.' Mem. at 5 n.6.)

The purpose of 10-b is to provide a remedy to a plaintiff who was induced by a misrepresentation or a misleading omission in connection with the buying or selling of stock. *Isquith v. Caremark Int'l*, 136 F.3d 531, 534 (7th Cir. 1998). When bringing a 10-b claim, "the relevant inquiry is whether plaintiffs were denied information that would or might have been useful to them in deciding whether to purchase or sell securities which they actually did purchase or sell." *O'Brien v. Continental Ill. Nat'l Bank & Trust*, 593 F.2d 54, 60 (7th Cir. 1979); *see also Ravin v. JPMorgan Chase Bank, N.A.*, No. 06 C 5452, 2007 U.S. Dist. LEXIS 57437, at *11 (N.D. Ill. Aug. 3, 2007). A 10-b claim "presupposes that [plaintiff] had a choice, a choice distorted by the fraud," and that an "investment decision" was made. *Isquith*, 136 F.3d at 534.

However, 10-b does not provide a remedy for an investor who lacks investment authority. *See id.; O'Brien*, 593 F.2d at 59. The Seventh Circuit explained: "When the trustee or agent alone makes the investment decision to purchase or sell, his failure to disclose information about the purchase or sale to the beneficiary or agent does not satisfy the 'in connection with' requirement of § 10(b). The enforcement of fiduciary and contractual duties owed by a trustee or agent to the beneficiary or principal is the concern of state law, not the federal securities laws." *O'Brien*, 593 F.2d at 63.

7

Here, Plaintiffs allege that they established and funded the Trusts, the Trusts' funds were then used to purchase insurance policies from FIC, and then the policy proceeds were invested with investment account administrator, WH&T. (R. 1, Compl. ¶¶ 23-27, 43-45, 62-65.) Plaintiffs do not allege that they themselves purchased or sold securities, and instead explicitly state that "the trusts technically made investment decisions once the money left [Plaintiffs'] hands." (R. 54, Pls. Resp. at 32-33.) Although Plaintiffs argue that they "were led to believe that they would be directing the investment activity," this argument is of no consequence. (*See id.* at 33.) It is clear from the complaint that Plaintiffs did not make any investment decisions, therefore, the Court finds that they lack standing to sue under 10-b. *See Rabin*, 2007 U.S. Dist. LEXIS 57437, at *13 (dismissing 10-b claim because plaintiffs stated that they did not make any investment decisions); *Kayne v. Paine Webber, Inc.*, 703 F. Supp. 1334, 1340 (N.D. Ill. 1989) ("an investor who has delegated the entire authority to make investment decisions to his securities broker may not sue the broker under [10-b] for misuse of his delegated powers"); *Capalbo v. Paine Webber*, 672 F. Supp. 1048, 1052 (N.D. Ill. 1987) (dismissing federal securities law claims because plaintiffs gave advisor complete discretion and thus "the misrepresentations and omissions alleged could not relate to [the plaintiffs'] own decision to purchase or sell"). Accordingly, the motions to dismiss Count V are granted.

Because the Court has dismissed Plaintiffs' only federal claim, subject matter jurisdiction now exists solely on the basis of diversity jurisdiction. 28 U.S.C. § 1332. Diversity jurisdiction is not disputed by Defendants. Upon review of the record, the Court is likewise satisfied that both diversity of citizenship and the amount in controversy requirements have been met.

B.  **Personal Jurisdiction**

Next, non-resident F&D moves to dismiss the complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction. (R. 42, F&D's Mot. to Dismiss.) F&D argues that they do not have the requisite minimum contacts with Illinois for personal jurisdiction to be exercised by this Court. (*Id.* at 4-5.) In diversity cases, such as this, a federal court may exercise personal jurisdiction over a non-resident defendant only if a court of the state in which the federal court sits could properly do so. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275-76 (7th Cir. 1997). The Illinois long-arm statute governs the exercise of personal jurisdiction over non-residents by Illinois state courts and authorizes jurisdiction on any basis permitted by the Illinois or United States Constitutions. *See* 735 ILCS 5/2-209(c). The Seventh Circuit has explained that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002). Accordingly, a single due process analysis is sufficient to determine whether this Court may exercise personal jurisdiction. *Id.*; *Abbott Labs. Inc., v. BioValve Techs., Inc.*, 543 F. Supp. 2d 913, 919 (N.D. Ill. 2008).

For this Court to exercise personal jurisdiction, a defendant must have certain "minimum contacts" with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *RAR Inc.*, 107 F.3d at 1277. What the standard means in a particular case depends on whether the state asserts "general" or "specific" jurisdiction. *Id.* Specific jurisdiction refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. *Id.* General jurisdiction, on the other hand, is for suits neither arising out of nor related to the defendant's contacts, and it is permitted only where the

defendant has "continuous and systematic general business contacts" with the forum. *Id.* In specific jurisdiction cases, the Court must decide whether a defendant has "purposefully established minimum contacts within the forum State" and consider whether, by traditional standards, those contacts would make personal jurisdiction reasonable and fair under the circumstances. *Id.* Crucial to the minimum contacts analysis is a showing that the defendant "should reasonably anticipate being haled into court in the forum State," because the defendant has "purposefully availed itself of the privilege of conducting activities there." *Id.* If the minimum contacts test is satisfied, the Court must consider other factors, such as the forum's interest in adjudicating the dispute and the burden on the defendant, to determine whether the exercise of personal jurisdiction satisfies traditional notions of fair play and substantial justice. *Central States v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000).

Where two or more companies enter a joint venture, "the minimum contacts of one co-venturer are attributable to other co-venturers such that personal jurisdiction over one means personal jurisdiction over all." *Hill v. Shell Oil Co.*, 140 F. Supp. 2d 911, 914 (N.D. Ill. 2001). Under Illinois law, a joint venture is an association of two or more entities to carry out a single, specific purpose for a profit. *Daniels v. Corrigan*, 886 N.E.2d 1193, 1208 (Ill. App. Ct. 2008). A joint venture may be inferred from circumstances demonstrating the parties' intent to enter into a joint venture, even in the absence of a formal agreement. *Id.*

There is evidence to suggest that Foster & Dunhill Ltd. ("F&D Ltd.") entered into a "joint venture" with HT&D, an Illinois LLC and law firm. Through the Declarations[2], Plaintiffs assert

---

[2] The Court may consider affidavits and other outside materials to determine whether it has personal jurisdiction. *Purdue Research Found.*, 338 F.3d at 782.

10

that the entities orally agreed to share clients, expenses, and revenues. (R. 54, Pls. Resp. at 36-7.) In addition, Plaintiffs claim that on at least two occasions, F&D Ltd., as the exclusive promoter and marketer of FIC's policies, entered Illinois and presented marketing and other material to clients in Illinois. (R. 56, Decl. of Tracy Sunderlage ¶¶ 6,7.) Furthermore, Handler repeatedly references HT&D's relationship with F&D as a "joint venture." (*Id.* Ex. A.) In an email to Tracy Sunderlage, Handler discusses the terms of the agreement stating, "[W]e gave F&D 3 options for HT&D to stay involved: 1. Paying a retainer/speaking fee; 2. Paying us hourly; or, 3. Giving us a piece of the volume as a retainer. We all agreed to the volume based retainer . . . ." (*Id.*) The email also states that Donaldson is "supposed to be spending his full-time efforts working on our joint venture." (*Id.*)

The Court finds that at this stage, Plaintiffs have made a colorable showing that F&D and HT&D agreed to work together for a profit, thus creating a joint venture. Based on its relationship with HT&D, F&D has the requisite minimum contacts with Illinois for personal jurisdiction to exist in this Court. *See Central States*, 230 F.3d at 946-47 (holding that dismissal is not appropriate where plaintiff has made a colorable or *prima facie* showing of personal jurisdiction); *see also Hill*, 149 F. Supp. 2d at 915 (finding evidence of defendant's joint venture with a Illinois company sufficient to deny motion attacking personal jurisdiction).

F&D, however, argues that personal jurisdiction is still lacking because it is F&D Ltd., "a different entity" than F&D Consulting and F&D Planning, that has "pertinent involvement" in the issues of this case. (R. 64, F&D's Reply at 2-3.) The Florida Department of State records show F&D Ltd. registered as a foreign corporation in 1995, then withdrew its registration in 2002. (R. 55, Decl. of Mr. Wendt, Ex. I.) F&D Planning was created in 2004 and F&D Consulting in 2006.

(R. 42, F&D's Mot., Ex. 1 ¶¶ 3,6.) Donaldson is listed as a director of all three entities. (*Id.*)

Plaintiffs argue that F&D and F&D Ltd. are the same entity and that Donaldson and F&D "have acted as [Mr. Wendt's] contact in the United States for all matters relating to his investments." (R. 54, Pls.' Resp. at 36.) This Court agrees. Tracy Sunderlage received fee reconciliation statements from F&D for commissions paid on Plaintiffs' accounts in January 2003, February 2003, May 2003, and September 2003. (R. 56, Decl. of Tracy Sunderlage ¶¶ 14-18 & Ex. B-F.) Moreover, F&D Ltd. is currently a fictitious name registered to F&D Planning. (R. 55, Decl. of Mr. Wendt, Ex. I.) As late as April 2008, Mr. Wendt received a letter from Donaldson on F&D Ltd. letterhead notifying him that the IRS was challenging the deductibility of his Business Protection Plan. (R. 55, Decl. of Mr. Wendt, Ex. C.) The letterhead includes an address for F&D Ltd. that lists the same address as F&D Planning. (*Id.*) The Court finds at this stage, that Plaintiffs have made a *prima facie* showing that F&D is affiliated with and operating the business of F&D Ltd. *See Central States*, 230 F.3d at 946-47. Accordingly, F&D's motion to dismiss is denied.

## C. Venue

OTS Defendants seek dismissal pursuant to Rule 12(b)(3) on the ground that this is not the proper venue for Plaintiffs' claims. (R. 50, OTS Defs.' Mem. at 13-15.) OTS Defendants rely on a forum selection clause contained in the Investment Manager Agreement (the "Agreement") between Mr. Wendt, the Investment Manager, and FFT, that required claims to be litigated in Nevis, an island in the Caribbean.[3] (*Id.* at 13-14.) Although they are not signatories to the

---

[3] The Agreement provides: "It is mutually agreed that the validity, performance and interpretation of this Agreement, the terms thereof and any question or obligation arising out of the relationship hereby created, shall be governed by the Laws of Nevis . . . ." (R. 49, OTS

12

Agreement, OTS serves as agent for FFT for tax related issues by virtue of separate agreements.[4] (*See* R. 49, OTS Defs.' Mot., Ex. B.) OTS Defendants argue because of its agency relationship with FFT, a signatory to the Agreement, the forum selection clause is applicable in this case. (R. 50, OTS Defs.' Mem. at 14.)

OTS Defendants rely on *American Patriot Ins. Agency, Inc. v. Mut. Risk Management, Ltd.*, 364 F.3d 884 (7th Cir. 2004), for the right of a non-signatory to enforce a contract's forum selection clause against a signatory. The case followed a series of cases permitting contract signatories to enforce forum selection clauses when the non-signatories were "closely related" to the signatory. *See, e.g., Hugel v. Corp. of Lloyds*, 999 F.2d 206, 209 (7th Cir. 1993) ("In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound."); *Frietsch v. Refco, Inc.*, 56 F.3d 825, 827-27 (7th Cir. 1995) (explaining that the concepts of "closely related" and "foreseeability" are best understood through the "principle of mutuality").

In *American Patriot*, the plaintiff entered a shareholder agreement containing a forum selection clause, with an affiliate of the corporate defendant. *American Patriot*, 364 F.3d at 886. The defendant, although not a signatory to the shareholder agreement, sought to bind the plaintiff to the forum selection clause in the agreement. *Id.* The Seventh Circuit held that the plaintiff could not defeat the forum selection clause to which he was otherwise bound by "suing an affiliate

---

Defs.' Mot., Ex. A.)

[4] The agreements authorize OTS to act as the agent of the Trusts "solely for purposes of sections 7602, 7603 and 7604 of the Internal Revenue Code with respect to any request to examine records or produce testimony related to the proper treatment of amounts required to be taken into account under the rules of sections 6048(b)(1)(A) or to any summons for such records or testimony." (R. 49, OTS Defs.' Mot., Ex. B.)

13

or affiliates of the party to the contract in which the clause appears, or employees of the affiliates." *Id.* at 889 (citing *Frietsch*, 56 F. 3d at 827-28; *Hugel*, 999 F. 2d at 209-10). The conclusion was based in part on the fact that the plaintiff and defendant had entered into their own contract. The Seventh Circuit considered the contracts, including the shareholder agreement, as "a package." *Id.*

In this case, however, there is no corresponding contract between Plaintiffs and OTS Defendants that might constitute a "package" of agreements. Plaintiffs allege that they did not sign any agreements with OTS Defendants and that "OTS was unilaterally appointed by the trustee to act as a reporting agent in the United States." (R. 54, Pls.' Resp. at 33.) This is akin to one of the defendants in *American Patriot* who did not have a contract with plaintiff, but instead was "hired by the [] affiliate." *American Patriot*, 364 F.3d at 889. The Seventh Circuit held that this defendant could not "be thought a party to the forum-selection clause," and therefore reversed the dismissal, as to that defendant. *Id.* at 889-90. Similarly here, OTS Defendants cannot be considered a party to the forum selection clause of the Agreement.

Moreover, the Court finds that OTS Defendants are not "closely related" as that term is defined in the cases they cite. In *Frietsch*, the signatory was "entirely controlled" by the non-signatory, while in *Hugel*, plaintiff was bound to the forum selection clause because he was Chairman and CEO and owned 99% and 100% of the stock in the signatory corporations. *Frietsch*, 999 F. 2d at 209-10; *Hugel*, 56 F. 3d at 827. In this case, by contrast, the agency agreements merely authorize OTS to serve as FFT's agent solely for matters related to specific tax code provisions. (*See* R. 49, OTS Defs.' Mot., Ex. B.) This limited authority does not establish that the entities are "closely related" such that OTS can enforce the Agreement's forum selection

14

clause. Accordingly, OTS Defendants' motion to dismiss for improper venue is denied.

**D.     Failure To State a Claim**

Defendants next argue that the claims should be dismissed because Plaintiffs failed to plead the alleged fraudulent conduct with the requisite particularity and have not pleaded a claim for legal malpractice. (R. 43, Donaldson's Mem. at 10-13; R. 45, HT&D Defs.' Mem. at 7-12; R. 50, OTS Defs.' Mem. at 5-9; R. 39, TB&W's Mem. at 10.)

**1.     Fraud Claims**

Counts I-IV and VIII are premised on Defendants' alleged fraudulent conduct. (*See* R. 1, Compl.) As a preliminary matter, the Court is not persuaded by Defendants' argument that the statute of limitations bars these claims. (*See* R. 45, HT&D Defs.' Mem. at 13-14; R. 66, Donaldson's Reply at 14-16; R. 76, OTS Defs.' Reply. at 9.) Under the "discovery rule" the commencement of the statute of limitations is delayed until the party knows or reasonably should know that the injury has occurred and that it is wrongfully caused. *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1135 (Ill. 1995). Here, Plaintiffs allege that the accounting records provided up through December 31, 2007, were false and that it wasn't until January 2008, when they asked Defendants to liquify the Fixed Accounts, that they discovered the alleged fraudulent conduct. (R. 1, Compl. ¶¶ 71, 73.) The Court finds that the statute of limitations was tolled by the discovery rule until that time.

Next, HT&D Defendants, OTS Defendants, and Donaldson argue that Plaintiffs have failed to plead with particularity the circumstances constituting fraud. (R. 43, Donaldson's Mem. at 10-13; R. 45, HT&D Defs.' Mem. at 7-12; R. 50, OTS Defs.' Mem. at 5-9; R. 39, TB&W's Mem. at 10.) The claims that are premised on Defendants alleged fraudulent conduct are subject

15

to the heightened pleading standard of Rule 9(b). *Borsellino* 477 F.3d at 507; *see also Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005) ("a complaint made pursuant to the ICFA must be plead with the same specificity as that required under common law fraud"). The Seventh Circuit has explained that "Rule 9(b) ensures that a plaintiff [has] some basis for his accusations of fraud before making those accusations and thus discourages people from including such accusations in complaints simply to gain leverage for settlement or for other ulterior purposes." *Uni\*Quality, Inc.*, 974 F.2d at 924.

A plaintiff who provides a "general outline of the fraud scheme" sufficient to "reasonably notify the defendants of their purported role" in the fraud satisfies Rule 9(b). *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). Under Rule 9(b), Plaintiffs must allege the "who, what, where, when and how" of the alleged fraud for each defendant. *Uni\*Quality, Inc.*, 974 F.2d at 923; *Vicom, Inc.*, 20 F.3d at 778. Although individualized information about the role of each defendant in the fraud is generally required, "the particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim." *Corley v. Rosewood Care Ctr.*, 142 F.3d 1041, 1051 (7th Cir. 1998); *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) (finding that when details of the fraud "are within the defendant's exclusive knowledge," specificity requirements are less stringent").

Here, Plaintiffs attempt to outline their understanding of each Defendants' role in the fraud in the Declarations filed with their response. (*See* R. 55, Wendt Decl; R. 56, Sunderlage Decl.; R. 57, Ward Decl.) HT&D Defendants move to exclude the Declarations. (R. 61, HT&D Defs.' Mot. to Exclude.) Normally, a plaintiff is permitted to assert additional facts, either in its brief or in affidavits, in response to a 12(b)(6) motion, so long as the additional facts are

16

consistent with the complaint. *See Help at Home, Inc. v. Medical Capital, LLC*, 260 F.3d 748, 753 (7th Cir. 2001); *Albiero v. City of Kankakee*, 122 F. 3d 417, 419 (7th Cir. 1997). However, this is not the case with an allegation of fraud. The Seventh Circuit has determined that "such supplementation cannot save the charge if the charge is one of fraud, because a charge of fraud must be *pleaded* with particularity." *Kennedy v. Venrock Associates*, 348 F.3d 584, 593 (7th Cir. 2003) (emphasis in original).

The Court will not consider these additional factual assertions to determine if Plaintiffs' allegations of fraud have met Rule 9(b)'s particularity requirement. *See Kennedy*, 348 F.3d at 593 ("It is not enough for the plaintiff to submit affidavits that particularize the complaint's charge of fraud . . . The *complaint* must allege 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'") (citations omitted) (emphasis in original). Accordingly, HT&D Defendants' motion to exclude the Declarations is granted and the Court will determine if the complaint, as pleaded, sufficiently alleges fraud.

In the complaint, Plaintiffs allege that Defendants "were all engaged in a common enterprise to earn undisclosed fees and commissions from the Trusts [Plaintiffs] were advised to establish." (R. 1, Compl. ¶ 53.) Plaintiffs further allege that they were provided periodic accounting statements that omitted the true nature and extent of the fees and commissions that were allegedly being siphoned from their Trust investments. (*Id.* ¶¶ 68, 78.) Plaintiffs argue that the allegations are averred to Defendants as a group because "Defendants collectively had a role in [Plaintiffs'] investments at issue, and have taken and benefitted from sharing undisclosed fees and commissions over multiple years." (R. 54, Pls.' Resp. at 24.) Further, Plaintiffs allege that they

17

were "kept in the dark" and therefore do not know "the full extent of the timing and magnitude of [their] losses." (*Id.* at 25.)

The Court finds the allegations in the complaint are insufficient to meet the requisite particularity requirements. Although when details of the fraud "are within the defendant's exclusive knowledge," specificity requirements are less stringent, a complaint that is "completely wanting in the details that Rule 9(b) mandates" will not survive a motion to dismiss. *Jepson*, 34 F.3d at 1328. Here, there are eleven named Defendants in the complaint. (*See* R. 1, Compl.) Plaintiffs, however, assert the allegations against "Defendants" generally, failing to differentiate the levels of involvement of each in the alleged fraud. *See Vicom*, 20 F.3d at 778. Further, the complaint is pleaded in a conclusory fashion devoid of particulars surrounding the alleged fraud. *See Siegel v. Shell Oil, Co.*, 480 F. Supp. 2d 1034, 1043 (N.D. Ill. 2007) (dismissing claims where plaintiff "lumped" together multiple defendants and failed to adequately allege the who, what, when, where, and how of the averments of fraud). As pleaded, the complaint is insufficient to "reasonably notify the defendants of their purported role" in the fraud.[5] *Midwest Grinding Co.*, 976 F.2d at 1020. Accordingly, the motions to dismiss are granted and Counts I-IV and VIII are dismissed. The Court, however, will give Plaintiffs the opportunity to replead and cure this defect. Plaintiffs' claims that are premised on fraudulent conduct are therefore dismissed without prejudice.

---

[5] In addition, the ICFA "applies only to fraudulent transactions which take place 'primarily and substantially' in Illinois." *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007). The Court finds that Plaintiffs have failed to plead sufficient facts to establish that the alleged fraudulent conduct occurred "primarily and substantially" in Illinois.

18

## 2. Malpractice Claims

Next, HT&D Defendants move to dismiss Plaintiffs' legal malpractice claim (Count VI) against them. HT&D Defendants argue that Plaintiffs have failed to plead the elements of legal malpractice with specificity. (R. 45, HT&D Defs.' Mem. at 11.) To prevail in an action for legal malpractice, a plaintiff must prove the following elements: (1) the existence of an attorney-client relationship; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause establishing that but for the attorney's negligence, the plaintiff would have prevailed in the underlying action; and (4) damages. *First Nat'l Bank v. Lowrey*, 872 N.E.2d 447, 464 (Ill. App. Ct. 2007).

The Court finds that Plaintiffs have adequately alleged each of the four required elements. HT&D Defendants acted as Plaintiffs' attorney at all relevant times, which created a duty of care. (R. 1, Compl. ¶ 37.) Plaintiffs allege that HT&D Defendants breached their duty in numerous ways including failing to disclose conflicts in representation, receiving and/or sharing undisclosed fees and making false or misleading communications about themselves and their services. (*Id.* ¶ 129.) Plaintiffs further allege that but for HT&D Defendants' "legal advice, representations, and recommendations" they would not have created or funded the Trusts. (*Id.* ¶ 130.) Finally, Plaintiffs allege that they have "suffered actual injury in the form of damages in excess of $1,500,000." (*Id.* ¶ 132.) The Court finds that Plaintiffs have described the legal malpractice claim in sufficient detail to give HT&D Defendants fair notice of the claim, and the allegations actually suggest that Plaintiffs have a right to relief. *See Tamayo*, 526 F.3d at 1084. Therefore, HT&D Defendants' motion to dismiss the legal malpractice claims is denied.

## CONCLUSION

For the reasons stated above, the motion to exclude (R. 61) is GRANTED and the motions to dismiss (R. 42, R. 43, R. 45, R. 49), are GRANTED in part and DENIED in part. The motions to dismiss Counts I-V and VIII are GRANTED. Count V is dismissed with prejudice. Counts I-IV and VIII are dismissed without prejudice and Plaintiffs are given 21 days to file an amended complaint to replead their allegations of fraud with more specificity. The motions to dismiss are DENIED in all other respects.

The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. The parties shall appear for a status on June 2, 2009 at 9:45 a.m. to set a firm litigation schedule for the case.

Date: **May 11, 2009**  ENTERED: _____
**Ruben Castillo**
**United States District Judge**