# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| DALLEN and PEGGY WENDT, a husband and wife, ) | |
| ) | |
| Plaintiffs, ) | No. 08 C 3612 |
| ) | |
| v. ) | **Magistrate Judge** |
| ) | **Jeffrey Cole** |
| OFFSHORE TRUST SERVICE, INC., a Florida ) | |
| Corporation; JOSHUA CRITHFIELD, an individual; ) | |
| DUANE CRITHFIELD, an individual; FOSTER & ) | |
| DUNHILL CONSULTING, INC., a Florida ) | |
| corporation; FOSTER & DUNHILL PLANNING ) | |
| SERVICES, LLC, a Florida limited liability company; ) | |
| STEPHEN DONALDSON, an individual ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

This case involves Kentucky plaintiffs, Florida defendants, an investment conference in the

Bahamas, offshore investments in Nevis and Anguilla in the Caribbean, and solemn assurances of

substantial, guaranteed returns on risk-free investments. If the allegations in the Amended Complaint

are proven, the assurances were nothing more than "a promise to the ear to be broken to the hope,

a teasing illusion like a munificent bequest in a pauper's will." *Edwards v. California*, 314 U.S. 160,

186 (1941)(Jackson, J., concurring). In 59 pages, comprising 280 paragraphs, the Amended

Complaint depicts a labyrinthine scheme to defraud, dressed in the garb of honesty and hedged about

1

with all the appearances of legal and enforceable undertakings -- but a squalid scheme nonetheless.

Here is how it is summarized in the Amended Complaint:

The individual defendants utilized a complex scheme and plan of multiple corporate, partnership and trust shells to move money, making it impossible for the Wendts to confirm what actual investments had been made by placing monies paid by the Wendts in shell entities, claiming no access to those funds. The Plan was promoted to create and fund trusts to purchase life policies, which would invest monies safely and in a fiduciary manner.[1] The Defendants controlled the Wendts' money at every turn, and directed movement of that money from their homes and offices in the U.S. Due diligence papers and tax opinions given the Wendts are riddled with false statements. Income earned through various investments was taken before it even was reported to the Wendts. Further, the defendants illegally took undisclosed fees and commissions on an annual basis from the Wendts' trusts. Thus, a group of men concocted and implemented a scheme to separate the Wendts, and it is believed hundreds of others, from their money through misrepresentations and lies.

(Amended Complaint, ¶12). The Amended Complaint seeks to make the fraud perhaps even more repellent by alleging that its object was "the fraudulent theft of hard earned money [i.e $1,500,000] the Wendts set aside for their young daughters' futures." *Id.* at ¶12.[2]

The defendants have a very different view of things. They contend that this suit and a companion case pending in Nevis "arise from plaintiffs' dissatisfaction with the performance of two Nevis trusts they funded in efforts to create asset protection structures with potential U.S. tax advantages...." (Crithfield Defendants' Reply In Support Of Defendants' Motion To Dismiss at 2).

---

[1] Paragraph 261 of the Amended Complaint alleges that the various representations "were false in that the Wendts' investments were speculative investments and had been depleted by repeated, multi-layered undisclosed management fees, commissions and dividend skimming . . . ."

[2] There is also a case pending in Texas involving Stephen Donaldson and Duane Crithfield, who are defendants here, in which they are accused of an investment scheme almost identical to that charged by the Wendts. The Texas complaint charges that entities controlled by Donaldson and Crithfield swindled Dr. William Booth and his wife out of several millions of dollars, which represented decades of long and hard work, the goal of which was to achieve "their lifelong dream of accumulating enough wealth to retire comfortably." (See Affidavit of Paul Richard Brown, Ex. C., ¶ 1.1, In Support of Opposition to Motion to Dismiss).

As always occurs in these sorts of cases, when things did not go as hoped for – the plaintiffs say as promised – litigation ensued. The plaintiffs first filed suit in this court in June 2008. In March 2009, Judge Castillo denied the defendants' motions to dismiss for want of personal jurisdiction and improper venue, but granted the motion to dismiss the fraud claim without prejudice. On June 1, 2009, the plaintiffs filed their Amended Complaint, which seeks $3,600,000 in damages based on theories of conversion, fraudulent misrepresentation, unjust enrichment, breach of fiduciary duty, unfair and deceptive trade practices in violation of the Illinois Consumer Fraud Act, and civil conspiracy. All the counts, however, were based on the same factual allegations.

Less than three weeks later, the plaintiffs sued in Nevis, naming OTS and Duane Crithfield and the Nevis trusts and their administrators and trustees and the insurance companies whose policies were to have purportedly yielded the guaranteed, no risk returns. The suit in the Eastern Carribean Supreme Court in the High Court of Justice, Federal of St. Christopher and Nevis, seeks $2,492,562.20 on theories of fraud and breach of fiduciary duty. (*See* Foster & Dunhill Consulting's Memorandum in Support of Motion to Dismiss, Ex. A). The complaint in the Nevis action alleged essentially the same facts to support the charges of fraud and breach of fiduciary duty as were alleged in the Amended Complaint in the instant case.[3] Its ultimate conclusion that the defendants in the Nevis action, which included Duane Crithfield and Offshore Trust Services Inc., "were all colluding, conspiring and participating in a common scheme to directly and wrongfully benefit financially from

---

[3] The defendants contend that there are inconsistencies between the two complaints in that certain conduct is ascribed to one defendant in the United States complaint, while the Nevis complaint ascribes that conduct to a different person or entity in Nevis. (F&D and Donaldson Reply at 5). There is some merit to the charge, but that does not make the two complaints nearly so disparate as the defendants suggest. The inescapable reality, as the defendants' reply brief ultimately concedes – actually argues – is that the two cases charge the same fraud, conceived and implemented by the same protagonists and involving the same evidence. (Reply at 11).

the Trusts to the detriment of the Beneficiaries." (*Id*. at ¶33). The Nevis complaint also charged that

Duane Crithfield and Offshore Trust Service, Inc. – who are also defendants in the instant case –

knew that various representations they and the named co-defendants in the Nevis action made were

false or made with reckless indifference to the truth. (*Id*., ¶34).[4]

In addition to damages for fraud and breach of fiduciary duty, the Nevis action sought a

turnover of trust property and assets to a new trustee, which was relief not available in this court

since Alliance Holding, First Fidelity Trust, Fidelity Insurance Company, BPS International LLC,

Westminster, Hope & Turnberry Ltd. and Kiethley Lake are not parties in the instant case. Both

suits are pending. The defendants want either to have the federal suit dismissed under the doctrine

of *forum non conveniens* or to have the court abstain from exercising jurisdiction in favor of the suit

in Nevis. In their view there is no reason for what is in essence the same suit to be proceeding in

different courts in different countries, thousands of miles apart. The plaintiffs vigorously contend

that the parties and claims in the two actions are different, and that neither the doctrine of *forum non*

*conveniens* nor the doctrine of abstention warrants, let alone requires, that the action in this court be

dismissed or halted.

## I.
## THE AMENDED COMPLAINT

### A.
### The Parties

---

[4] Foster & Dunhill Consulting, Inc., Foster & Dunhill Planning Services, LLC, and Stephen P. Donaldson's Motion to Dismiss [105] contains a paragraph-by-paragraph comparison of the Nevis complaint and the instant complaint. It reveals the substantial factual congruence between the two cases.

The plaintiffs are a married couple, who are citizens of Kentucky. All of the defendants are citizens of Florida. Defendant, Offshore Trust Service ("OTS"), is a Florida corporation with its principal place of business in Tampa. Joshua Crithfield resides in Tampa and is one of OTS's founders. OTS president, Duane Crithfield, also resides in Tampa. Foster & Dunhill Consulting ("F&DC"), is a Florida corporation with it principal place of business in Dade City, Florida. And, Foster & Dunhill Planning (F&DP), is a Florida limited liability company with its principal place of business in Dade City. The founder, officer, and director of those two companies, Stephen Donaldson, is a Dade City resident. (*First Amended Complaint*, ¶¶ 1-7).

## B.
## The Allegations of the Amended Complaint

In 2002, plaintiffs began exploring various alternatives for the protection and investment of their assets. (*First Amended Complaint*, ¶¶ 1-7). Defendant Stephen Donaldson visited the plaintiffs at their home in Kentucky early in 2002 and pitched them on the advantages of offshore investments, specifically with a firm he marketed, Fidelity Insurance. (*First Amended Complaint*, ¶ 15). In May 2002, Mr. Wendt attended a conference in the Bahamas on investment services and products. (*First Amended Complaint*, ¶ 16). The conference was put on by Foster & Dunhill, the Chicago law firm of Handler, Thayer, and Duggan ("HTD"), and Business Planning Systems ("BPS"). (*First Amended Complaint*, ¶ 17). HTD is a Chicago Law firm that practices in the area of taxation, business law, and estate planning. (Amended Complaint at ¶27). The Amended Complaint alleges that HTD and BPS were in a joint venture with defendants, Donaldson, F&D Planning, F&D Consulting, and Duane Crithfield, and OTS for the express purpose of selling FIC insurance and investment products to investors like the Wendts. (Amended complaint, paragraph

29, 73). It is further alleged that the plaintiffs had frequent discussions and contacts with HTD regarding the proposed investments. (Amended Complaint, ¶¶ 32, 39, 40, 46 – 47, 69, 70 – 77).

The presenters included defendants, Donaldson, Duane and Joshua Crithfield, as well as members of HTD, and Sunderlage Resource Group ("Sunderlage")(*First Amended Complaint*, ¶ 18). The conference promoted an offshore trust investment option in which First Fidelity Trust ("FFT"), as trustee, would purchase life insurance policies from Fidelity Insurance Company ("FIC), and invest the policy proceeds with account administrator, Westminster Hope & Turnberry ("WH&T"). Plaintiffs allege that they were told that FIC would invest in "no-risk," fixed income accounts with a guaranteed return of 8% and 8.5% per annum that were not available to the general public. (*First Amended Complaint*, ¶¶ 22-25).

When he returned from the conference, Mr. Wendt retained HTD as tax and estate planning counsel. (*First Amended Complaint*, ¶ 26). Plaintiffs allege that HTD touted the advantages of the FFT trust and provided the plaintiffs with financial information on the principals. (*First Amended Complaint*, ¶¶ 32-40). They also got information from Mr. Donaldson and Duane and Joshua Crithfield. (*First Amended Complaint*, ¶¶ 41-50). Although plaintiffs expressed concerns about the financial security of FIC, the defendants assured them that the trust's investment would involve no market risk, and that the return of the principal plus an 8% or 8.5% fixed return would be 100% guaranteed. (*First Amended Complaint*, ¶ 49).

By December 2002, the defendants had apparently assuaged the plaintiffs' concerns, because the plaintiffs established two trusts in Nevis, the Smiling Frog Trust and the Black Ink Trust, in the amounts of $500,000 and $1 million, respectively. (*First Amended Complaint*, ¶¶ 51, 91). The Smiling Frog Trust named Keith Lake of Anguilla as trustee, while the Black Ink trust named FFT

– which was also Mr. Lake's company, as trustee. (*First Amended Complaint*, ¶¶ 52-53). Mr. Lake is a resident of Nevis in the West Indies, where FFT is also located. (*First Amended Complaint*, ¶ 54). Plaintiffs allege they were assured that although the trustee and investments were located offshore, they could effectively monitor and control the trusts from the United States through OTS and its directors, Duane and Joshua Crithfield, F&D and its director, Mr. Donaldson, and Sunderlage. (*First Amended Complaint*, ¶¶ 58-60). But, as plaintiffs allege, it would turn out that Mr. Donaldson, the Crithfields, the trustees, and FIC were all part of a common and fraudulent enterprise. (Amended Complaint, ¶ 61).

In January 2003, the Trusts purchased FIC insurance policies, and invested funds in fixed accounts set to mature in January 2008 and January 2013. (*Amended Complaint*, ¶¶ 91-94). The plaintiffs allege that they were assured that their investments were "safe and profitable," and that they received periodic accounting statements from OTS showing that the investments were making the guaranteed returns. (*Amended Complaint*, ¶¶ 94, 97-98). Early on, however, there were some problems. The plaintiffs were surprised by a 16% charge to their accounts, especially since they were told the normal "load" fee was only 6-7%. (*First Amended Complaint*, ¶ 99). Defendants told the plaintiffs that this was for a "reserve" and that they would recoup the amount after seven years. (*First Amended Complaint*, ¶ 101). It was not; plaintiffs discovered in October 2008 that the defendants had distributed it among themselves. (*First Amended Complaint*, ¶ 123). The plaintiffs were also unaware that their fixed accounts were all backed by collateralized debt obligations, rather than stocks, bonds, or money market instruments. (*First Amended Complaint*, ¶ 104).

In November 2007, plaintiffs asked Mr. Donaldson and the Crithfields to liquidate their accounts, including the fixed accounts which had not yet matured. (*First Amended Complaint*, ¶

105). The plaintiffs claim their request – which they repeated on a few more occasions in writing – was ignored for months. (*First Amended Complaint*, ¶¶ 106-109). Then, in January 2008, FIC "claimed the investment had been depleted, and despite the fact that the 8% return had been `guaranteed,' they could only pay 40 cents on the dollar for the monies invested if the [fixed accounts] were liquidated." (*First Amended Complaint*, ¶ 110). Yet, an April 2008 report from OTS showed the accounts as whole. (*First Amended Complaint*, ¶ 101). It was not until October 2008, that Duane Crithfield and OTS sent a "new" report that showed – retroactively – that the fixed accounts had been depleted as the plaintiffs were informed in January 2008. (*First Amended Complaint*, ¶ 112). The defendants cut off communication with the plaintiffs, and plaintiffs' resort to the trustees was to no avail, given their connection with the defendants. (*First Amended Complaint*, ¶ 113-115).

The plaintiffs also learned that the actual return on FIC investments was greater than that reported to them. (*First Amended Complaint*, ¶¶ 127-29, 132-135). The defendants skimmed the excess, (*First Amended Complaint*, ¶¶ 130, 139), and they made the same, false earning reports to the IRS. (*First Amended Complaint*, ¶¶ 147-150). The plaintiffs have been trying unsuccessfully, they say, to get their money or at least get answers ever since. Vowing to do "whatever it takes" to get their money back, the plaintiffs have sued here and in Nevis seeking millions in damages.

**C.**
**The Plaintiffs' Suits In Illinois And Nevis**

The plaintiffs initially filed suit in the Northern District of Illinois in June of 2008, on the theory that the Chicago law firm, Handler, Thayer, and Duggan, LLC, and four of its attorneys, and an Illinois accounting firm, Sunderlage Resource Group, and Tracy Sunderlage, its founder and

director had formed a joint venture with the Florida defendants, who were charged with the actual misrepresentations and falsifications. But the plaintiffs dismissed the accounting firm and its founder without prejudice on August 29, 2008 and dismissed the law firm and its attorneys with prejudice on December 16, 2008, apparently following a settlement with them. (Amended complaint, ¶8). Mr. Donaldson, F&DC, and F&DP ("F&D defendants") filed a motion to dismiss based on lack of personal jurisdiction, and the Crithfields and OTS ("OTS defendants") moved to dismiss, arguing failure to state a claim, lack of standing, and improper venue.

Judge Castillo dismissed the plaintiffs' securities claim based on lack of standing and dismissed the plaintiffs' fraud claims without prejudice, but denied the balance of the defendants' motions. The court concluded it had personal jurisdiction over the F&D defendants because they had formed a joint venture with the Chicago law firm. The court did deny the OTS defendants' venue motion, but it had been based entirely on a forum selection clause in the parties' investment management agreement. The court found that the OTS defendants were not signatories to that agreement.

The plaintiffs amended their complaint on June 1, 2009, and filed a second lawsuit in the Eastern Carribean Supreme Court, High Court of Justice, Federation of St. Christopher and Nevis, on June 18th. The Nevis suit also named OTS and Duane Crithfield, but added several other defendants, including the trustee and the trusts. The plaintiffs charged the defendants in the Nevis suit with fraud and breach of fiduciary duty. That suit provides the underpinning for the defendants' arguments that the instant case should either be dismissed under the doctrine of *forum non conveniens* or that the court should abstain from exercising jurisdiction in favor of the proceedings in Nevis.

## II.
## ANALYSIS

### A.
### Defendants Have Not Established That Nevis Is An Alternative, Available Forum As Required By The Doctrine Of *Forum Non Conveniens*

Judge Posner has described the doctrine of *forum non conveniens* as "[t]hat venerable judge-made doctrine, securely a part of federal common law...." *U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749 (7th Cir. 2008). Its basic contours were discussed by the Supreme Court in *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422 (2007):

> A federal court has discretion to dismiss a case on the ground of *forum non conveniens* when an alternative forum has jurisdiction to hear [the] case, and ... trial in the chosen forum would establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience, or ... the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems. Dismissal for *forum non conveniens* reflects a court's assessment of a range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality. We have characterized *forum non conveniens* as, essentially, a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined.

*Id.* at 429-30 (citations and internal quotation marks omitted)(brackets and ellipses in original).

A case may be dismissed under *forum non conveniens* only when two conditions are met: (1) there is an available and adequate alternative forum that has jurisdiction over the case; and (2) the balance of private and public interest factors weighs in favor of dismissal. *See Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise Fund*, 589 F.3d 417 (7th Cir. 2009); *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir.2008); *In re Factor VIII or IX Concentrate Blood Products Litigation*, 484 F.3d 951, 955, 957 (7th Cir. 2007). The defendant bears the burden of persuading a court that a case

should be dismissed on *forum non conveniens* grounds, and that burden is weighty when the plaintiff's home forum has been chosen. *Sinochem*, 549 U.S. at 430.

In *forum non conveniens* cases, "home" is generally taken to mean home country. *Abad v. Bayer Corp.*, 563 F.3d 663, 666 -667 (7th Cir. 2009)("One can find strong language about the plaintiff's right to his chosen forum in many judicial opinions . . . but they usually are referring to an American plaintiff wanting to litigate in an American rather than foreign court . . . ."); *Clerides*, 534 F.3d at 628. Thus, the plaintiffs' selection of Illinois as the forum is entitled to far more deference than the defendants' briefs are willing to concede – which is to say none. (*F&D's Motion to Dismiss*, at 5; Doc 101).[5] But perhaps not quite so much as the plaintiffs have assumed.

When plaintiffs select a forum, there is a strong presumption in favor of that choice and its convenience to the plaintiffs. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-256 (1981). If they do not select the home forum – and are suing "far from home," *Blood Products Litigation*, 484 F.3d at 956 – "it is less reasonable to assume that the forum is a convenient one and therefore 'the presumption in the plaintiff's favor applies with less force....'" *Piper Aircraft*, 454 U.S. at 255-256; *Sinochem*, 549 U.S. at 430. For example, in *U.S.O. Corp.*, what was in reality (although not nominally) a Japanese company sued in Illinois. The Seventh Circuit held that a foreign company that chooses to sue in the United States rather than in its own country is unlikely to experience inconvenience if the court invokes the doctrine of *forum non conveniens* against it. Realistically, the

---

[5] In one sense, plaintiffs have not chosen their "home" forum. They are Kentucky citizens suing in Illinois. But that is the 28 U.S.C. §1404 sense. The decision here does not involve courts in different federal districts, but in different countries, and "the showing required to prove that the *forum* is indeed *non conveniens* is greater than that required for obtaining a change of venue from one district court to another." *U.S.O. Corp.*, 547 F.3d at 753.

court said, a Japanese company should not be disconcerted to have to litigate against its Japanese adversaries in a Japanese court. It was in that context that the court said: "'[I]f the plaintiff is suing far from home, it is less reasonable to assume that the forum is a convenient one.... [T]he risk that the chosen forum really has little connection to the litigation is greater.' The plaintiff's home is Tokyo, which is quite a distance from Chicago." 547 F.3d at 752 (citing *Blood Products*).[6]

The situation here is not comparable to that in *U.S.O. Corp.* or that hypothesized in *Blood Products*. The plaintiffs filed, not in Kentucky where they live, but in Illinois. But both are "home" fora, and Illinois is not so "far away" from Kentucky, especially given the ease of modern travel and the involvement of a Chicago law firm, which is alleged to have been a joint venturer with the defendants who allegedly concocted the illicit scheme described in the Amended Complaint.[7] Moreover, while the defendants focus inordinately on what they view as the minimal activities claimed to have occurred in Illinois, their arguments put out of view the very substantial conduct claimed in the Amended Complaint to have occurred in the *United States* – in Kentucky and Florida, in addition to what occurred in Illinois. (*See* Amended Complaint ¶¶ 40-45, 58-59, 79-81, 97-98, 113, 142-144). And that activity cannot be ignored in determining the extent of the connection between the chosen forum and the litigation. In the instant case, the chosen forum is not merely Illinois, but the United States.

---

[6] If a Texas citizen decided to sue in the federal court in Alaska where Alaska had little to do with the case, a "skeptical court ... might conclude that convenience requires a change in venue under the federal statutory counterpart to *forum non conveniens*. 28 U.S.C. § 1404(a)." *Blood Products Litigation*, 484 F.3d at 956.

[7] For the purposes of venue under 28 U.S.C. § 1391, the defendants are said to "reside" in Illinois because they are subject to personal jurisdiction here. 28 U.S.C. §1391(c).

Thus, even if the defendants' burden of persuasion is perhaps slightly less onerous than they would have had if the plaintiffs sued in Kentucky, the outcome of the motions to dismiss is unaffected, and the analysis still hinges on a comparative assessment of the plaintiffs' convenience if the case is tried here with the degree of oppressiveness and vexation to the defendants if trial were to proceed in this court. *U.S.O. Corp.*, 547 F.3d at 749, 751. *See also Sinochem Intern. Co. Ltd.,* 549 U.S. at 429; *Piper Aircraft Co.*, 454 U.S. at 256 n. 23. Given the ease of modern travel, it cannot be concluded that the defendants, who are citizens and residents of Florida, would be unreasonably burdened by having the case in Chicago, rather than Nevis.[8]

Indeed, defending the case here would appear to impose a less onerous burden than defending the case in Nevis. Yet, it is only when trial in the forum selected by the plaintiff would be oppressive and vexatious to a defendant "out of all proportion to plaintiffs' convenience" that the case should be dismissed. *Sinochem Intern. Co. Ltd.*, 549 U.S. at 429. *See also U.S.O. Corp.*, 547 F3d at 749 (the doctrine of *forum non conveniens* "authorizes a court to dismiss a suit if making the defendant defend in that court rather than in an alternative forum would burden the defendant unreasonably."). In sum, the four defendants in the instant case who are not named in the Nevis suit have not shown the requisite degree of imbalance, and that alone requires denial of their motions. But there is more: Nevis is not an available, alternative forum.

"'An alternative forum is available if all parties are amenable to process and are within the forum's jurisdiction.'" *Blood Products Litigation*, 484 F.3d at 95. An alternative forum is adequate

---

[8] And, in all likelihood, it is even less unreasonable to require that they defend in Chicago rather than in Kentucky, the forum the defendants concede would have been entitled to great deference had the case been brought there.

13

when the parties will not be deprived of all remedies or treated unfairly. *Id.* It need only provide the plaintiff with a fair hearing to obtain some remedy for the alleged wrong. "It is not necessary that the forum's legal remedies be as comprehensive or as favorable as the claims a plaintiff might bring in an American court. . . . Instead, the test is whether the forum provides some potential avenue for redress for the subject matter of the dispute." *Stroitelstvo Bulgaria Ltd.*, 589 F.3d at 421.

At first blush, Nevis' remedies would appear to be satisfactory. Indeed, the plaintiffs must have thought so or presumably they would not have sued Duane Crithfield and OTS for millions of dollars in Nevis. Even if Nevis does not provide the same range of damages as are available in this court, so long as there are potential avenues for redress, dismissal on *forum non conveniens* grounds based on a claim that the forum is inadequate may be denied. *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799 (7th Cir. 1997). However, as discussed *infra* at 19, the question is a good deal more complicated than it appears, and on the present record cannot be answered favorably to the defendants.

On the critical question of availability the defendants do not fare well. Recognizing that four of the defendants in this case are not subject to jurisdiction in Nevis, thereby making it an unavailable forum, the F & D defendants' brief represents that they will consent to jurisdiction in Nevis if the case is dismissed, thereby, they say, eliminating any concerns about the availability of Nevis as an alternative forum:

> Two of the defendants in the Instant Complaint are defendants in the Nevis case: D. Crithfield and OTS. F&D Consulting, F&D Planning and Donaldson are not located in Nevis. But these three Defendants would consent to a forum's jurisdiction in Nevis so long as this case is dismissed. "A party's express consent to a forum's jurisdiction obviates any concern about availability." *Stroitelstvo Bulgaria Ltd.*, 598 F.Supp.2d at 882. Further, J. Crithfield has also consented to jurisdiction in Nevis. Nevis is an available forum.

(*F&D Defendants' Memorandum*, at 6).

14

The motion to dismiss by Offshore Trust Service and Joshua and Duane Crithfield represents that Joshua Crithfield, Stephen Donaldson, Foster & Dunhill Consulting, Inc. and Foster & Dunhill Planning Services LLC, have "consented to submit to the jurisdiction of the [court] in [Nevis]." (Motion at 3-4, 6)(Doc.103). Exhibit C, which is said to support the representation, is a document captioned "Consent to Jurisdiction" and is filed on the docket in this case. However, it is executed solely by and on behalf of Joshua Crithfield. Thus, there are insufficient consents and Nevis is not an available forum.

But assuming, for the sake of discussion that the representations in the briefs are sufficient to constitute a conditional consent to jurisdiction in Nevis if the defendants were added as parties in the Nevis action, the question remains whether Nevis would honor their consents.[9] If the answer is no, then Nevis is not an available forum, and that ends the inquiry. Here, the defendants have simply put the issue out of view, and have tacitly assumed a favorable answer, even though as the movants, they must establish that the forum recognizes consents to jurisdiction. Normally, expert testimony about the laws in the foreign jurisdiction is required. In *Kamel*, for example, a party submitted an affidavit by an expert in Saudi law that Saudi law recognized consents to jurisdiction, and that even without consent, it would render defendant amenable to Saudi jurisdiction. 108 F.3d at 803. In *In re Air Crash Near Athens, Greece on August 14, 2005*, 479 F.Supp.2d 792, 797 (N.D.Ill. 2007), the defendant "offered expert opinions that the courts in Cyprus and Greece would have jurisdiction over it, if it appeared voluntarily and did not contest jurisdiction." In our case, no such showing has been made or even attempted.

---

[9] Exhibit C, the "consent to jurisdiction" executed by Joshua Crithfield, has not been filed or otherwise effectuated in Nevis.

Further, even if Nevis recognized consents under some circumstances, there is nothing from which it may be predicted with any degree of confidence that the proposed consents would be honored, when to do so would add four defendants, thereby obviously dilating the proceedings and complicating the case.[10] Why would a court in Nevis do that when there is litigation in the United States that already has jurisdiction over Mr. Crithfield and OTS and the four other U.S. citizens who are alleged to have colluded with them? The answer would appear not to favor the defendants. Court congestion and the burdens imposed on a court are issues that a United States court considers in making *forum non conveniens* determinations. Undoubtedly, those considerations would factor into whether a Nevis court would be willing to accept consents to jurisdiction.

The plaintiffs' chief objection to the offer seems to be that dismissal of the case under the doctrine of *forum non conveniens* would unreasonably burden them, because they will have "to significantly amend the Nevis complaint to include multiple additional causes of action as well as name... additional defendants." (Response at 22). This, it is alleged, would "create additional expense and practical problems" for the plaintiffs and the current defendants in Nevis, some of whom have answered the Nevis complaint. *Id.* This statement is a nonstarter for two reasons. First, it is conclusory, unsupported, and unamplified, and it is basic that unsupported statements in briefs are not evidence and do not count. *Ho v. Donovan*, 569 F.3d 677, 682 (7th Cir. 2009); *Woolard v. Woolard*, 547 F.3d 755 (7th Cir.2008); *United States v. Stevens*, 500 F.3d 625, 628-629 (7th

---

[10] Even if the evidence would be the same without the addition of the four United States defendants – a conclusion that cannot be reached without knowledge of the law of evidence in Nevis – the addition of four defendants and their lawyers who would have quite specific objections and positions on all aspects of the case would certainly make the case more difficult for a court.

Cir.2007). [11] Second, whatever "additional expense" might be involved in "amend[ing] the Nevis complaint" could not be meaningful since the involvement of the U.S. defendants is already spelled out in elaborate detail in the Amended Complaint in this case. Whatever expense there would be pales into insignificance when compared to the costs the plaintiffs will incur by proceeding simultaneously in Nevis and this case.

Some courts have allowed a *forum non conveniens* dismissal conditioned on the acceptance of jurisdiction by the foreign tribunal. *See Yavuz v. 61 MM, Ltd.* 576 F.3d 1166, 1179 (10th Cir.2009). Others have expressed reluctance to approve a dismissal based on only a possibility that an alternative forum is available. *See Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan,* 273 F.3d 241, 247 (2d Cir.2001)(a district court dismissing a case on *forum non conveniens* grounds should have a " 'justifiable belief' that the [alternative forum] would not decline to hear the case."). *See Fidelity Bank PLC v. M/T Tabora,* 333 Fed.Appx. 735, 738, 2009 WL 1668619, 3 (4th Cir. 2009). However, since the defendants have not shown that trial here would establish oppressiveness and vexation out of all proportion to the plaintiffs' convenience, a provisional dismissal would not be appropriate.

Finally, Duane Crithfield and Offshore Trust Service, Inc., who are defendants here and in the Nevis action, have represented that they have filed a counterclaim in the Nevis action "seeking a determination of the issues raised in the Illinois suit," and that "[a] copy of the Answer and Counterclaim will be supplied when it arrives from Nevis." (Motion to Dismiss at 3, 6-7). That

---

[11] *See e.g. IFC Credit Corp. v. Aliano Brothers General Contractors, Inc.,* 437 F.3d 606, 610-611 (7th Cir.2006); *United States ex rel. Feingold v. AdminiStar Federal, Inc.,* 324 F.3d 492, 494 (7th Cir. 2003); *Campania Management Co., Inc. v. Rooks, Pitts & Poust,* 290 F.3d 843, 853 (7th Cir. 2002).

might create the kind of "mirror- image" suit considered in *U.S.O. Corp.* 547 F.3d at 750. But the record in this case does not reflect the filing of the counterclaim, thereby making it impossible to determine its scope.

For the defendants, the answer to the question of whether Nevis can provide an adequate forum is conclusively demonstrated by the fact that the plaintiffs' complaint in Nevis alleges fraud and fiduciary breaches and rests on many of the same facts as charged in the instant case. The Nevis suit alleges fraud and fiduciary breaches by: Nevis corporations, Nevis trust companies, an Illinois corporation "recorded" in Nevis, entities dealing with Nevis trusts, including, a Florida corporation, which is alleged to have managed, controlled, kept and maintained the Nevis trusts' investment and accounting records, and a Nevis attorney who served both as a trustee of a Nevis trust as well as an officer of one ore more Nevis corporations. *See* F & Ds' Motion to Dismiss, Ex. A. While it is surely a reasonable inference that the plaintiffs believe, or at least hope, that Nevis' laws are adequate to deal with Mr. Crithfield and OTS, and if sufficient to deal with them, perforce they are adequate to deal with his co-defendants in the instant case. But belief is not proof.

The only evidence on this score, has been presented by the plaintiffs in the form of the Nevis International Exempt Trust Ordinance, 1994 (as amended, 2000). *See* Declaration of Paul Richard Brown, Ex. B, In Support of Wendt Opposition to Defendants' Motions to Dismiss. The Ordinance seems to grant substantial powers to a Nevis court "in respect of any matters concerning an international trust," and makes "a trustee who commits or concurs in a breach of trust... liable for (a) any loss or depreciation in the value of trust property resulting from the breach; and (b) any profit which would have accrued to the trust had there been no breach."

Does this mean that U.S. citizens who are not trustees have liability for having fraudulently

induced other U.S. citizens to invest in trusts in Nevis which are alleged to be part of a scheme to

defraud?  That question can only be answered by resort to judicial interpretations of the Ordinance

and of other laws which bear upon the question.  Yet, the briefing does not address any of this is and

is thus insufficient to make an informed judgment about the adequacy of Nevis law to deal with the

kind of conduct alleged in the instant complaint where engaged in by United States citizens.

No expert evidence has been presented on the scope and meaning of the Ordinance by either

side, as often occurs in *forum non conveniens* cases.  *See e.g., Stroitelstvo Bulgaria Ltd.*, 589 F.3d

at 420 (experts on both sides testified about Bulgarian law).  While the defendants' briefs opine on

the meaning of the Nevis Ordinance of 1994, that is merely argument based upon a literal reading

of certain provisions without regard to how those provisions have been interpreted by the Nevis

courts and without regard to their interplay with other provisions of Nevis law.

Based on their review of the internet, the defendants note that Nevis is a "common law"

jurisdiction, from which they conclude that Nevis law provides adequate remedies to deal with the

alleged conduct of the defendants.  Putting to one side the permissibility of reliance on the internet

for determination of the kind of critical question under consideration,[12] the question is not whether

Nevis is a common law jurisdiction, but what the common law of Nevis provides for.  Justice

Holmes' famous observation in *Southern Pacific Co. v. Jensen* applies no less to Nevis than it does

---

[12] It is doubtful that even the proponents of enhanced resort to the internet would approve of making the kind of determination called for by this aspect of the case based upon what appeared on an internet site. *See* Richard J. Posner, *Remarks on Appellate Advocacy,* The Circuit Rider, 17 (Nov. 2009); Charles Knight, *Searching For Brother Jim: Improving Appellate Advocacy With the Internet*, The Circuit Rider, 12 (April 2010).

here: "The common law is not a brooding omnipresence in the sky but the articulate voice of some sovereign or quasi-sovereign that can be identified.... It always is the law of some State...." 244 U.S. 205, 222 (1917)(Holmes, J., dissenting). And thus, it will inevitably vary from state to state and nation to nation. In short, there is no *evidence* that the law of Nevis is sufficiently comprehensive to address what the United States citizens are charged with having done in this case.

Thus far, we have considered factors relating to the balance of convenience to the parties. Factors of public interest also have a place in application of the doctrine. *U.S.O. Corp.*, 547 F.3d at 754. The Supreme Court has instructed courts to review factors such as the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors include the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case – which is what the instant case is – in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Clerides,* 534 F.3d at 628; *Stroitelstvo Bulgaria Ltd.,* 589 F.3d at 424-425. A number of these factors do not favor the defendants.

The complaint charges a broad-based scheme with the misrepresentations largely occurring in the United States by United States citizens, who could not be deposed in the Nevis action unless they agreed to do so. That inaccessibility would make the proceedings in Nevis most costly and difficult, and a United States court is certainly more familiar with the law that will govern the

defendants' claimed misrepresentations and misconduct, most of which occurred in the United States, than is a court in Nevis. Further, the complaint charges that the defendants represented that they would be guiding the administration and affairs of the Nevis trusts, they control from the United States. That allegation, coupled with the fact that documents reflecting trust activity and administration were provided not only to the plaintiffs but to certain of the defendants strongly suggests that much of the relevant documentation will indeed be available in the United States. And the defendants have not shown that other relevant documentation will be difficult to obtain in Nevis or that Nevis procedures make that impracticable. Moreover, Duane Crithfield and OTS are parties in both cases, and they will most assuredly be able to obtain in the Nevis action, if they do not have them already, all the relevant trust documents, which will then be available to all the defendants in this case.

There are no premises to view, and the parties have offered no argument on relative court congestion. The United States has a significant interest in the litigation since its citizens were both the victims and the perpetrators, according to the complaint. Lastly, is the question of enforceability of a Nevis judgment in the United States. As discussed more fully *infra* at 32, the defendants have not proved that a judgment for fraud, misrepresentation or fiduciary breach entered by the court in Nevis would be recognized and enforced in the United States. The only attempt to make the appropriate demonstration came in the defendants' reply brief, even though it should have appeared in their opening brief since they had the burden of proof on the issue. As the Seventh Circuit has repeatedly admonished, reply briefs are for replying, not for raising new matters or arguments that could and ought to have been advanced in the opening brief. *See e.g., United States v. Boyle,* 484 F.3d 943, 946 (7th Cir.2007)(arguments are forfeited); *United States v. Alhalabi,* 443 F.3d 605, 611

(7th Cir.2006); *Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir.2004). It is "too little, too late." *Cornucopia Institute v. U.S. Dept. of Agriculture*, 560 F.3d 673, 678 (7th Cir. 2009); *Harper v. Vigilant Insurance. Co.*, 433 F.3d 521, 528 (7th Cir. 2005).

The defendants' *forum non conveniens* motions are denied.

### B.
### The *Colorado River* Abstention Doctrine Does Not Require Dismissal of the Complaint

All the defendants have moved to dismiss the complaint on the grounds of "international abstention," based on the pendency of the Nevis suit. Besides Duane Crithfield and Offshore Trust Service, Inc., the six other defendants in that case are the Nevis trusts and the insurance companies that wrote policies purchased by the trusts pursuant to the alleged scheme and Keithley F.T, Lake, an attorney in Nevis. (*OTS Defendants' Motion*, at 6; *F&D Defendants' Motion*, at 9).

The doctrine of abstention articulated in *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976) is a device for avoiding duplicate lawsuits. "It has sometimes been applied when identical concurrent litigation is ... pending abroad." *U.S.O. Corp.*, 547 F.3d at 750. While federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred on them by Congress, there are "exceptional" circumstances, where a federal court may abstain from hearing a suit and await the outcome of parallel proceedings as a matter of "wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation." *Colorado River,* 424 U.S. at 817.

Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to

adjudicate a controversy properly before it," *id.* at 813, and "only the clearest of justifications" will warrant the district court, in the name of wise judicial administration, staying its hand in deference to a concurrent proceeding. *Id.* at 819.

Thus, the court's task in determining whether abstention is appropriate is "not to find some substantial reason for the *exercise* of federal jurisdiction by the district court, ... [but] rather ... to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25-26 (1983)(Emphasis supplied). If there is substantial doubt that the parallel litigation will be "an adequate vehicle for the complete and prompt resolution of the issues between the parties," it would be a "serious abuse of discretion" for the district court to stay or dismiss a case in deference to the parallel litigation. *Id.* at 28.

In order to decide whether the *Colorado River* doctrine applies to a particular case, we must first determine whether the concurrent lawsuits are parallel. *See Ingalls v. AES Corp.,* 311 Fed.Appx. 911, 914 (7th Cir. 2008); *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.,* 962 F.2d 698, 700 (7th Cir.1992). If the cases are found to be parallel, the next task is "to balance the considerations that weigh in favor of, and against, abstention, bearing in mind the exceptional nature of the measure." *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.,* 180 F.3d 896, 898 (7th Cir. 1999).[13] However, if the two cases are not parallel, the *Colorado River* doctrine does not apply. *See AAR Int'l, Inc. v. Nimelias Enters. S.A.,* 250 F.3d 510, 518 (7th Cir. 2001). The lawsuits need not be identical to be considered parallel; "[s]uits are parallel if substantially the same parties are litigating

---

[13] Several non-exclusive factors have been identified. They are discussed *infra* at 29.

substantially the same issues simultaneously in two fora." *Id.* (internal quotations omitted). *See also Tyrer v. City of South Beloit, Ill.*, 456 F.3d 744, 752 (7th Cir. 2006). The mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel. *Ingalls, supra.* [14]

"The question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [concurrent] litigation will dispose of all claims presented in the federal case." *AAR Int'l, Inc.*, 250 F.3d at 518. The district court should determine whether the suits arise out of the same facts and raise similar factual and legal issues. *Ingalls*, 311 Fed.Appx. at 914. "[A]ny doubt regarding the parallel nature of the [state court] suit should be resolved in favor of exercising jurisdiction ...." *AAR Int'l, Inc.* at 520.

Most abstention cases involve parallel state court litigation; but while the situation is somewhat different where the alternate forum is a foreign tribunal, courts apply the same general principles with respect to the parallel proceedings in the interests of international comity. *AAR Intern., Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 518 (7th Cir. 2001). Thus, a defendant has a heavy burden to establish that abstention is warranted where a case is proceeding simultaneously in federal and foreign courts.

We turn then to the threshold question, whether the issues and parties here and in Nevis are substantially the same. Both cases involve a scheme to defraud the plaintiffs through the use of trusts in Nevis to purchase what were touted as no risk, fixed income accounts with guaranteed

---

[14] The Plaintiffs' Response to the Motions To Dismiss begins its *forum non conveniens* argument with a discussion of when suits are "parallel." (Response at 6; Doc 111). But parallelism is a concept to be considered under an abstention analysis, not a *forum non conveniens* analysis.

annual returns over a defined period. Both cases charge that the scheme was initiated through the efforts of the Chicago law firm of Handler, Thayer & Duggan, and advanced through a conference in the Bahamas. That was followed by the repeated representations by Duane Crithfield and OTS (and others) that the monies the plaintiffs would invest would be placed in the Smiling Frog and Black Inc trusts, in Nevis, and that the investments were risk free and would yield a specified, guaranteed return. Thereafter, according to the allegations in both cases, $1.5 million was invested by the plaintiffs to provide financial security for themselves and their children in the two trusts, which purchased insurance policies from Nevis insurance companies.

Both cases charge that the defendants were not acting independently and for the benefit of the trusts but were involved in a scheme to defraud the plaintiffs and to benefit financially from the trusts. Both cases also charge that the defendants were taking excessive and unauthorized fees without the knowledge of the Wendts and that investments, which were guaranteed to be risk free, were anything but, and the trusts lost enormous amounts of money. And both cases charge that the defendants refused to transfer trust assets at the direction of Mr. and Mrs. Wendt, and that they refused to liquidate the trust corpus notwithstanding directions to do so by the Wendts.

Paragraph 33 of the Nevis complaint sums it up by charging that the defendants colluded, conspired and participated in a common scheme to cheat the Wendts and to financially aggrandize themselves. The instant complaint, perhaps less constrained by Nevis gentility, puts it this way: "This case is about the fraudulent theft of hard-earned money the Wendts set aside for their younger daughters' futures. The individual defendants utilized a complex scheme and plan of multiple corporate, partnership and trust shells to move money, making it impossible for the Wendts to confirm what actual investments had been made. ... Thus, a group of men concocted a scheme to

separate the Wendts, and it is believed hundreds of others, from their money through misrepresentations and lies."

In short, the complaints here and in Nevis charge the identical fraudulent conduct, and both charge that the respective defendants were in league together. The only difference is in the identity of the defendants. Duane Crithfield and OTS are named in both cases. Joshua Crithfield, Foster & Dunhill Planning Services LLC, Foster & Dunhill Consulting, Inc. and Stephen P. Donaldson have been named here but not in Nevis. The Nevis trusts and insurance companies are named in the Nevis case but not here. Since, as discussed earlier, the core allegations and theories in both cases are congruent and as to the charges the suits are "identical." *Cf. Ingalls*, 311 Fed.Appx. at 914-15 ("The factual and legal analyses for th[e state court] claim and the claims in the federal case would be substantially similar" even though the claims were nominally different in the two cases). There is simply "no reason" to have "[s]uch parallel proceedings" going on simultaneously in "different courts in different countries thousands of miles apart," *U.S.O. Corp.*, 547 F.3d at 7 — unless the lack of congruence in the parties dictates that result.

This suit and the Nevis suit have the same plaintiffs, but only two of the same defendants, Duane Crithfield and OTS. The Nevis suit names six additional defendants, comprised of the Nevis trusts, and persons or entities who or which are all incorporated and registered in either Nevis or Anguilla and who administered or had other involvement in the Nevis trusts or sold insurance policies to them. They are Alliance Holding Company Ltd.; First Fidelity Trust, Ltd.; Fidelity Insurance Company, Ltd.; BPS International LLC; Westminster, Hope and Turnberry, Ltd.; and Keithley F.T, Lake (an attorney in Nevis). The action here names four defendants not named in the

Nevis suit: Joshua Crithfield, F&DC, F&DP, and Mr. Donaldson, all of whom are citizens of Florida.

The defendants' *Colorado River* arguments track their *forum non conveniens* argument, which essentially is that those not in the Nevis suit would consent to jurisdiction there, making the cases parallel.[15] As already discussed, that is not presently sufficient, since it is anything but certain that the Nevis court would accept those consents if actually proffered in Nevis. And without the instant defendants participating in the Nevis suit, it cannot be said that the parties are substantially the same or that there is a "substantial likelihood" that the foreign litigation will dispose of all claims presented in the federal case.[16] *Finova* and *Schneider Nat. Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990), on which the defendants rely, did not involve any differences in the parties in the two suits under consideration. In *Finova*, the plaintiff conceded the partes were the same, 180 F.3d at 898, and in *Schneider*, there was "no difference whatever between the federal suit and the later state court action." 903 F.2d at 1156.

If the four defendants named in this case were parties in Nevis, the argument for parallelism would be considerably strengthened, notwithstanding the fact that the Nevis trusts and insurance companies were also co-defendants in Nevis but not here. "'The existence of additional parties in one suit does not of itself destroy parallelism.'" *Tyrer*, 456 F.3d at 753 n.9. *See also See Clark v.*

---

[15] In fact, the plaintiffs' response brief does not even contain a section responsive to the defendants' *Colorado River* arguments. Instead, it begins its attempted refutation of the *forum non conveniens* contentions with a brief explanation of why this case and the Nevis case are not "parallel." From that it concludes that a *forum non conveniens* dismissal is not appropriate. *See* Plaintiffs' Response at 6.

[16] The defendants have not attempted to contend that a judgment against Duane Crithfield and OTS in Nevis would resolve the plaintiffs' claims in this court against Joshua Crithfield, Foster & Dunhill Consulting, Foster & Dunhill Planning Services or Stephen Donaldson

*Lacy*, 376 F.3d 682, 686 (7th Cir. 2004); *Ingalls*, 311 Fed.Appx. at 914-15 ("The two suits [i.e. the one in the district court and the one in the state court] involve the same parties-Ingalls and AES. The addition of IPALCO, IPL, and Murtlow as defendants in the state case does not destroy the parallel nature of the cases.").

In *Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1301 (7th Cir. 1988), the plaintiff sued Chrysler Corporation, Acco Babcock, Inc., and John Koepele in federal court. Rosser later filed a separate suit in Illinois state court involving different defendants. Although Rosser did not include Chrysler, Babcock or Koepele in the Illinois proceeding, the state court defendants brought Chrysler and Babcock into that litigation as third-party defendants. Ultimately, they became the primary defendants in that action. The Seventh Circuit concluded that the actions were parallel and that abstention was proper. It also held that the fact that jurisdiction was obtained first in the federal case was of no significance because the plaintiff filed both of the suits. *Id.* at 592.

In *U.S.O.*, the parallel proceedings stemmed from the defendant in the federal action filing in Japan a "mirror-image declaratory judgment suit" against the plaintiff in the United States action. 547 F.3d at 750. It was in that context that Judge Posner noted that the case before it would certainly appear to trigger the *Colorado River* abstention doctrine, which is a "device for avoiding duplicate law suits" "when identical concurrent litigation is, as in this case, pending abroad." *Id.* at 750. But no one, he noted, had urged abstention. *Id.* at 751.

As things now stand, the cases are not parallel. But let us assume that the defendants were allowed to make good on their promises to consent in Nevis and that the court there allowed, what in effect, would be their intervention as defendants and further allowed the plaintiffs to replead the case. It would then be necessary to examine the various factors that inform the balance of the

*Colorado River* analysis, mindful that *Colorado River* abstention is "disfavored" even where the necessary parallel proceeding exists. *Forty One News, Inc. v. County of Lake*, 491 F.3d 662, 668 (7th Cir. 2007).

Among the non-exclusive factors that must be considered in deciding whether the circumstances are exceptional enough to support dismissal or a stay are: 1) whether the non-federal court has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of the state or foreign action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim. *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591-592 (7th Cir. 2005). *See also Ingalls*, 311 Fed.Appx. at 914.

This court has not assumed jurisdiction over property. The relevant property is personal, not real, and to the extent it exists, it is in Nevis. The federal forum is not inconvenient; all of the defendants named in this court are citizens of Florida, and it is no more onerous to travel to Chicago than to Nevis. In fact, Chicago is slightly closer to the defendants' Florida residences than is Nevis, and there are many more daily flights to Chicago. If the case were to proceed in Nevis against not only Duane Crithfield and OTS, but against the remaining four defendants named in this case, piecemeal litigation would obviously be avoided. The likelihood is at least substantial if not virtually certain that without the participation of the four defendants in this case, the Nevis case

would not "dispose of all the issues presented" here. *TruServ Corp.*, 419 F.3d at 592; *Ingalls*, 311 Fed.Appx. at 915. [17]

Nor is it of any moment that the federal case was filed first, since the plaintiffs filed both suits. *TruServ Corp.*, 419 F.3d at 592. The law governing the claims of fraud and conspiracy are not federal, but are based on local laws of fraud and misrepresentation, with the misrepresentations allegedly made in the Bahamas, Illinois, Florida and Kentucky – and perhaps elsewhere. Local law, not federal law, will determine whether there was wrongdoing and if so, its consequences. The law of Nevis allows for monetary damages for fraud and fiduciary breach and is undeniably capable of dealing with trust property and its distribution, where, as here, Nevis trusts and related entities are involved.

In *TruServ*, the court noted that a "significant" factor in the district court's decision to abstain under *Colorado River* was the lack of progress in the litigation in the federal court. 419 F.3d at 591. This case has also not progressed as rapidly as desired, while the Nevis action has progressed further. Although it is uncertain how much further. It is no answer to say, as do the plaintiffs, that the lack of progress has been due in part to the defendants' various motions. They had the right to make those motions, and absent some illicit motivation, the fact remains that the Nevis action is somewhat ahead of this case.

The remaining factors either are not relevant or inconclusive on the present record. While the defendants vigorously deny that they are liable, it cannot be said that either the suit here or in

---

[17] That there are theories pled here to support recovery that are not pled in Nevis is, in the context of this case, no moment, for all of the theories of recovery here and in Nevis are bottomed on the same nucleus of operative fact.

Nevis is meritless or contrived on its face. On the question of the adequacy of remedies under Nevis law, the defendants relied solely on the fact that the plaintiffs sued Mr. Crithfield and OTS. But that is not proof and is not sufficient to carry their burden.

Finally, there is the question of whether the United States would recognize a monetary judgment against the defendants for fraud, misrepresentation, or fiduciary breach entered by a court in Nevis. The defendants' opening brief ignored the issue. It was not until their Reply brief that authority was cited for the proposition that both federal law governing recognition and enforcement of foreign judgments and the law of many states take the position that foreign judgments should be recognized and enforced. (Reply at 8). However, coming as it did in the Reply brief, the argument could not be responded to by the plaintiffs, and the issue is significant and should not be decided without adversarial briefing. Judges depend upon input from lawyers, and "'[t]ruth' is best discovered by powerful statements on both sides of the question.'" *United States v. Cronic,* 466 U.S. 648, 655 (1984). *See also Dal Pozzo v. Basic Machinery Co., Inc.,* 463 F.3d 609, 613-614 (7th Cir.2006); *Burdett v. Miller,* 957 F.2d 1375, 1380 (7th Cir.1992).

A review of the various factors would not disfavor abstention if the cases were parallel and if the defendants could adduce sufficient proof that a judgment in Nevis for fraud and misrepresentation would be honored in the United States. Nevis could provide the kind of comprehensive disposition of the parties' disputes if the defendants make good on their conditional promise to consent to jurisdiction in Nevis and if Nevis accept the consents and allows the plaintiffs to amend their complaint.

If the plaintiffs can satisfy the court on all these points, I would be prepared to stay the present proceedings pending the outcome of the proceedings in Nevis. *See supra* at 17. I would not,

31

however, dismiss the case as the defendants have requested, but rather would stay the proceedings, which is the appropriate procedural mechanism to be employed in deferring to a parallel proceeding under the *Colorado River* doctrine. *Selmon v. Portsmouth Drive Condominium Ass'n,* 89 F.3d 406, 409-410 (7th Cir. 1996); *Rosser,* 864 F.2d at 1308.

For now, the defendants' motions for *Colorado River* abstention are denied. However, Joshua Crithfield, Foster & Dunhill Consulting, Inc., Foster & Dunhill Planning Services, LLC and Stephen Donaldson shall have 45 days to obtain a definitive decision from the Nevis court that it will allow them to consent to jurisdiction in the presently pending case against Duane Crithfield and OTS (and the other Nevis defendants) and that it will allow the plaintiffs to amend their complaint to raise whatever additional claims they have. They shall also have 14 days from the entry of this order to file an additional brief limited exclusively to the question of whether a judgment entered by the court in Nevis for fraud or fiduciary breach will be recognized in the United States. The plaintiffs shall have 14 days to respond and the defendants shall have 7 days to reply.

## C.
### The Defendants' Venue Arguments

Finally, the F&D Defendants submit that under Rule 12(b)(3), Federal Rules of Civil Procedure, the case should be dismissed for improper venue. The brief contains no argument but rather adopts the arguments in the motion to dismiss of Offshore Trust Service, Inc. and the Crithfields. (F&D's Motion to Dismiss at 9; Doc. 101). When one looks to that motion, there is no specific Rule 12(b)(3) argument, merely a reference to the Rule (Motion to Dismiss, at 4) and the *forum non conveniens* and international abstention contentions. Hence, any Rule 12(b)(3) contention need not be considered. *See Mahaffey v. Ramos,* 588 F.3d 1142 (7th Cir. 2009); *United States v.*

*Haynes*, 582 F.3d 686, 704 (7th Cir. 2009)(argument made only in passing and without any discussion or citation to pertinent legal authority deemed waived); *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006)("'We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).'").

The Reply brief of the F & D defendants and Mr. Donaldson cites one district court case and offers at least some discussion, (Reply at 12), but that ought to have been done in their opening brief. Withholding arguments that could and should have been made in an opening brief until the reply gives the opponent no opportunity to respond and thus is inimical to the efficient and proper function of the adversary system. As the Seventh Circuit has repeatedly admonished, reply briefs are for replying, not for raising new matters or arguments that could and ought to have been advanced in the opening brief. *See supra* at 22.

Moreover, on the present record, it appears that venue is proper here, if only tenuously so. As already noted, the corporate defendants have already been found to have been doing business in Illinois, which makes them "residents" under 28 U.S.C. §1391(c), meaning that venue is proper under §1391(a). And, as Judge Castillo noted in his opinion denying motions to dismiss pursuant to Rule 12(b)(3), a Chicago law firm is charged with having been a joint venturer with at least the Crithfields, who are charged with having created and implemented the illicit scheme and with having undertaken other actions that furthered the scheme. That the law firm has settled with the plaintiffs has nothing to do with the question of whether venue is proper here.

Judge Castillo's opinion is the law of the case. The doctrine holds that a court generally should not reopen issues decided in earlier stages of the same litigation. *Agostini v. Felton*, 521 U.S.

203, 236 (1997). Reflecting as it does interests in consistency, finality, and the husbanding of judicial resources, the doctrine applies even when a case is reassigned from one judge to another. *Minch v. City of Chicago,* 486 F.3d 294, 301 (7th Cir.2007).

## CONCLUSION

Given the admonitions by the Supreme Court and the Seventh Circuit about exercising caution before relinquishing jurisdiction and doing so only when the cases are parallel and there are exceptional circumstances, it is impermissible to engage in any degree of speculation in performing any facet of the required analysis. Thus, on the present record, the "general presumption against abstention," *Tyrer,* 456 F.3d at 751, has not been overcome by Joshua Crithfield, Foster & Dunhill Planning Services LLC, Foster & Dunhill Consulting, Inc. and Stephen Donaldson, and accordingly, their motions to dismiss [# 99, #103] are DENIED. In the event the defendants can prove that the court in Nevis will accept their provisional consents and that any judgments entered by that court are fully enforceable in the United States, it will be appropriate to stay the current proceedings pending the outcome of the litigation in Nevis.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

DATE: 5/7/10

34